```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF TEXAS
                         TYLER DIVISION

MASS ENGINEERED DESIGN     *    Civil Docket
LLC,                       *    No. 6:14-cv-411
         Plaintiff,        *    Tyler, Texas
                           *
VS.                        *
                           *    February 18, 2015
SPACECO BUSINESS           *
SOLUTIONS, INC.            *
                           *
         Defendant.        *    9:03 a.m.
```

           TRANSCRIPT OF CASE MANAGEMENT CONFERENCE

           BEFORE THE HONORABLE JUDGE LEONARD DAVIS

                  UNITED STATES DISTRICT COURT


APPEARANCES:

FOR THE PLAINTIFF:    (See sign-in sheets docketed in
                       minutes of this hearing.)


FOR THE DEFENDANT:    (See sign-in sheet docketed in
                       minutes of this hearing.)


COURT REPORTER:       BRENDA HIGHTOWER BUTLER, CSR
                      Deputy Court Reporter
                      211 West Ferguson, Room 210
                      Tyler, Texas 75702


(Proceedings recorded by mechanical stenography,
transcript produced on CAT system.)

```
 1
 2                    P R O C E E D I N G S
 3            COURT SECURITY OFFICER:  All rise.
 4            THE COURT:  Please be seated.
 5            All right.  Ms. King, if you'll call the case,
 6   please.
 7            COURTROOM DEPUTY:  Court calls Case
 8   No. 6:14-cv-411; Mass Engineered Design, Inc. versus
 9   SpaceCo Business Solutions, Inc.
10            THE COURT:  All right.
11            Announcements.
12            MR. SPANGLER:  Good morning, Your Honor.
13   Andrew Spangler on behalf of Plaintiff.  With me is
14   Mr. Shea Palavan, John Edmonds, Steve Schlather, and
15   Aarika McCloskey.
16            And we're ready to proceed.  Mr. Edmonds will
17   be doing most of the oral argument.
18            Okay.  Thank you.
19            MR. GILLAM:  Good morning, Your Honor.  Gil
20   Gillam and Laura Beth Miller for Herman Miller.
21            We're ready.
22            MR. STEVENS:  Good morning, Your Honor.  Scott
23   Stevens and Carl Hjart for SpaceCo.
24            And we're ready.
25            MR. THAMES:  Good morning, Your Honor.  Glenn
```

1  Thames for Planar.
2         And we're ready.
3         THE COURT: All right. It looks like y'all
4  have made good progress on agreeing on a case management
5  plan. But there are a few issues to be resolved.
6         I guess the first one we'll take up is with
7  regard to the -- would either side like to make an
8  overstatement of where you are, or just jump into these?
9         Okay.
10        MR. EDMONDS: We're happy to jump in.
11        THE COURT: We'll take up the e-mail discovery
12 issue first. So whoever would like to be heard on that.
13        MR. EDMONDS: Your Honor, John Edmonds for the
14 Plaintiff.
15        Our -- on the e-mail discovery, the starting
16 point for both sides is the Court's E-Discovery Order.
17 There's language in the Defendants' -- the standard
18 language the Court employs is that you start e-mail
19 discovery once initial disclosures have been done. The
20 Defendants have language in there that you start e-mail
21 discovery once document production is substantially
22 completed. We disagree with that.
23        There -- first of all, there's a deadline
24 for -- a mandatory deadline for document production, and
25 we expect documents to be produced promptly as that

1  deadline arrives.  There's no deadline in the Court's
2  schedule for substantial completion of document
3  production.
4           And we don't really know what they mean.
5  Other than that if they think they're going to be
6  dribbling documents to us and at some point later in the
7  future they can say, okay, now we're substantially
8  complete so you can start requesting e-mails from us or
9  start this process, it just leaves it up in the air and,
10 I think, just where the parties are going to get into
11 disputes over, one, why their document production isn't
12 substantially complete; and two, why we can't start the
13 e-mail production process now.
14          So we say you should go with this Court's --
15 the Court's standard procedure.  And what they're asking
16 for is just unconventional and unworkable.
17          THE COURT:  Okay.
18          Response.
19          MR. HJART:  Well, Judge, I think we're
20 actually willing to modify the position that was
21 proposed in the -- in the reports.  But the Defendants
22 would prefer that e-mail discovery to proceed after the
23 mediation had taken place.
24          This is a Track B case.  And if we engage in a
25 lot of this electronic discovery early, it's going to

1   increase the cost of this whole thing.  And if we can
2   get through mediation and potentially resolve the case
3   there, it would save -- save everyone a lot of money.
4               THE COURT:  Mr. Edmonds, what's your thoughts
5   on that?
6               MR. EDMONDS:  It's the first we've heard it,
7   so I'm looking here what the mediation deadline is.  So
8   that's June 30th of 2015.  And -- let's see.  So 45
9   days.
10              Yeah.  I don't -- if that's -- if they wanted
11  to do it in June, I think what we would do is we would
12  start the process in June; and if we don't settle at
13  mediation, then we can finish it.  So it seems to me
14  then the process would start with us sending discovery
15  requests.
16              So I -- what I would suggest we do is, we're
17  able to send a discovery request in mid-June.  And then
18  if we settle it, then they don't have to respond to
19  them.  If we don't settle it, then we can procedure.
20              I think that's workable.
21              THE COURT:  Does that work for you?
22              MR. HJART:  That seems to work for us.
23              THE COURT:  Okay.  Very well.  That was agreed
24  to.  Good job.
25              MR. EDMONDS:  The other issue with it was they

1  proposed limiting the number of e-mail discovery
2  requests and doing away with the -- the deposition that
3  the normal procedure would have.  So normal procedure is
4  we could take a deposition or -- and they could too, on
5  e-mail custodians and propound by requests.
6         Our argue is that that preparatory discovery
7  process makes for a more efficient e-mail discovery
8  process and allows us to better tailor our requests, and
9  it makes sense to do it that way.  And -- and by trying
10 to trim down the steps towards the e-mail discovery
11 requests, it seems like it's just going to make that
12 process --
13         THE COURT:  You're talking about the
14 depositions before you file your -- your e-mail
15 discovery request --
16         MR. EDMONDS:  Right.  So we don't actually --
17         THE COURT:  -- to identify the custodians and
18 that type of thing?
19         MR. EDMONDS:  Right.
20         So we know who the custodians are and what we
21 should be asking for.  And we don't see any good cause
22 to depart from it.
23         The way we see it, the Court's normal
24 procedures strike a careful balance in everybody's need
25 to get relevant documents versus being overbearing.  And

1  there's nothing overbearing about the Court's standard
2  procedure.
3              THE COURT:  What's your response on that?
4              MR. HJART:  Well, I think it was our position
5  that, you know, that since this is a Track B case that
6  we're trying to keep the costs down as much as possible
7  and that those procedures may not be, you know,
8  required.
9              I think particularly -- I can speak on behalf
10 of SpaceCo.  There's a very limited number of people who
11 will have e-mail discoverable, you know, information.
12 You know, it's less than 20 people that work in the
13 Denver office.  So it's going to be very limited at
14 least from SpaceCo's position.
15             THE COURT:  Let me ask this.  What if we --
16 what I will do, I will delay that just as I've delayed
17 the other until after the mediation.
18             So -- but what you can do, Mr. Edmonds, is, if
19 you're comfortable through conversation with counsel --
20 it doesn't sound like it's a real big company or
21 complicated -- you could go ahead and identify those
22 people.  And if want to go ahead and serve your requests
23 in June, you can; or you can serve them within two weeks
24 after completing the deposition if the case doesn't
25 settle.

```
 1                  How's that sound?
 2                  MR. EDMONDS:  Understood, Your Honor.
 3                  THE COURT:  All right.  Anything else on -- I
 4  think there's a request as to the number of custodians
 5  and written requests and terms.  Has that been worked
 6  out?
 7                  MR. EDMONDS:  No.  I mean, I think the parties
 8  are where they were before.
 9                  You know, our view is that -- well, yeah.  I
10  mean, I think those -- I think those are the disputes.
11  I think we just resolved them.  I think so, yes.
12                  THE COURT:  And so you think they're resolved
13  now?
14                  MR. HJART:  I think that's right.
15                  THE COURT:  All right.  Very good.
16                  All right.  Next I have is whether
17  Mr. Hjart --
18                  Is that correct?
19                  MR. HJART:  That's correct, Your Honor.
20                  THE COURT:  -- as general counsel should have
21  access to documents deemed "attorneys' eyes only."
22                  MR. EDMONDS:  We'll go first, I guess.
23                  THE COURT:  Okay.
24                  MR. EDMONDS:  So the starting point for this
25  is, it's -- you know, Mr. Hjart holds himself out to the
```

1  world as SpaceCo's general counsel.  He lists his firm
2  address and his bar registrations as SpaceCo.  It is
3  apparently his only place of work.
4         And as we went down this process in terms of
5  competitive decision makers not having access to
6  "attorneys' eyes only" documents, which is a normal and
7  appropriate procedure, now we hear back that, well,
8  really, I'm not -- not really the general counsel; I'm
9  really something else.  Although it's not exactly what
10 he's holding himself out to be at this point.  Because
11 he admits that he is the general counsel of SpaceCo.
12         THE COURT:  Okay.  Response.
13         MR. HJART:  Well, Judge, I'm an independent
14 contractor for SpaceCo and I do hold myself out as the
15 general counsel.  But there are many attorneys, I
16 understand, who represent themselves as general counsel
17 for a company when, in fact, they aren't an employee.
18         I am not an employee of SpaceCo.  I'm not an
19 officer of the company.  I handle their matters on a
20 fixed-fee basis every month.  And I represent a
21 significant number of other clients in addition to
22 SpaceCo.
23         SpaceCo provides me with an office area where
24 I can work.  And I do take advantage of that quite
25 regularly just because I find it's conducive to leave

1  the house and go to a place to work and then leave that
2  place at the end of the day.
3         But I am not a competitive decision maker for
4  SpaceCo.  I don't tell them what to sell or what price
5  to put it at or who to hire or who to fire.  I don't --
6  I don't have any -- I couldn't give them that input if I
7  wanted to because I don't have any qualifications to do
8  that.
9         So I am not a competitive decision maker.  And
10 that, I think, is the key point here.  I give legal
11 advice to the company just like any lawyer does.
12         THE COURT:  What -- what -- I mean, what
13 prejudice would it work to you to have this limitation?
14 You have outside counsel.
15         I mean, my normal course is that in-house
16 counsel is barred.  So, I mean, what are you trying to
17 accomplish here?
18         MR. HJART:  Well, Judge, I think that, you
19 know, in the event that this case does go to trial, I
20 mean, I would be the one that would handle that so I'm
21 going to need to be able to see all the exhibits that
22 will be, you know, used at trial, inclusive of this
23 confidential information.
24         THE COURT:  Okay.  Well, I'm going -- what I
25 would like for you to do is, I'm going to go ahead and

```
 1   enter an order barring you from viewing "attorneys' eyes
 2   only" material at least until after you get through the
 3   mediation.
 4             If you wish to come back and file a motion to
 5   modify the protective order if the case progresses on to
 6   trial, I'll take that up at that time.  But you're going
 7   to have to have a lot more detail in it than I have
 8   before me here today.
 9             MR. HJART:  Okay.
10             THE COURT:  Okay.  Very good.
11             All right.  Technology tutorials.  Plaintiff
12   wants one; the Defendant doesn't.
13             I'll allow a tutorial if either side wants to
14   produce it.  But I know you're trying to save costs.
15   And I do agree with you, it's fairly simple technology
16   and it's probably not necessary; but if -- I'm not going
17   to preclude Plaintiff from doing so if they would like
18   to.  Okay?
19             All right.  Is that everything?
20             MR. EDMONDS:  I believe so, Your Honor.  Thank
21   you.
22             THE COURT:  All right.
23             And -- oh, and I wanted to ask you about Judge
24   Ward.  You have agreed to have him mediate the case; is
25   that correct?
```

```
 1              MR. EDMONDS:  If he's willing and if you're
 2  willing, yes, Your Honor.
 3              THE COURT:  Have you communicated with him
 4  whether he is willing or not?
 5              MR. EDMONDS:  We have not.  Is that -- he was
 6  willing, but maybe that willingness has changed?  I
 7  don't know.  I know he's -- he may be beyond some of
 8  those restrictions and getting out of the mediation
 9  business.  So I -- we may not be up to date on that.  If
10  we are not, I apologize.
11          Should we go back and check and then get back
12  with the Court and make sure we are giving you good
13  information?
14              THE COURT:  Well, check with him.  And if he
15  can't do it, then I'll appoint Judge Faulkner as the --
16  as the mediator.
17          How's that?
18              MR. EDMONDS:  Thank you, Your Honor.
19              THE COURT:  Okay.  All right.  Very well.
20          Well, let me -- let me ask you, though, on
21  this.  What -- what kind of -- now, you've settled with
22  two Defendants in this case; is that correct?
23              MR. EDMONDS:  We settled with -- yes.
24              THE COURT:  Okay.  And what were those
25  settlement amounts or ranges?
```

```
 1              MR. EDMONDS:  The -- I don't have the numbers.
 2   It's a -- our general -- this Court entered a -- has
 3   actually entered a judgment --
 4              THE COURT:  Uh-huh.
 5              MR. EDMONDS:  -- and it's for 5.9 percent.
 6   And our general settlement model is 5.9 percent.
 7              THE COURT:  Okay.
 8              MR. EDMONDS:  What those absolute numbers are,
 9   I think one of them -- one of them is actually supplied
10   by another licensee by -- and a licensee of ours, they
11   just didn't have a license to one of our patents.  And
12   so they went back and took a license to another one of
13   our patents; we expanded the scope of their license.
14   And that -- that Defendant now fell under their
15   supplier's license, so I don't think that Defendant paid
16   anything.  They just came -- they became a beneficiary
17   of an upstream license that was adjusted on their
18   behalf.
19              THE COURT:  Okay.
20              MR. EDMONDS:  And then --
21              I don't have the numbers in my head, Steve,
22   for --
23              Let me put it this way.  It's a relative -- in
24   the big picture of the patent litigation, it's a
25   relatively small number.  But --
```

1           THE COURT:  Do you have a range yet that
2  you've been talking with these Defendants, specifically,
3  with SpaceCo, regarding -- I mean, are we talking, you
4  know, millions of dollars, hundreds of thousands, tens
5  of thousands or what?
6           MR. EDMONDS:  It's -- it's in the hundreds --
7  it's -- nobody's sales are immense.  But there are sales
8  that are in the tens of millions of dollars.  And so,
9  you know, our model would be to take 5.9 percent of
10 the -- of the past and do some kind of a projection for
11 the future.
12          So it's along those -- it's along those lines.
13          THE COURT:  Yeah.
14          Would you agree or disagree or...?
15          MR. HJART:  I can't speak for the other
16 Defendants.  But I don't think SpaceCo hit $10 million;
17 I think we were -- we were less than that.
18          THE COURT:  All right.  Well, I was just
19 curious.
20          Well, why don't you check with Judge Ward and
21 then Judge Faulkner for that mediation.  Okay?
22          MR. EDMONDS:  Thank you, Your Honor.  And we
23 will.
24          THE COURT:  Very well.  Thank you.
25          Be adjourned.

```
 1            COURT SECURITY OFFICER:  All rise.
 2            (Court adjourned.)
```


```
 1                        CERTIFICATION

 2

 3         I HEREBY CERTIFY that the foregoing is a

 4  correct transcript from the stenographic notes of the

 5  proceedings in the above-entitled matter to the best of

 6  my ability.

 7

 8

 9  /s/ Brenda Hightower Butler, CSR     February 27, 2015
    BRENDA HIGHTOWER BUTLER, CSR         Date
10  Deputy Official Court Reporter
    State of Texas No.:  3107
11  Expiration Date:  12/31/16
```