IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MASS ENGINEERED DESIGN, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 6:14-cv-00411-LED |
| v. | § | |
| | § | LEAD CASE |
| SPACECO BUSINESS SOLUTIONS, INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |
| v. | § | |
| | § | Civil Action No. 6:14-cv-00414-LED |
| PLANAR SYSTEMS, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S AMENDED OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

Table of Contents ........................................................................................................................ ii

Table of Authorities ................................................................................................................... iv
    Cases .................................................................................................................................... iv

    Statutes ................................................................................................................................ iv

I.   Introduction ........................................................................................................................ 1
    A.  Asserted Patents ......................................................................................................... 1

    B.  Prior Related Case ...................................................................................................... 1

II.  Legal Framework .............................................................................................................. 2

III.   High Level Introduction to the General Technology at Issue ............................................. 3
    A.  Patented Technologies ................................................................................................. 3

    B.  Person of Ordinary Skill In The Art ........................................................................... 4

IV.   Construction of the Claim Terms ....................................................................................... 4
    A.  Disputed Claim Terms ................................................................................................ 4
      1.  Arm/support arm/arm assembly ............................................................................. 4

      2.  an arm assembly having an arm that extends from the column ............................... 5

      3.  arm assembly is extendable from a retracted configuration to an extended configuration 7

      4.  means for adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired degree ............................................................................................................................ 9

      5.  The mounting means permits the one display to assume a first angular position and a second angular position ........................................................................................... 13

      6.  [the mounting means comprises] connector means for connecting one of the displays to the arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted ................................................................................................................ 15

      7.  positioning means for positioning displays, the positioning means comprising ............. 19

      8.  The positioning means allows positioning of the rear portion at a plurality of distances from the support means to minimize a spacing ....................................................... 21

9.  [support arm structure having] a single piece support arm that extends on either side of the support column............................................................................................................. 23

10. [support arm structure having] a support arm that extends on either side of the support column.................................................................................................................................... 23

B.   Agreed Terms Needing Correction. ................................................................................. 25

TABLE OF AUTHORITIES

*Cases*

*Acromed Corp. v. Sofamor Danek Group,*
253 F.3d 1371 (Fed. Cir. 2001)..................................................................... 11, 12, 18

*British Tel. PLC v. Prodigy Commc'n Corp.,*
189 F. Supp. 2d 101 (S.D.N.Y. 2002)............................................................ 20, 22

*Cole v. Kimberly-Clark Corp.,*
102 F.3d 524 (Fed. Cir. 1996)........................................................................ 21

*Diagnostics Corp. v. Elekta AB,*
344 F.3d 1205 (Fed. Cir. 2003)...................................................................... 2, 9

*Group One v. Hallmark Cards,*
407 F.3d 1297 (Fed.Cir.2005)........................................................................ 25

*Kara Technology v. Stamps.com,*
582 F.3d 1341 (Fed. Cir. 2009)...................................................................... 9

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.,*
177 F.3d 968 (Fed.Cir.1999).......................................................................... 6

*Liebel–Flarsheim Co. v. Medrad, Inc.,*
358 F.3d 898 (Fed. Cir. 2004)........................................................................ 7

*Lighting World, Inc. v. Birchwood Lighting, Inc.,*
382 F.3d 1354 (Fed. Cir. 2004)...................................................................... 20

*Novo Industries v. Micro Molds,*
350 F.3d 1348 (Fed.Cir.2003)........................................................................ 25, 26

*Personalized Media Communications, L.L.C. v. Int'l Trade Comm'n,*
161 F.3d 696 (Fed. Cir. 1998)........................................................................ 21

*Phillips v. AWH,*
415 F.3d 1303 (Fed. Cir. 2005) (en banc)..................................................... 2, 8

*Sage Prods. v. Devon Indus., Inc.,*
126 F.3d 1420 (Fed. Cir. 1997)...................................................................... 21

*Searfos v. Pioneer Consolidated Corp.,*
374 F.3d 1142 (Fed. Cir. 2004)...................................................................... 21

*Thorner v. Sony Computer Entm't Am. LLC,*
669 F.3d 1362 (Fed. Cir. 2012)...................................................................... 8

*TI Group Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.,*
375 F.3d 1126 (Fed. Cir. 2004)...................................................................... 20

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,*
239 F.3d 1225 (Fed. Cir. 2001)...................................................................... 3, 11, 12, 18, 19

*York Prods., Inc. v. Central Tractor Farm & Family Center,*
99 F.3d 1568 (Fed. Cir. 1996)........................................................................ 20

**Statutes**

35 U.S.C. § 112.......................................................................... 2, 9, 11, 12, 14, 18, 20, 21, 22

# I.   INTRODUCTION

## A.   Asserted Patents

The Patents-in-Suit are U.S. Patent Nos. RE36,978, entitled "Dual Display System" (the "'978 Patent) (Exhibit 3), which issued in 2000; 8,102,331, entitled "Horizontal Three Screen LCD Display System" (the "'331 Patent") (Exhibit 4), which issued in 2013; and 8,462,103, entitled "Computer Display Screen System and Adjustable Screen Mount, and Swinging Screens Therefor" (the "'103 Patent") (Exhibit 5), which issued in 2013.   At a high level, the Patents-in-Suit generally relate to various novel display apparatuses for systems comprising multiple computer monitors.   *Id*. Jerry Moscovitch is the sole listed inventor on the '978 and '331 patents, and he is the first listed inventor on the '103 Patent.   *Id*. Mr. Moscovitch is also the president and CEO of MASS Engineered Design, Inc. (collectively they are referred to herein as "MASS"), and MASS is the exclusive licensee of the Patents-in-Suit.   Exhibit 2, Declaration of Jerry Moscovitch, at ¶3-5. In this proceeding, MASS contends that Defendants infringe multiple claims of the Patents-in-Suit.   *Id*. at ¶5. The claims at issue in this proceeding are claims 16, 18, 25, and 27 of the '978 Patent, claims 1, 4, and 10 of the '331 Patent, and claims 1-3, 9-11, 14, 15, 17, and 18 of the '103 Patent (individually and collectively the "Asserted Claims").   *Id*.

## B.   Prior Related Case

On July 7, 2006, MASS filed suit in this District asserting the '978 Patent in a case styled *MASS Engineered Design, Inc., et al. v. Ergotron, Inc., et al*., C.A. No. 2:06-cv-0272-LED (the "*Ergotron* Case"). Ultimately, the *Ergotron* case went to trial and, following a jury verdict, this Court entered judgment in favor of MASS. *Ergotron* case, Dkt No. 745. Of particular relevance here is that this Court construed many of the terms of the '978 Patent, including issuing three separate claim construction opinions. Many of these terms, and other similar terms, are found in the other Patents-in-Suit as well. *Ergotron* case, Dkt Nos. 266, 344 & 372. The Court's prior opinions are attached

hereto as Exhibits 6-8.  The *Ergotron* judgment was not appealed.

On August 3, 2012, a declaratory judgment action was filed in S.D.N.Y. against MASS seeking invalidation of four of MASS's patents, including the Patents-in-Suit, in a case styled *Humanscale Corp. v. MASS Engineered Design, Inc., et al.*, C.A. No. 1:12-CV-05988. The case was transferred to E.D.V.A. on April 23, 2013, and restyled as *Humanscale Corp. v. MASS Engineered Design, Inc., et al.*, C.A. No. 1:13-CV-00535 (the "*Humanscale* Case"), where it ultimately settled near the eve of trial.  The Virginia Court construed many of the terms of the Patents-in-Suit, the order is attached hereto as Exhibit 9.  This Court's prior well-reasoned claim construction in the *Ergotron* case is significantly more relevant to this proceeding than the sparse ruling from the *Humanscale* case; however, the *Humanscale* case is mentioned in the interest of completeness.  The *Humanscale* case was settled prior to any trial.  Neither side is relying upon the sparse ruling from the *Humanscale* case as persuasive authority for this brief.

## II.   LEGAL FRAMEWORK

This Court has substantial experience with patent infringement cases and does not need briefing on the basics of claim construction. In general, the Federal Circuit's *en banc* decision in *Philips* provides the basic legal framework, with claim terms being construed in accordance with the understanding of one of ordinary skill in the art at the time of the invention in view of the intrinsic evidence and any relevant extrinsic evidence. *See Phillips v. AWH,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). As to the means-plus-function ("MPF") claims at issue in this case, *see* 35 U.S.C. § 112 ¶f[1], their MPF elements cover the structure disclosed in the specification that performs and is clearly linked to the claimed function. *See, e.g., Diagnostics Corp. v. Elekta AB,* 344 F.3d 1205 (Fed. Cir. 2003).  If a structure is not necessary for performing the claimed function, then it should not be included. *See, e.g., Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,* 239 F.3d 1225, 1233 (Fed. Cir.

---

[1] Pre-AIA, 35 U.S.C. § 112 ¶6 was codified as 35 U.S.C. § 112 ¶f.

2001).

### III.   HIGH LEVEL INTRODUCTION TO THE GENERAL TECHNOLOGY AT ISSUE

#### A.   *Patented Technologies*

Figures 1, 2, and 4 of the '978 Patent show front, side, and top level views respectively of one embodiment of a multi-monitor display system, as follows:



Here, "display system 10" includes a "base 12," a pair of "displays 14, 16" mounted on "arm 18," and "upright 20" which associated with the "base 12" supports the "arm 18." '978/2:22-27.[2]

The '978 Patent has been through reexamination and reissue.  Ex. 2, ¶10.  At a high level, and as pertinent to the Asserted Claims in this proceeding, the '978 Patent is generally directed to a novel display apparatus comprising a base member, a pair of electronic displays; positioning means for positioning the displays, the positioning means comprising an arm assembly; support means for supporting the arm assembly from the base member; and mounting means for mounting the displays to the arm assembly, the mounting means comprising means for adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired degree. *Id.*

At a high level, and as pertinent to the Asserted Claims in this proceeding, the '331 Patent is generally directed to a novel display apparatus comprising a base, a support column, a support arm structure secured to the support column, and connectors for connecting display housing portions at the backs of displays to the support arm, such that at least a part of the support column is disposed

---

[2] "978/2:22-27" refers to the '978 Patent, column 2 at lines 22-27.  This citation format will be used throughout MASS's brief to cite to the Patents-in-Suit.

behind the displays, wherein the support arm is bowed at the front. *Id*. at ¶11.

At a high level, and as pertinent to the Asserted Claims in this proceeding, the '103 Patent is generally directed to a novel computer display support structure comprising a support member having a base, a column, an arm assembly, and mounting assembly for mounting the computer displays in various positions, including where the first and second displays are viewable from opposite sides and where the arm assembly is in retracted and extended configurations. *Id*. at ¶12.

### B. *Person of Ordinary Skill In The Art*

MASS contends that a person of ordinary skill in the art ("POSITA") of the subject matter claimed by the Patents-in-Suit is a person having a bachelor's degree in industrial design or mechanical engineering, or by equivalent education or training, and approximately 0-3 years of experience in product design. Ex. 2, ¶5.

### IV. CONSTRUCTION OF THE CLAIM TERMS

### A. *Disputed Claim Terms*

| 1. | Arm/support arm/arm assembly[3] | |
|---|---|---|
| **MASS:** a structure having one or more constituent parts connected to and projecting from the support means ('978 Patent) or column ('331 or '103 patents) | | **Defendants:** a structure having one or more constituent parts connected to and projecting from the support means |

The Court previously construed the term "arm assembly" to mean "a structure having one or more constituent parts connected to and projecting from the support means." *See* Ex. 6, pp. 8 & 23. The parties appear to agree that the Court's prior construction for "arm assembly" was correct with respect to the '978 Patent. However, the parties disagree as to the term "arm" and its derivations with respect to the '103 and '331 patents. The Asserted Claims (and indeed all claims) of the '103 Patent refer to an "arm assembly" that extends from a "column." The Asserted Claims (and indeed all claims) of the '331 Patent refer to a support arm, or arm, as the element connected to and projecting

---

[3] '978 Patent claims 16-18,20-23,25-28,31-33,35-38; ("arm" assembly); and '331 Patent claims 1, 5-6, 8-12, 14-18; '103 Patent claims 1, 3-4, 7, 9,10, 12,15-16. (support "arm").

from the "support column," *i.e.*, a column.  The term "support means" is not used in the claims of the '103 or '331 patents.  It would be erroneous to import a "support means" limitation, which is a MPF limitation (*see* support means below) into the '103 and '331 patents via the construction of "arm." Accordingly, the Court should adopt its prior construction from the '978 Patent but modify that construction slightly for the '103 and '331 patents to account for their use of the term "column" instead of "support means."

| 2. | an arm assembly having an arm that extends from the column [4] |
|---|---|
| **MASS:** *See* above re arm assembly. Otherwise, plain meaning and needs no construction. | **Defendants:** an arm assembly that has an arm that is capable of increasing or expanding in length when projecting from the column |

As set forth above, the Court correctly construed the term "arm assembly" in the *Ergotron* case.  The remainder of this phrase requires no further construction because it comprises language that has a well-understood, plain and ordinary meaning, including to a POSITA or a lay juror.

Defendants erroneously propose redefining the phrase "extends from the column" – which, again, is an easily understood term – to mean "capable of increasing or expanding in length when projecting from the column."  The plain language of the claim only requires that the arm assembly *extend* from the column – there is no basis to require the capability of increasing or expanding in length that Defendants' seek to require.  In other words, an arm assembly can "extend" from a column irrespective of whether it is capable of increasing or expanding in length, just like a peninsula extends from a larger land mass, or a pier extends from shore into a body of water.  Defendants improperly seek to import an extra limitation that is not present in the plain meaning of this phrase.  This primarily appears to be another ill-conceived attempt for Defendants to import a "telescoping" limitation into claims that do not require telescoping of the arm (*see* discussion of telescoping below).

Defendants' proposed construction, besides being at odds with the straight-forward claim

---

[4] '103 Patent, claim 1.

language, is at odds with the specification of the '103 patent.  For example, the specification describes Fig. 20 as showing a display mounted on an arm "extending" from the computer. '103/3:39-41; it states that neck 36 "extends" from junction block 38. '103/9:39-41; it states that rollers 904 "extend" beyond the outer upper surface 902a of the neck, '103/18:54-57; it states that "center support member 910 is formed of a tubular construction and includes a projecting lip portion 912a extending from a lower wall 912; ,103:18:59-61; it states that, neck portion 924 having a pair of longitudinally "extending" channels 926, '103/19:10-11.   However, none of these structures that "extend" from other structures are capable of increasing or expanding in length. *See* Figs. 7, 20, 82, 84.

Although "extended" is used in at least one instance in the specification as indicative of telescoping, in most other instances it is not.  Defendants should not be permitted to pick and choose from the specification.   At most, the usages of "extend" and variants thereof when there is not telescoping, and indeed no motive ability at all, is indicative that there has been no clear and unequivocal disavowal or lexicography, and that the broad, plain meaning of "extend" should be applied.  Further, claim 4 covers a "computer display support structure according to claim 3,[5] wherein the arm that extends from the column is adapted to telescope."  This makes clear that extending and telescoping are not the same thing, including through the presumption that different terms have different meanings, and through the doctrine of claim differentiation. The doctrine of claim differentiation stems from "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971–72 (Fed.Cir.1999)).  The doctrine is at its "strongest" where, as here, "the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim." *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir.

---

[5] Claim 3 depends from claim 1, and thus claim 4 also depends from claim 1, the claim in which this disputed phrase is found.

2004).

| 3. | arm assembly is extendable from a retracted configuration to an extended configuration[6] |
|---|---|
| **MASS:** *See* above re arm assembly. Otherwise, plain meaning and needs no construction. | **Defendants:** capable of telescoping outwardly from a surrounding channel |

Once "arm assembly" has been defined as proposed above, the phrase "extendable from a retracted configuration to an extended configuration" has a plain and ordinary meaning and requires no further construction, especially when the full phrase is considered; "the arm assembly is extendable from a retracted configuration to an extended configuration, the distance between the one end [of the arm assembly] and the opposite end being greater in the extended configuration than in the retracted configuration." This limitation makes it clear that the system includes a mechanism capable of transforming the arm assembly from a retracted configuration to an extended configuration by increasing the distance between the ends of the arm assembly. The specification of the '103 Patent provides examples of arm assemblies that are extendable from a retracted configuration to an extended configuration, illustrated in Figs. 44-49 for example, as follows:



The phrase "capable of telescoping" in Defendants' construction is improper and overly restrictive for several reasons. First, it excludes a hinge mechanism (hinge 196) taught in the '103 specification and figures that allows the system to transform from a retracted configuration (Fig. 47) to an extended configuration (Fig. 45). A construction that excludes a preferred embodiment is not only presumptively incorrect, it is almost never correct, at least absent contrary lexicography or

---

[6] '103, claim 1.

disclaimer, neither of which is present here.  Defendants' construction both ignores plain meaning and seeks to exclude a preferred embodiment – their construction is simply wrong.  Defendants' construction fixates on and improperly imports limitations from a single embodiment (*e.g.*, a telescoping mechanism) taught in Figs. 44-48 and Figs 123-126.  However, "[o]ne of the cardinal sins of patent law [is] reading a limitation from the written description into the claims." *Phillips*, 415 F.3d at 1319-20.  Here, Defendants improperly attempt to import the limitations of a single embodiment (*i.e.*, telescoping) into its proposed construction. Even if only a single embodiment had been disclosed in the specification (which is not the case here), it would be improper to limit plain meaning to a single embodiment. *See, e.g., Thorner v. Sony Computer Entm't Am. LLC,* 669 F.3d 1362, 1365 (Fed. Cir. 2012).  However, the meaning of extendable in the context of the '103 Patent is broader, and, consistent with the broad, plain language of the claims. Certainly, telescoping is *one* way the specification describes to accomplish this, but it is not *the only* way taught in the specification, nor is it required by the claim language, and the claims should not be limited to a single embodiment when the claim and specification are broader.

Further, the specification describes that the centering member 512 may be "extended" such that it "projects outwardly of the support member." '103/17:41-44.  As shown in Figs. 72, 73 and 75, the centering member is provided with pivot pins 514 that connect the centering member to the support member with a hinge joint.  Here again, the specification makes clear that an element may extend by way of hinging and not solely by telescoping as Defendants erroneously propose.

In addition, claim 4 (which requires that the "arm that extends from the column is adapted to telescope") further clarifies that the scope of claim 1 cannot be properly limited to only a telescoping arm as Defendants propose. Aside from the axiom that different claim terms presumptively have different meanings, the well-established doctrine of claim differentiation further illustrates the error of Defendants' position because claim 4, which depends from claim 1, is narrower than claim 1 due

to this "telescoping," and Defendants' proposed construction would improperly render claim 4 superfluous.[7] Accordingly, Defendants' proposed construction should be rejected.

| 4. | means for adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired degree[8] |
|---|---|
| **MASS:** Construed under 35 U.S.C. § 112(f)<br><br>Function: adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired degree<br><br>Structure: Same as mounting means, *i.e.*, ball 56, shaft 58, socket 60, hole 72, tabs 80, 82, rear of the display 16, plus equivalents (Figures 8 and 9) OR ball 172, shaft 174, socket 170 with flat surface 190, shell 184 with flat 192, plate 182, screws 186, screws 188, plug 194, socket 198 (or 202 or 204), bolt 200, rear of the display 152, plus equivalents (Figure 20). | **Defendants:** Governed by 35 U.S.C. § 112(6)<br><br>**Function:** adjusting the angular orientation of each of the displays relative to the arm assembly<br><br>**Structure**: the structure corresponding to the mounting means to which slots 62 and 64 (FIGS 8 and 9) or 178 (FIG 20) and projections 66 and 68 (FIGS 8 and 9) or 180 (FIG 20) have been added |

This phrase is a MPF claim limitation under 35 U.S.C. § 112 ¶f. MPF elements cover the structures disclosed in the specification that perform and are clearly linked to the claimed function.[9]

As noted below, the parties have agreed upon the construction of "mounting means for mounting the displays to the arm assembly."  For "mounting means …," the parties have agreed that the function is "mounting the displays to the arm assembly," and that the corresponding structure is the following:

> ball 56, shaft 58, socket 60, hole 72, tabs 80, 82, rear of the display 16, plus equivalents (Figures 8 and 9) OR
> ball 172, shaft 174, socket 170 with flat surface 190, shell 184 with flat 192, plate 182, screws 186, screws 188, plug 194, socket 198 (or 202 or 204), bolt 200, rear of the display 152, plus equivalents (Figure 20).

The parties agree that the structures for the "adjusting means…" term bears a close relationship to the structures for the "mounting means…" term.  In fact, in the *Ergotron* case, this Court ruled that the structures corresponding to the "mounting means" were the same as the structures

---

[7] *See, e.g., Kara Technology v. Stamps.com*, 582 F.3d 1341 (Fed. Cir. 2009).
[8] '978 Patent claim 16.
[9] *See, e.g., Diagnostics Corporation*, 344 F.3d 1205.

corresponding to the "means for adjusting."  MASS agrees with this Court's prior ruling on this issue, as noted above.

Specific to "adjusting means," in the first instance, the parties disagree on the disclosed function. As clearly set forth in the claim, the function is "adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired degree." Ex. 2, ¶18. Defendants improperly crop this and propose the function be limited solely to "adjusting the angular orientation of each of the displays relative to the arm assembly."  However, in the IPR proceedings, Defendant SpaceCo, presumably in collaboration with its co-Defendant Planar, has agreed with MASS that the proper function also includes "to thereby permit said displays to be angled toward each other to a desired degree." Ex. 10, pp. 24-25.  In any event, Mass's recitation of the full function is correct.

In the *Ergotron* case, this Court identified the structure for performing the identified function as follows: "Structure: ball 56, shaft 58, and socket 60, plus equivalents (Figures 8 and 9). OR ball 172, shaft 174, socket 170 with flat surface 190, shell 184 with flat 192, plate 182, screws 186, rear of the display 152, plus equivalents." Ex. 8; App. B. Here, both MASS and Defendants agree that the structure identified in the Court's prior construction should be included.  However, Defendants also argue that the following additional improper structures should be included:  slots 62 and 64 (FIGS 8 and 9) or 178 (FIG 20) and projections 66 and 68 (FIGS 8 and 9) or 180 (FIG 20).  In the following Figures, the properly included structures are noted in yellow, and the improperly included structures are noted in red, as follows:



Defendants' proposed construction improperly attempts to include extraneous, unnecessary structure (as noted in red) that is not clearly linked to the function, namely: vertical projections 66 extending from ball 56, horizontal projections 68 extending from ball 56 … vertically registered slots 62 formed in socket 60, and horizontally registered slots 64 formed in socket 60 (Figures 8 and 9) and projections 180 extending from ball 172 … and slots 178 formed in socket 170 (Figure 20). These additional structures are not necessary for, nor are they clearly linked to the function of adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired degree. As would be clear to a POSITA, all that is needed to perform the required function is a ball and socket joint and the rear of the display.  Ex. 2, ¶19.

When construing claim terms under § 112 ¶f, it is only the structure used to accomplish the claimed function that is significant; structure that accomplishes other functions is immaterial and not part of the claim analysis.  *See, Wenger,* 239 F.3d at 1233; *Acromed Corp. v. Sofamor Danek Group,* 253 F.3d 1371, 1382 (Fed. Cir. 2001) ("A court may not import into the claim structural limitations from the written description that are unnecessary to perform the claim function."). As expressed in the '978 Patent at 3:63 – 4:15; 7:15 and shown in Figures 9 and 20, the pins engage the back of the

slots to *limit* the extent to which a preferred[10] embodiment joint may pivot,[11] but do not themselves perform the function of the adjusting means. Structure unnecessary to perform the claimed function is irrelevant in construing § 112 ¶f limitations. *Wenger,* 239 F.3d at 1233; *Acromed,* 253 F.3d at 1382.

In the *Ergotron* case, this Court specifically addressed and properly rejected the inclusion of the very same structures that Defendants now seek to improperly add:

> The parties dispute whether the slots and projections[12] should be included as structure for the mounting means … The specification makes clear that the projections and slots are preferable, which denotes they are not required. '978 Patent, Col. 5:57–58… Importing "structural limitations from the written description that are unnecessary to perform the claimed function" is improper. *Wenger*, 239 F.3d at 1233.   The specification does not associate the projections and slots with performing the mounting means function. Accordingly, the projections and slots are not necessary structure.

Ex. 6, pp. 11-12. This Court's prior reasoning on this issue is sound.  In fact, a POSITA understands that the projections and slots only serve to inhibit or limit angular orientation of the displays such that they can angled toward each other only when they arranged vertically or horizontally to each other. There is nothing in the agreed function that requires the means for adjusting to limit the range of such adjustment to only two directions.  However, inclusion of Defendants' proposed "slots" and "projections" would impose that limitation on the ball and socket joint.  Ex. 2, ¶20.

The plain language of the claims specifies that the displays be "angled toward each other to a desired degree." The "projections and slots" structure proposed by Defendants would prevent such movement if the user desires to angle the displays in a plane other than the vertical or horizontal. In other words, Defendants' construction is contrary to the plain language of the claim, and the

---

[10] *See, e.g.,* '978/5:55-57 ("The ball joint 126 is *preferably* configured with pins and slots like the ball joint described above…") (emphasis added)

[11] *See, e.g.,* '978/3:66–4:18 ("The vertical projections 66 are received in the vertically registered slots 62, permitting free rotation of the display 16 about the vertical axis, but only limited rotation of the display 16 about the horizontal axis. The horizontal projections 68 are received in the horizontally registered slots 64, permitting free rotation of the display 16 about the horizontal axis, but only limited rotation of the display 16 about the vertical axis.  *This arrangement effectively permits only limited degree of tilting of the display 16 about two mutually perpendicular axes, in this implementation about vertical and horizontal axes.*") (emphasis added).

[12] The slots are identified as numbers 62 and 64 in Figures 8 and 9 and as number 178 in Figure 20. The projections are identified as numbers 66 and 68 in Figures 8 and 9 and as number 180 in Figure 20.

projections and slots are not necessary structure for performing the claimed function.

In addition, Defendant SpaceCo, presumably in collaboration with co-Defendant Planar, has argued in the IPR proceedings that the Court's prior construction is correct and that the slots and projections now proposed by Defendants should not be included as necessary structure. Ex. 10, pp. 24-25.  In fact, the IPR petition emphasizes this assertion multiple times, in direct contradiction to Defendants' position in this proceeding, including that "*it cannot be overstated* that the protrusions on the ball and corresponding slots are *not* part of the present structure." *Id.*, pg. 25 (emphasis added).

For the reasons set forth above, including the Court's correct prior consideration and construction of this term, the Court should adopt its prior construction and reject Defendants' erroneous attempt to add structures that are not clearly linked to, and in fact would partially inhibit, the function of the adjusting means.

| 5. | The mounting means permits the one display to assume a first angular position and a second angular position[13] |
|---|---|
| **MASS:** *See* above re mounting means. Otherwise, plain meaning and needs no construction. | **Defendants:** Governed by 35 U.S.C. § 112(6)<br><br>**Function:** permit one display to assume a first angular position and a second angular position<br><br>**Structure:** A shaft 58, socket 76, two stops 84 and 90, tabs 80 and 82 (the tabs and stops limiting the rotation to 90 degrees) |

The parties have agreed that the Court's prior construction of the term "mounting means for mounting the displays to the arm assembly" is correct.  *See* below and Ex. 6.   The additional description of what the mounting means permits in the context of these dependent claims does not rise to the level of a new MPF term and does not require further construction.   Even assuming that this additional term containing a previously construed MPF term was, itself, a MPF term, which it is not, all of the structure necessary for performing the function proposed by Defendants has already been included in the agreed construction of "mounting means."  Ex. 2, ¶21 & ¶22.

---

[13] '978 Patent claims 18 and 27.

Realizing that the Court has already properly construed the term "mounting means" and that the Court's proper construction does not include the "stops" that Defendants continue to attempt to improperly read into the claims, Defendants seek a second bite at the apple by arguing that this description of the mounting means should (a) be construed under § 112 ¶f and (b) that the construction should include stops.  However, including for the reasons set forth above with regard to "mounting means," the stops would not be necessary structure to perform the Defendants' alleged "function," even if this further iteration of the "mounting means" term was itself a separate MPF term – which it is not.

The agreed construction of "mounting means" already includes tabs 80 and 82.  The function performed by these tabs is mounting the displays to the arm assembly because the tabs secure the stem of the ball joint to the arm assembly.    Stops 84 and 90 are depicted in Fig. 8 of the '978 patent (here in red for identification) as follows:



Fixed stop 90 and rotatable stop 84 both perform the same function.  As  the Defendants admit in their proposed construction, "the tabs and stops [are for] limiting the rotation to 90 degrees." *See, e.g.,* Ex. 3, Col. 4, Lines 64-67 ("Rotation of the shaft 58 and thus the display 16 relative to the arm 18 is restricted to 90 degrees between two extreme angular positions well-defined by the stops."). Thus, they are limiting structures, including as shown in Fig. 8.  They are not structure that *permits*

the one display to assume a first angular position and a second angular position.  For example, one could remove the stops from the Fig. 8 embodiment, and the mounting means would still permit one display to assume a first angular position and a second angular position by rotating the display 270 degrees about a horizontal axis running through the center of the shaft of the ball joint. The stops are not necessary to permit the one display to assume a first angular position and a second angular position.

| 6. | [the mounting means comprises] connector means for connecting one of the displays to the arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted[14] |
|---|---|
| **MASS:** Construed under 35 U.S.C. § 112(f)<br><br>Function: connecting one of the displays to the arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted<br><br>Structure: Same as for mounting means, but not including socket 198, and further including both sockets 202 and 204 (versus mounting means having either socket 202 or 204) plus equivalents (Figure 20). | **Defendants:** Governed by 35 U.S.C. § 112(6)<br><br>**Function:** connecting one of the displays to the arm at predetermined, fixed positions spaced along the arm<br><br>**Structure:** Socket **202**, socket **204**, connector 166, bolt **200**, plus equivalents; |

The parties agree that this term is a MPF term.  However, the parties disagree on the proper function and structure.  MASS proposes that the function be consistent with the entirety of the claim language related to the "connector means" – "connecting one of the displays to the arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted."  This is identical to the construction proposed by Defendant SpaceCo, presumably in collaboration with Defendant Planar, in concurrent IPR proceedings. Ex. 10, pp. 15 & 49.  Here, however, Defendants have taken a different position with no explanation for the discrepancy.  The Court should adopt MASS's position and construe the function of "connector means" using the entirety of the function set forth in the claim.

With regard to the structure for performing the function, it should be noted that the larger phrase is "the mounting means comprises connector means for connecting one of the displays to the

---

[14] '978 Patent, claim 25.

arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted." The antecedent basis for "mounting means" is "mounting means for mounting the displays to the arm assembly."   The parties have already agreed that the function of the term "mounting means for mounting the displays to the arm assembly," is "mounting the displays to the arm assembly," and that the corresponding structure is the following:

> ball 56, shaft 58, socket 60, hole 72, tabs 80, 82, rear of the display 16, plus equivalents (Figures 8 and 9) OR
> ball 172, shaft 174, socket 170 with flat surface 190, shell 184 with flat 192, plate 182, screws 186, screws 188, plug 194, socket 198 (or 202 or 204), bolt 200, rear of the display 152, plus equivalents (Figure 20).

The phrase "[the mounting means comprises] connector means for connecting one of the displays to the arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted" imposes an additional functional (and corresponding structural) requirement of a connector means for connecting one of the displays connecting one of the displays to the arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted.   The structure in the specification that corresponds to this function includes the two sockets 202 and 204 as depicted in Fig. 19, as follows:



FIG. 19

The rest of the necessary structure for connector means is included in the mounting means with two refinements: (1) socket 198 is structure for mounting means because this socket is needed

for mounting two displays, but it is not needed for connecting *one* of the displays to the arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted; and (2) for connector means, *both* socket 202 *and* socket 204 (as opposed to merely needing either socket 202 *or* socket 204 for "mounting means" itself) are necessary structure because this dual socket structure allows one display to be spaced at adjustable distances from the other.  This is what is stated in MASS's proposed construction above. Defendants' proposed construction includes bolt 200, which is erroneous to the extent that bolt 200 is already included in the agreed construction of mounting means.  A second bolt is not needed for the additional functionality of the connector means.  Further, Defendants erroneously include connector 166 in their proposed construction of connector means. However, the *relevant* structures of connector 166 are already included in the agreed construction of mounting means.  A second connector 166 is not needed for the additional functionality of the connector means.  Finally, and perhaps most importantly, presumably Defendants' inclusion of "connector 166" is intended to further include projections 180 and slots 178 since the connector "includes a ball joint…and the ball 172 is formed with projections 180." '978/6:66-7:3.  However, the projections 180 and slots 178 with which they mate are not necessary structure for "connecting one of the displays to the arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted."  .

As noted above, the projections and slots are structures that limit the orientations at which the displays may be toward each other to a desired degree.  As noted above, these structures limit the "means for adjusting" function and they are not clearly linked to that function.  Nor are they clearly linked to the function for the "connector means."  The projections and slots have nothing to do with connecting one of the displays to the arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted.  They have nothing at all to do with spacing one of the displays at varying positions along the arm.  Sockets 202 and 204 are the only structures clearly linked to that

function.

As would be clear to a POSITA, all the structure that is needed to perform the required function is the mounting means in conjunction with the additional structure set forth above by MASS, namely the inclusion of both socket 202 and socket 204 instead of merely either of them, plus equivalents.

As noted above, when construing claim terms under § 112 ¶f, it is only the structure used to accomplish the claimed function that is significant; structure that accomplishes other functions is immaterial and not part of the claim analysis. *See, Wenger,* 239 F.3d at 1233; *Acromed Corp.,* 253 F.3d at 1382.  As expressed in the '978 Patent at 3:63 – 4:15; 7:15 and shown in Figures 9 and 20, the projections engage the back of the slots to *limit* the extent to which a preferred[15] embodiment joint may pivot,[16] but do not themselves perform the adjusting means, or the mounting means, or the connecting means. Structure unnecessary to perform the claimed function is irrelevant in construing § 112 ¶f limitations. *Wenger,* 239 F.3d at 1233; *Acromed,* 253 F.3d at 1382.  Here, the specification makes clear that the sole purpose of the slots and projections are to "permit only limited tilting of the display 152 along two mutually perpendicular axes." ['978/7:1-5].

As noted above, in the *Ergotron* case, this Court specifically addressed and properly rejected the inclusion of the very same structures that Defendants now seeks to improperly add:

> The parties dispute whether the slots and projections[17] should be included as structure for the mounting means … The specification makes clear that the projections and slots are preferable, which denotes they are not required. '978 Patent, Col. 5:57–58… Importing "structural limitations from the written description that are unnecessary to

---

[15] *See, e.g.,* '978/5:55-57 ("The ball joint 126 is *preferably* configured with pins and slots like the ball joint described above…") (emphasis added)

[16] *See, e.g.,* '978/3:66–4:18 ("The vertical projections 66 are received in the vertically registered slots 62, permitting free rotation of the display 16 about the vertical axis, but only limited rotation of the display 16 about the horizontal axis. The horizontal projections 68 are received in the horizontally registered slots 64, permitting free rotation of the display 16 about the horizontal axis, but only limited rotation of the display 16 about the vertical axis. *This arrangement effectively permits only limited degree of tilting of the display 16 about two mutually perpendicular axes, in this implementation about vertical and horizontal axes.*") (emphasis added).

[17] The slots are identified as numbers 62 and 64 in Figures 8 and 9 and as number 178 in Figure 20. The projections are identified as numbers 66 and 68 in Figures 8 and 9 and as number 180 in Figure 20.

> perform the claimed function" is improper. *Wenger*, 239 F.3d at 1233.   The
> specification does not associate the projections and slots with performing the mounting
> means function. Accordingly, the projections and slots are not necessary structure.

Ex. 6, pp. 11-12. This Court's prior reasoning on this issue is sound.  In fact, a POSITA understands,

consistent with the explicit teachings of the specification, that the projections and slots only serve to

inhibit angular orientation of the displays such that they can angled toward each other only when they

arranged vertically or horizontally to each other.  There is nothing in the agreed function that requires

the connector means to limit the range of such adjustment to only two directions. However, inclusion

of Defendants' proposed "slots" and "projections" would impose that limitation on the ball and socket

joint. Ex. 2, ¶20.

| 7. | positioning means for positioning displays, the positioning means comprising[18] | |
|---|---|
| **MASS:** apparatus used to position displays | **Defendants:** Governed by 35 U.S.C. § 112(6).<br><br>**Function:** positioning the pair of displays<br><br>**Structure:** The structure of this element is limited to the specific structures disclosed in the patent for the following sub-elements, some of which are also governed by 112(6) as noted below:<br>An arm assembly for supporting the displays Support means for supporting the arm assembly (112(6) – see structure identified below) Mounting means for mounting the displays to the arm assembly (112(6) – see structure identified below), the mounting means comprising means for adjusting the angular orientation of each of the displays relative to the arm assembly to permit said displays to be angled toward each other to a desired degree (112(6) – see structure identified below) |

The Court has previously construed the term "positioning means for positioning the displays"

to mean "apparatus used to position the displays." *See* Ex. 6-8.  There is no reason for the Court to

depart from its informed, well-reasoned construction.  In the presently pending *Inter Partes Review*

("IPR") proceedings Defendant SpaceCo, presumably in collaboration with Defendant Planar, has

proposed this *same* construction, in direct contravention to its position here. Exhibit 10, pg. 17.

It is well established that while the use of the word "means" gives rise to a presumption that

§ 112 ¶f applies, "the presumption is overcome by the recitation of the structure needed to perform the recited function." *TI Group Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1135 (Fed. Cir. 2004).

Claim 16 states "positioning means for … comprising:" "an arm assembly," "support means …," "mounting means …," and "means for adjusting …." '978/11:10–12:2. Although the recited structure includes MPF limitations, there is sufficient structure in the claim language such that § 112, ¶ f does not apply. *British Tel. PLC v. Prodigy Commc'n Corp.*, 189 F. Supp. 2d 101, 110 (S.D.N.Y. 2002); *see also Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359–60 (Fed. Cir. 2004) ("we have held that it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function"). The Court's prior construction reaches this same conclusion. *See* Ex. 6, pp. 6-8. The structure is identified by both specific components (*e.g.*, arm assembly) and functions (*e.g.*, "positioning means comprising … support means . . . mounting means. . . " and "means for adjusting…"). "The structure of the component parts is present-it is just found in a different part of the patent, in the specification, rather than in the claim language." *British Tel. PLC*, 189 F. Supp. 2d at 110. Accordingly, this is not a MPF limitation. A POSITA would understand "positioning means" has a structure and that it means an "apparatus used to position displays." Ex. 2, ¶16 & ¶17.

Defendants contend that this term is to be construed under 35 U.S.C. § 112 ¶f; however, as this Court has already correctly determined, the term is not subject to § 112 ¶f. Although use of the term "means" creates a rebuttable presumption that the language is a § 112 ¶f limitation, the presumption is not conclusive. *York Prods., Inc. v. Central Tractor Farm & Family Center,* 99 F.3d 1568, 1574 (Fed. Cir. 1996). One instance in which the presumption is rebutted occurs when a claim uses the term "means," but that claim also recites structure defining the means for performing the

function. *Searfos v. Pioneer Consolidated Corp.*, 374 F.3d 1142, 1149 (Fed. Cir. 2004) ("The claim specifically recites the structure that performs the claimed function … thus overcoming the presumption resulting from use of the word 'means.'"); *Personalized Media Communications, L.L.C. v. Int'l Trade Comm'n*, 161 F.3d 696, 704 (Fed. Cir. 1998); *see also, Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996); *Sage Prods. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427-28 (Fed. Cir. 1997) ("[W]here a claim recites a function, but then goes on to elaborate sufficient structure, material, or acts within the claim itself to perform entirely the recited function, the claim is not in means-plus-function format").   Perhaps the best evidence that this is not a MPF term is Defendants' proposed construction, which merely points to the sub-elements of "positioning means" as providing the structures which perform its alleged function.

MASS's position is the same as this Court's correct, previous construction. Although the recited structure includes MPF language which is addressed elsewhere, there is sufficient structure in the "positioning means" claim language such that § 112 ¶ f does not apply."  Ex. 6, pp. 6-7.

| 8. | The positioning means allows positioning of the rear portion at a plurality of distances from the support means to minimize a spacing [19] |
|---|---|
| **MASS:** *See* above re positioning means and support means.  Otherwise, plain meaning and needs no construction. | **Defendants:** Governed by 35 U.S.C. § 112(6)<br><br>**Function:** positioning of the rear portion at a plurality of distances from the support means to minimize a spacing<br><br>**Structure:** Telescopic arm<br>or<br>socket 198 in arm 162, pair of sockets 202 and 204 axially spaced along arm 162 at an opposite end of the arm 162 from socket 198, plug 194 receivable by socket 198, and plug 166 receivable by socket 202 or 204 |

This term needs no construction beyond the Court's prior, correct construction of "positioning means" and "support means," including as set forth above.  Here, as above, the recited structure of "positioning means," a non-MPF term, includes MPF limitations that provide structure for the "positioning means" term.  There is sufficient structure in the claim language such that § 112 ¶f does

---

[19] '978 Patent claims 18 and 27.

not apply. *British Tel. PLC v.* 189 F. Supp. 2d at 110.  Ex. 2, ¶23 & ¶24.

Defendants again seek a second bite at the "positioning means" apple, despite the fact that the Court has already correctly construed the term "positioning means" as "apparatus used to position displays" – not as a MPF term, as Defendants once again erroneously propose.  As the Court reasoned in its prior *Markman* Order, "[t]he claim language recites sufficient structure … Although the recited structure includes MPF limitations, there is sufficient structure in the claim language such that § 112 ¶f does not apply." Ex. 6, pp.6-7.  The same reasoning applies here – that the term "positioning means" is not subject to § 112 ¶f and needs no construction beyond the previously and correctly construed terms "positioning means" and "support means."

Further, even if the Court were to erroneously conclude this is a MPF term, Defendants' mis-state the corresponding structures.  If it was a MPF term, which it is not, then the corresponding structures would be a telescopic arm and also the same structures noted above corresponding to "connector means."  This is because, as noted above with respect to "connector means," the use of both socket 202 and socket 204 would be the structure (aside from a telescopic arm) disclosed in the '978 specification that allows positioning of the rear portion at a plurality of distances from the support means to minimize a spacing. *See* Fig. 9.  One would use socket 202 to decrease the distance between the support means and the rear of the display from the distance at socket 204. *Id. See, e.g.,* Ex. 2, Col. 7, Lines 61-64 ("The display 152 is mounted to the socket 204 at the end of the arm 162 to increase the spacing between the displays.").

| 9. | [support arm structure having] a single piece support arm that extends on either side of the support column[20] |
|---|---|
| MASS: *See* above re arm. Otherwise, plain meaning and needs no construction. | **Defendants:** one support arm, formed as a single piece, that extends on either side of the support column; alternatively, one integral arm extending on both sides of the support column. |

The full phrase at issue is "support arm structure having a single piece support arm that extends on either side of the support column. Defendants' primary construction erroneously conflates the terms "support arm structure" and "single piece support arm." They ignore that the plain language of the claim recites that the support arm structure includes a single piece support arm (*i.e.*, the support arm is just a component of the support arm structure and *is not* synonymous with the entire support arm structure). Further, Defendants insert the word "formed," (*i.e.*, "formed as a single piece") apparently to suggest that a single piece support arm has to be cast or forged as a single piece. However, the claim language only requires a support arm to be a single piece. It does not matter how the support arm was made (*e.g.*, cast or formed).

With regard to Defendants' alternative construction, Defendants fail to explain why it would be appropriate to replace the words "single piece" with the word "integral."

| 10. | [support arm structure having] a support arm that extends on either side of the support column[21] |
|---|---|
| MASS: *See* above re arm. Otherwise, plain meaning and needs no construction. | **Defendants:** one support arm, formed as a single piece, that extends on either side of the support column; alternatively, one integral arm extending on both sides of the support column. |

Defendants' construction of this phrase has essentially the same infirmities as the one immediately above. Further, here Defendants' use of "formed as a single piece" is even more glaringly inaccurate for this phrase in claim 9, since "single piece" is not even present in the phrase. Defendants cannot import a claim limitation from independent claim 1 into independent claim 9 where there is no such limitation. Aside from violating the doctrine of claim differentiation, Defendants' logic is simply flawed. For these reasons and the ones stated above with respect to the

---

[20] '331 Patent, claim 1.
[21] '331 Patent, claim 9.

"single piece support arm…" limitation in claim 1, this phrase should be construed with its plain and ordinary meaning, without the improperly imported language from Defendants' construction.

| 11. | base/base member/base structure[22] | |
|---|---|---|
| **MASS:** the lowermost portion of the system that supports the arm assembly above a work surface | **Defendants:** The lowermost portion of the system that supports the arm assembly above a surface | |

The Court has previously construed the terms "base" and "base member" to mean "the lowermost portion of the system that supports the arm assembly above a surface." *See* Ex. 6, pp. 6 & 23.  MASS proposes clarifying this construction by making clear that the base supports the arm assembly above a "work surface."  MASS acknowledges that the Court has ruled differently before.  However, Mass's position is the most consistent with the intrinsic evidence, including the specification and file history.  One of the problems solved by the inventions of the patents-in-suit was conserving desk space with a versatile, single stand solution for multiple monitors.  *See* '978/1:17-18 ("Paired monitors can be inconvenient, however, where limited desk space is available"); '103/1:19-20 ("Paired monitors can be inconvenient, however, where limited desk space is available"); '331/1:14-18 (system conserves limited desk space).The stated work surface is the desk, table top, or other surface for office or business use that used by the viewer when employing the multiple display system, rather than just any "surface" as Defendants' definition proposes.  *See* '978/1:17-18; '103/1:19-20; '331/1:14-18; '331/3:20-23 (base stands on horizontal surface). .

Further, during prosecution of the '978 patent, the applicant stated that, "this [base] is used to support the arm assembly above a work surface." Ex.  11 at 51. In the *Ergotro*n case, the Court made the point that "the prosecution history does not reference where the base must rest." *Ergotron* case, Dkt. No. 266, p. 5.  However, MASS's proposed construction does not relate to where the base rests, but rather where the arm assembly is positioned in conjunction with the base.  Mr. Moscovitch was clear during the prosecution of the '978 Patent that the base "support[s] the arm assembly above a

---

[22] '978 Patent, claim 16.

*work* surface." Exhibit 11, at M22256 (emphasis added).  This is consistent with the examples shown and described in the '978, '103, and '331 patents. *See, e.g.,* '978/1:17-18; 1:34-39; 2:24-27, 3:23-26, and Claims 1, 16, and 17; '103/1:19-20; 1:38-43, 5:29-31, 8:54-59, 14:31-34, 17:17-21 and Claim 1; and '331/3:11-12 and Claims 1 and 9.  In each instance, the base supports the arm assembly above a work surface (*i.e.*, the viewer's desk, table, counter, or other surface for office or business use).

Further, while Defendants in this case have proposed removing the "work surface" limitation, Defendant SpaceCo has taken yet another contrary position in its pending IPR Petition.  Ex. 10 at 15. There, Defendant SpaceCo has argued that the base, *inter alia*, "supports the arm assembly above a work surface."  Therefore, in the IPR proceedings, at least Defendant SpaceCo agrees with MASS that the base must support the arm assembly above a "work surface."  Even if Defendants argue that the PTO applies a "broadest reasonable interpretation" standard for claim construction, there is no reasonable dispute that Defendant SpaceCo's proposed construction in the IPR is narrower than the construction Defendants have proposed here.

## B. *Agreed Terms Needing Correction.*

The parties agree that "oldie arm" in claim 5 of the '331 Patent should be construed as "of the arm," and "a plane asymmetry" in claim 11 of the '331 Patent should be construed as "a plane of symmetry." These phrases were spelled/worded correctly in the claims as submitted by the patentee, *see* Exhibit 12, pp. 8-9 (final set of claims), and they are typos by the Patent Office.

Courts can correct obvious minor typographical and clerical errors in patents during claim construction. *Novo Industries v. Micro Molds*, 350 F.3d 1348, 1357 (Fed.Cir.2003). Such errors must be evident on the face of the patent. *Group One v. Hallmark Cards*, 407 F.3d 1297, 1303 (Fed.Cir.2005); *Novo*, 350 F.3d at 1357. An error in a patent is minor, and court has the authority to correct it, if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different

interpretation of the claims. *Novo,* 350 F.3d at 1350.  These obvious typos on the part of the PTO

meet all of the criteria, and thus should be corrected.

The Parties further agree on the construction of the following terms, which are also consistent

with the Court's prior constructions:

| Term | Proposed Construction |
|---|---|
| **mounting means for mounting the displays to the arm assembly** | Construed under 35 U.S.C. § 112(6)<br><br>Function: mounting the displays to the arm assembly<br><br>Structure: ball 56, shaft 58, socket 60, hole 72, tabs 80, 82, rear of the display 16, plus equivalents (Figures 8 and 9)<br>OR<br>ball 172, shaft 174, socket 170 with flat surface 190, shell 184 with flat 192, plate 182, screws 186, screws 188, plug 194, socket 198 (or 202 or 204), bolt 200, rear of the display 152, plus equivalents (Figure 20). |
| **support means for supporting the arm assembly from the base member**[23] | Construed under 35 U.S.C. § 112(6)<br><br>Function: supporting the arm assembly from the base member<br><br>Structure: upright 20, circular recess 34 in upright 20, washer 36, and bolt 38, plus equivalents (Figure 7)<br>OR<br>upright 158, socket 206 in upright 158, plug 208, and bolt 210, plus equivalents (Figure 19) |

Date: March 10, 2015

Respectfully submitted,

By: /s/ *Stephen F. Schlather*
Stephen F. Schlather
Texas Bar No. 24007993
John J. Edmonds
Texas Bar No. 789758
Shea N. Palavan
Texas Bar No. 24083636

---

[23] '978 Patent claims 16, 21-22, 27, 38.

**COLLINS, EDMONDS, POGORZELSKI,**
**SCHLATHER & TOWER, PLLC**
1616 S. Voss Road, Suite 125
Houston, Texas 77057
Telephone: (713) 364-2371
Facsimile: (832) 415-2535
Email: sschlather@cepiplaw.com
          jedmonds@cepiplaw.com
          spalavan@cepiplaw.com

Andrew Spangler
Texas Bar No. 24041960
**SPANGLER LAW P.C.**
208 N. Green Street, Suite 300
Longview, Texas 75601
Telephone:(903)753-9300
Facsimile: (903) 553-0403

***Attorneys for Plaintiff***
***MASS Engineered Design, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.


Date: March 10, 2015                    */s/ Stephen F. Schlather*
                                        Stephen F. Schlather