United States District Court
Eastern District of Texas
Tyler Division

| | |
|---|---|
| Mass Engineered Design, Inc. | Civil Action No. 6:14-cv-00411-LED |
| Plaintiff | LEAD CASE |
| v. | |
| SpaceCo Business Solutions, Inc., | |
| Defendant | |
| v. | Civil Action No. 6:14-cv-00414-LED |
| Planar Systems, Inc. | |
| Defendant | |

**Defendants' Amended Responsive Claim Construction Brief**

## Table of Contents

Table of Contents ................................................................................................................................1

Table of Authorities .............................................................................................................................2

Disputed Terms ....................................................................................................................................1

1. "an arm assembly for supporting the displays"  ('978 Patent, Claim 16) ............................1

2. "an arm assembly having an arm that extends from the column"  ('103 Patent, Claim 1) .....................................................................................................................................2

3. "arm assembly is extendable from a retracted configuration to an extended configuration"  ('103 Patent, Claim 1) ..............................................................................4

4. "means for adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired" ('978 Patent, Claim 16) ............................................................................7

5. "The mounting means permits the one display to assume a first angular position and a second angular positions" ('978 Patent, Claims 18, 27) .....................................12

6. "connector means for connecting one of the displays to the arm at positions spaced along the arm …" ('978 Patent, Claim 25) ........................................................14

7. "positioning means for positioning displays, the positioning means comprising" ('978 Patent, Claim 16) .............................................................................................18

8. "The positioning means allows positioning of the rear portion at a plurality of distances from the support means to minimize a spacing" ('978 Patent, Claims 18, 27)..23

9. "a single piece support arm that extends on either side of the support column…" ('331 Patent, Claim 1) ...............................................................................................26

10. "a support arm that extends on either side of the support column…" ('331 Patent, Claim 9) ......................................................................................................................26

11. base member ('978 Patent, Claim 16) ...............................................................................29

## <u>Table of Authorities</u>

### Cases

*British Telecomms. PLC v. Prodigy Communs. Corp.*, 189 F. Supp. 2d 101 (S.D.N.Y. 2002) .. 19, 21, 22

*Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325 (Fed. Cir. 2010)........................................... 7

*Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364 (Fed. Cir. 2014).......................................... 5

*Inventio AG v. Thyssenkrupp Elevator Americas*, 649 F. 3d 1350 (Fed. Cir. 2011) .................... 21

*Ishida Co., Ltd. v. Taylor*, 221 F. 3d 1310 (Fed. Cir. 2000) ......................................................... 17

*Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354 (Fed. Cir. 2004).............. 19, 22

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308 (Fed. Cir. 2003).............. 15

*On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133 (Fed. Cir. 2004). .. 29

*Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995) ............................ 19, 28

*Tex. Instruments Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165 (Fed. Cir. 1993) ...... 15

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE*, 264 F.3d 1111 (Fed. Cir. 2001) ..................................................................................................................................................... 21

## Introduction

In order to accept Mass's preferred constructions, this Court must ignore the plain language of the claims, the disclosures in the specifications, and well-settled canons of claim construction. As discussed below, Defendants advance correct constructions of the terms in dispute that should be accepted.

## Disputed Terms

| 1.  "an arm assembly for supporting the displays"  ('978 Patent, Claim 16) | |
|---|---|
| Defendants' Proposed Construction: | Mass Proposed Construction: |
| '978 patent- a structure having one or more constituent parts connected to and projecting from the support means<br><br>'103 patent- a structure having one or more constituent parts connected to and projecting from the column | a structure having one or more constituent parts connected to and projecting from the support means ('978 Patent) or column ('331 Patent or '103 Patent) |

As noted by the Plaintiff in the opening brief, the parties have essentially agreed that the term "an arm assembly for supporting the displays" in the '978 patent should mean "a structure having one or more constituent parts connected to and projecting from the support means."  The Defendants' position is that it is inappropriate to have a single definition for the term "arm assembly" when different iterations of that term appear in the various patents-in-suit.  Thus, for the '103 patent, the Defendants submit the definition of "arm assembly" should be "a structure having one or more constituent parts connected to and projecting from the column."  The '331 patent claims a "support arm" and a "support arm structure." As discussed below, the '331 patent ascribes distinct constructions to those terms.

The Plaintiff's definition which includes "support means or column" will be confusing to a lay juror, who might conclude that if they found a structure corresponding to a "column" that would suffice for infringement under the '978 patent and conversely if they found a structure

corresponding to a "support means" that would suffice for infringement under the '103 or '331

patents.  Consequently, the Defendants request that the construction for arm assembly be set

forth separately for each patent, and include only the relevant term for that patent, be it "support

means" or "column," so as to prevent any chance of confusion on the part of the jury.

| 2.  **"an arm assembly having an arm that extends from the column"  ('103 Patent, Claim 1)** | |
|---|---|
| Defendants' Proposed Construction: | Mass Proposed Construction: |
| an arm assembly that has an arm that is capable of increasing or expanding in length when projecting from the column | *See* above re arm assembly. Otherwise, plain meaning and needs no construction. |

There are two problems with Mass's proposed construction for this term. First, Mass

ignores the express differentiation in the claim between "arm assembly" and "arm."  Second,

Mass ignores the explicit definition of "extend" in the '103 patent which is defined by the

patentee in the specification of the '103 patent to mean "telescoping."  SpaceCo's construction

takes into account both of these issues and should be adopted for that reason.

The arm assembly is different from the arm, as used in this claim.  The claim requires "an

arm assembly having an arm."  Thus, it is unquestionable that the arm and the arm assembly

comprise two different structures.  To argue otherwise ignores the plain meaning of the claim

and specification of the '103 patent which states:

> With specific reference to FIGS. 45-47, the lower support arm 186
> comprises a tubular construction and the upper support arm 188
> comprises a neck portion 194 which enables the upper support arm
> 188 to be extended (i.e., telescoped) relative to the lower support
> arm 186. The upper support arm 188 further includes a hinge 196
> which enables the upper LCD panel 192 to be angled relative to the
> neck portion 194 so as to place it at a convenient viewing angle.

The upper and lower support arms of the device disclosed in the '103 patent are each

"arms" and in combination, they form the "arm assembly."  The "arms" may be a sub-

component of the larger "arm assembly, " but to say that they are one in the same, as Mass advances, would render the claim limitation "having an arm" superfluous.  The single embodiment claimed in the '103 patent shows two arms that telescope together with one of the arms also having a hinge.  The arms must be construed as being something different from the arm assembly, and thus Mass's proposed construction is incorrect.

Further, as will be discussed in greater detail below, the specification of the '103 patent defines "extending" as "telescoping" and also distinguishes the extending/telescoping action shown in Figure 45 from the angling/hinging action shown in Figure 46.  (See '103 Patent at col. 14, lines 38-58.)   The patentee used the definitional term "i.e." in defining extended as telescoped when the patentee stated in the specification "which enables the upper support arm 188 to be extended (i.e., telescoped)." (See '103 patent at col. 14, lines 38-58) When the patent uses the definitional language "i.e.", the claims must be construed according to the definition provided in the specification.  Thus, since the patentee specified that the arm "extends from the column" this should be construed to mean that the arm is capable of increasing or expanding in length when projecting from the column.

This construction is again entirely consistent with the section of the specification set forth above that states: "the lower support arm 186 comprises a tubular construction and the upper support arm 188 comprises a neck portion 194 which enables the upper support arm 188 to be extended (i.e., telescoped) relative to the lower support arm 186."  The lower support arm is fixed to the support column, thus when the upper support arm is telescoped relative to the lower support arm, it also extends (i.e. telescopes) from the support column.  Mass's reference to Figures 7, 20, 82 and 84 and other references in the specification of the '103 patent that use "extend" are misplaced because the only structure claimed in the '103 patent is the device shown

in Figures 44-49.  In a Response to Office Action dated May 15, 2009, the patentee told the

USPTO that "[s]upport for these amendments can be found in Figures 44-49 and the portion of

the specification describing these figures."  Mass cannot now rely on alternate, unclaimed

embodiments to try to broaden the construction of this term.  Mass's arguments based on claim

differentiation are also baseless, as will be described in more detail below.

     SpaceCo's construction takes into account the explicit definitions in the specification of

the '103 patent of "arm" and "extend."  Mass's construction is overly-broad, ignores the

specification of the patent, and is merely calculated to manufacture a basis for infringement

where none exists.  For these reasons, the Court should adopt SpaceCo's construction for this

term.

| 3.  "arm assembly is extendable from a retracted configuration to an extended configuration"  ('103 Patent, Claim 1) | |
| --- | --- |
| Defendants' Proposed Construction: | Mass Proposed Construction: |
| an arm assembly that has an arm that is capable of increasing or expanding in length when projecting from the column | *See* above re arm assembly. Otherwise, plain meaning and needs no construction. |

     Mass, ignoring the express limitation of this term in the specification of the '103 patent,

claims that this term does not require construction.  SpaceCo, on the other hand, submits that

Court should construe this term as the patentee defined it- that "extending" means "telescoping."

     The specification of the '103 patent defines "extending" as "telescoping." (See '103

Patent at col. 14, lines 38-58.)  This portion of the specification of the '103 patent also

distinguishes "extending" from "hinging." Id.  The court should adopt SpaceCo's construction of

this term because it matches the patentee's definition of this term, while Mass's construction

ignores the express definition in the patent to manufacture a case for infringement.

     The '103 patent claims a dual-monitor stand in which one of the monitors can be

repositioned from a position facing the user to a position facing a person opposite the user. The stated use of this device is for places like airline ticket counters, where the operator viewing the first monitor and the customer viewing the second monitor may be at different heights. (Id. at 14:45-58.)

In order to accommodate the difference in heights between the viewers, the patent discloses a two-step process for repositioning the second monitor to face the customer.  First, the arm supporting the second monitor is extended (i.e., telescoped) to adjust the height of the monitor. Second, the arm is hinged to flip the monitor to face the opposite side:

> With specific reference to FIGS. 45-47, the lower support arm 186 comprises a tubular construction and the upper support arm 188 comprises a neck portion 194 which enables the upper support arm 188 to be extended (i.e., telescoped) relative to the lower support arm 186. The upper support arm 188 further includes a hinge 196 which enables the upper LCD panel 192 to be angled relative to the neck portion 194 so as to place it at a convenient viewing angle. As is apparent in FIG. 47, the upper LCD panel 192 can even be rotated into position to face away from the lower LCD panel 192. This orientation is particularly well suited for retail applications where a sales person needs to view information while inputting product or other information, and where it is desirable to display to the customer various items of information as the transaction is conducted. Advantageously, the telescoping upper support arm 188 and the hinge 196 enable the two LCD panels 192 to be placed at separate heights to accommodate airline ticket counters, hotel registration counters and other like structures where an employee's counter is frequently at a different height from a surface or counter useable by a customer.

The specification of the '103 Patent therefore defines "extending" as telescoping and distinguishes the extending/telescoping action shown in Figure 45 from the angling/hinging action shown in Figure 46.  It is most important to note that the patentee used the definitional term "i.e." in defining extended as telescoped when the patentee stated in the specification "to be extended (i.e., telescoped)."  The term "i.e." is a definitional term.  *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364 at 1374 (Fed. Cir. 2014).  When the patent uses definitional language,

the claims must be construed according to the definition provided in the specification.

Mass's brief admits that the embodiment shown in Figures 44-49 of the '103 patent is limited to a telescoping mechanism.  Mass then tries to confuse the issue by pointing to other embodiments in the '103 patent as not having this limitation.  This is irrelevant.  As pointed out above, the patentee stated that the basis for the claims in the specification was Figures 44-49 and the written description of those figures.

Mass argues that SpaceCo's construction does not include "hinging."  This exactly correct, because the '103 patent differentiates "extending" from "hinging."  The '103 patent describes and claims a two-step process consisting of extending the arm and then hinging the arm assembly in order to flip one of the system's two displays to face another person.  In the "extending" step, the upper part of the arm is "extended (i.e. telescoped)" up from the lower part of the arm assembly, as shown in Figure 45 of the patent.  After the "extending" step is completed, a subsequent "hinging"  step is performed, in which "hinge 196 … enables the upper LCD panel 192 to be angled relative to the neck portion 194 so as to place it at a convenient viewing angle[,]" as shown in Figure 46. (*See* '103 patent at col. 14, lines 38-58 and Figs. 44-47.)

That the hinging of the assembly is a completely separate function from the extending/ telescoping function is clear from the claim language itself.  Claim 1 requires that the arm has "a joint that allows the two portions to hinge," and that "the arm assembly is extendable from a retracted configuration to an extended configuration."  These are separate requirements in the claim.  Mass's proposed construction would make these separate requirements into a single requirement, when the specification and claim make it clear that they are separate structures and functions.

Finally, Mass's attempt to argue that claim differentiation based on claim 4 of the '103

patent supports its construction is easily disposed of.  Claim 4 depends from claim 3, which recites "[a] computer display support structure according to claim 1, wherein the arm that extends from the column has the one end, and wherein the arm assembly <u>includes a second arm having the opposite end.</u>" (emphasis added).  The additional limitation of Claim 4 is that "the arm that extends from the column is adapted to telescope."  Claim 4 simply specifies which of the two arms of the arm assembly defined in claim 3 is "adapted to telescope." Claim differentiation requires nothing more.  *See, e.g.*, *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1342 (Fed. Cir. 2010) ("Because claim 1 is broader than claim 14 under the district court's construction, this case simply does not implicate the doctrine of claim differentiation.").  The additional limitation of claim 4, specifying which of the two arms is capable of telescoping changes nothing with respect to the express definition of "extended" as "telescoped" that patentee admitted in the patent specification.  SpaceCo's construction for this terms is the only one consistent with the specification of the '103 patent and therefore should be adopted.

| 4. "means for adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired" ('978 Patent, Claim 16) | |
| --- | --- |
| Defendants' Proposed Construction: | Mass Proposed Construction: |
| Governed by 35 U.S.C. § 112(6)<br><br>**Function**: adjusting the angular orientation of each of the displays relative to the arm assembly<br><br>**Structure**: the structure corresponding to the mounting means to which slots 62 and 64 (FIGS 8 and 9) or 178 (FIG 20) and projections 66 and 68 (FIGS 8 and 9) or 180 (FIG 20) have been added | Construed under 35 U.S.C. § 112(f)<br><br>Function: adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired degree<br><br>Structure: Same as mounting means, i.e., ball 56, shaft 58, socket 60, hole 72, tabs 80, 82, rear of the display 16, plus equivalents (Figures 8 and 9)<br>OR<br>ball 172, shaft 174, socket 170 with flat surface |

|  | 190, shell 184 with flat 192, plate 182, screws 186, screws 188, plug 194, socket 198 (or 202 or 204), bolt 200, rear of the display 152, plus equivalents (Figure 20). |
| --- | --- |

As an initial matter, Mass's principle basis for its claim construction is taken from the prior *Ergotron* claim construction that which construed the "mounting means" to be the same as the "means for adjusting."   The Defendants do not agree that these two terms are the same.  If those two terms have the same meaning, then one of them of them is superfluous.  A more correct position is that these two terms are not one in the same.  The term at issue here is "means for adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired degree." That phrase was never construed in the *Ergotron* litigation. In *Ergotron,* the Court only construed the truncated phrase "means for adjusting the angular orientation of each of the displays relative to the arm assembly."  The Defendants submit that the full phrase has a different construction from the truncated phrase construed on the *Ergotron* case.

The parties agree that this term is a means-plus-function term, which should be construed pursuant to 35 U.S.C. § 112 ¶ f.  The parties disagree on the recited functions, although the disagreement as to function is not substantial.  The key disagreement between the parties as to the construction of this term is what constitutes the structure for performing this function.  SpaceCo and Planar contend that Mass's modified ball joint, which has a set of four "projections" that engage in corresponding "slots," is the structure corresponding to the recited functions. The '978 patent describes those "projections" and "slots" as the structures that limit the tilting of the display about two mutually perpendicular axes.  No other structure is disclosed in the '978 patent for performing this function, and therefore, SpaceCo's and Planar's proposed construction should be adopted.

Ball-and-socket joints are well known in the art, and have existed long before Mass filed the application which matured into the '978 patent.  In a traditional ball-and-socket joint, the ball exhibits unrestrained rotary motion in the socket – it can rotate a full 360° inside the socket (shown in the figure below as 1), and rotary motion, with some constraints, in the plane perpendicular to the socket (shown in the figure below as 2).



As discussed above, Mass's modified ball joint adds four perpendicular "projections" to the sides of the ball, and four corresponding slots to the socket that limit angling of the attached displays to "a desired degree":



(See '978 Patent, Figs. 9, 20.) These projections and slots serve two purposes: 1. they limit the ball's ability to tilt (*i.e.*, "adjust angular orientation") to the vertical and horizontal axes and 2. they simultaneously limit the degree of tilting around each of the vertical and horizontal axes.

The '978 patent discloses Mass's design as follows:

> The mounting structure 50 includes a ball joint comprising a steel ball 56 formed on a steel shaft 58 supported from the arm 18 and a plastic socket 60 supported from the rear of the display 16. The socket 60 is formed with four slots that are oriented parallel to the socket's receiving axis and appearing generally horizontal in the operative orientation of the socket 60. One pair of slots 62 is vertically registered, and another pair of slots 64 is horizontally registered. The ball 56 carries four cylindrical projections oriented in a common plane. One pair of projections 66 are aligned with a vertical axis (not shown) and extend from the ball 56 in opposite axial directions. Another pair of projections 68 are aligned with a horizontal axis (not shown) and extend from the ball 56 in opposite axial directions. The vertical projections 66 are received in the vertically registered slots 62, ***permitting free rotation of the display 16 about the vertical axis***, but only limited rotation of the display 16 about the horizontal axis. The horizontal projections 68 are received in the horizontally registered slots 64, ***permitting*** free rotation of the display 16 about the horizontal axis, but ***only limited rotation of the display 16 about the vertical axis***. This arrangement ***effectively permits only limited degree of tilting*** of the display 16 about two mutually perpendicular axes, in this implementation ***about vertical and horizontal axes***.

(*Id.* at 3:63-4:18.)(emphasis added)

The portion of the specification of the '978 reproduced above clearly shows that the "vertical projections" from the ball and the corresponding "vertically registered slots" in the socket "permit" the display to rotate "about the vertical axis," while the "horizontal projections" and the "horizontally registered slots permit … only limited rotation of the display about the vertical axis."

Angling the displays "toward each other" means angling the displays about a vertical axis if the displays are mounted side-by-side. Thus, if the displays are mounted side-by-side, the displays will be angled around the axis defined by the vertical projections on the ball and the "desired degree" of angle will be limited by the horizontal projections on the ball. On the other hand, if the displays are mounted with one above the other, the displays will be angled around

the axis formed by the horizontal projections on the ball, with the "desired degree" of angle limited by the vertical projections on the ball.

Mass's proposed structure is deficient because it omits the projections and slots on the ball.  The '978 patent expressly identifies the projections and slots specifying the axis about which the display is angled and limiting that angling to the desired degree. Under Mass's construction, a traditional ball joint would meet this limitation.  However, as discussed above, a traditional ball joint cannot limit tilting about specific axis or to a desired degree.  Mass makes no attempt in its brief to explain how a traditional ball joint would limit the displays being angled "to a desired degree."  This is because a traditional ball joint cannot perform this function.

The '978 patent does not disclose a traditional ball joint, because such a joint was well known in the art when Mass applied for this patent.  Instead, the '978 patent discloses a modified joint that limits the motion of the ball "to a desired degree." This means-plus-function term cannot be broadened in claim construction to include known prior art ball joints.

Finally, Mass again incorrectly attempts to limit the constructions in this case based on the arguments made in SpaceCo's IPR petition.  The IPR petition has no relevance this claim construction.  In the IPR petition, SpaceCo has provided to the USPTO, the constructions for certain claim terms that Mass has proposed in prior litigation.  The purpose of this is to demonstrate to the USPTO the supposed scope of the claims which Mass alleges it is due, which it clearly is not due in light of the contents of the prior art.  In submitting Mass's proposed constructions to the USPTO, SpaceCo made no concession that these constructions were correct and in fact specifically disclaimed being bound by Mass's construction, stating "[b]ecause claim construction standards differ in a court proceeding, Petitioner reserves the right to argue for a different construction in any court proceeding."  The Court should not be fooled by Mass's

attempt to say that SpaceCo agreed with Mass's proposed claim constructions in the IPR, when

SpaceCo specifically reserved the right to argue for different constructions in this proceeding.

| 5. "The mounting means permits the one display to assume a first angular position and a second angular positions" ('978 Patent, Claims 18, 27) | |
|---|---|
| Defendants' Proposed Construction: | Mass Proposed Construction: |
| Governed by 35 U.S.C. § 112(6)<br><br>**Function:** permit one display to assume a first angular position and a second angular position<br><br>**Structure:** A shaft 58, socket 76, two stops 84 and 90, tabs 80 and 82 (the tabs and stops limiting the rotation to 90 degrees) | *See* above re mounting means. Otherwise, plain meaning and needs no construction. |

As an initial matter, the parties have not agreed on the construction of "mounting means

for mounting the displays to the arm assembly."  Mass's contention otherwise at the beginning of

this section of its brief is incorrect.  The Patentee specified what the first and second angular

orientations are in the specification of the '978 patent and during the reexamination of that patent.

Mass now seeks to overly expand the construction of this term, to manufacture a basis for

infringement, such that any two different angular orientations would meet this limitation.  This is

contrary to the arguments proffered by the patentee to the USPTO to secure a favorable result in

the reexamination of the '978 patent.  Mass's overly broad construction should be rejected.

In the Response to Office Action dated October 29, 2010 in Reexamination No.

90/010883, the patentee argued at page 23 of the Response as follows for the patentability of

limitation (ii) of claims 18 and 27:[1]

> limitation (ii): the display 16 in Figure 4 is in a first angular
> position and the same display 16 has a second angular position
> relative to the arm assembly in Figure 6, the second angular
> position being obtained from the first angular position by rotating
> the one display 90 degrees with respect to the arm assembly about

---

[1] See Declaration of Jing Cherng, Exhibit 1

an rotation axis (cf. rotation axis 70) substantially perpendicular to the face of the display; col.3, lines 58-60; col. 4, lines 28-30; col. 4, lines 64-67 ("Rotation of…the display 16 relative to the arm 18 is restricted to 90 degrees between two extreme angular positions…")

Figures 4 and 6 of the '978 patent are reproduced below:



Thus, as admitted by the patentee in the reexamination of the '978 patent, the first angular orientation corresponds to the displays being oriented horizontally, and the second angular corresponds to rotating the displays 90° so that they are oriented vertically.  The patentee argued in the prosecution of the '978 patent for these definitions of first angular orientation and second angular orientation.  Mass cannot now broaden the construction of these terms, when the USPTO made a decision on patentability of this claim based on the narrower representations made by the patentee in the reexamination.

As noted above, the patentee cites to col. 4, lines 64-67 of the '978 patent as the disclosure which supports this claim limitations.  That section of the specification of the '978 patent reads as follows: "[r]otation of the shaft 58 and thus the display 16 relative to the arm 18 is restricted to 90 degrees between two extreme angular positions <u>well-defined by the stops</u>." Therefore, by the patentee's own admission, the stops, elements 84 and 90 in the '978 patent, define the first and second angular orientations.  Mass's construction of this term, which does not

include the stops 84 and 90, is therefore incorrect, because it ignores the clear statement of the specification of the purpose of the stops and it ignores the arguments made in favor of patentability by the patentee based on purpose of the stops.  The Defendants' construction accurately takes into account the specification and the prosecution history of this term and should be adopted.

Mass's claim that the stops do not <u>permit</u> the displays to take the first and second positions is directly contradicted by the specification of the '978 patent.  As demonstrated above, the first and second angular positions correspond to the displays being oriented horizontally and vertically.  If there were no stops 84 and 90, the displays would be able to take any position and the defined first and second angular positions would not exist.  Mass admits that the stops are "limiting structures."  Without these limiting structures, the displays would not be constrained to the defined first and second angular positions.  For these reasons, Mass's construction which omits the stops must be rejected.

| 6.  "connector means for connecting one of the displays to the arm at positions spaced along the arm …" ('978 Patent, Claim 25) | |
|---|---|
| Planar Proposed Construction: | Mass Proposed Construction: |
| Governed by 35 U.S.C. § 112(6)<br><u>Function:</u> connecting one of the displays to the arm at predetermined, fixed positions spaced along the arm<br><br><u>Structure:</u> Socket **202**, socket **204**, connector **166**, bolt **200**, plus equivalents; | Construed under 35 U.S.C. § 112(6)<br><u>Function:</u> connecting one of the displays to the arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted<br><u>Structure (Opening Claim Construction Brief):</u> Same as for mounting means, but not including socket 198, and further including both sockets 202 and 204  (versus mounting means having either socket 202 or 204) plus equivalents (Figure 20). |

Planar and Mass agree that this claim term is a means plus function term but differ in the function and structure of the term. Mass' proposed construction misses the mark on both

structure and function.

Mass' proposed function includes the clause "whereby the spacing between displays can be adjusted." This clause should not be included in the Court's construction of the connector means' function because it is non-limiting and its inclusion is improper. Where a means plus function limitation contains a whereby clause, "[the] function is properly identified as the language after the 'means for' clause and before the 'whereby' clause, because a whereby clause that merely states the result of the limitations in the claim adds nothing to the substance of the claim."[2] Here, "whereby the spacing between the displays can be adjusted" merely recites the intended result of connecting one of the displays to the arm at positions spaced along the arm. This finds support in the specification, which discloses that "display 154 is mounted to the arm 162 in a manner permitting adjustment of the spacing between the displays 152, 154."[3] The displays are adjustable because of how they mount to the arm – the "whereby" clause merely restates the intended result of the manner of mounting and thus is properly excluded from the function of the term. Defendants' construction correctly identifies the whereby clause as nonlimiting language and should be accepted.

Furthermore, the parties agree that discreet sockets **202** and **204** form the means by which the displays may be adjusted. This is the sole disclosure regarding this function in the specification. Accordingly, the function should be additionally construed as limited to discreet, fixed positions along the arm.

Mass's newly proposed structures would broaden the term beyond its disclosed scope.  It proposes a construction of "connector means" as identical to "mounting means", except with

---

[2] *Lockheed Martin Corp. v. Space Systems/Loral, Inc*., 324 F.3d 1308, 1319 (Fed. Cir. 2003), citing *Tex. Instruments Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1172 (Fed. Cir. 1993).
[3] Col. 7, l. 29-31.

sockets 202 and 204.  Mass' new position that the structure disclosed for "connector means" asks

the Court to construe this term in a manner that encompasses all embodiments disclosed in the

'978 Patent. This misses the mark and improperly includes structures from embodiments not

clearly linked to the function.

The '978 patent discloses the connector means in connection with the embodiment

illustrated in Figures 17 and 18. There, two displays 152, 154 "are mounted to opposing ends of

the arm 162 with a pair of identical connectors 164, 166." The specification discloses that the

connector means is connector 166 plugged into either socket 202 or 204, secured by bolt 200:

> The connector 166 associated with the other display 154 is
> identical to the connector 164. The arm 162 has a pair of sockets
> 202, 204 identical to the socket 198 but mounted in an opposing
> end portion of the arm 162. The two sockets 202, 204 are axially
> spaced along the arm 162, one socket 204 located substantially at
> one end of the arm 162 and the other socket 202, inset from that
> end. Both sockets 202, 204 are shaped to interlock with the
> connector 166 to prevent relative rotation and to permit the
> lengthwise axis of the display 154 to be aligned with or oriented
> perpendicular to the length of the arm 162 according to whether
> the arm 162 is horizontally or vertically oriented.

Thus, according to the specification, it is the entire connector 166 that is necessary to

connect the displays to the arm. The connector 166, in turn, is identical to connector 164,

depicted in Figure 20:



The specification describes the connector 164 as including "a ball joint comprising a

molded plastic socket 170 and an aluminum ball 172 formed with a shaft 174. The socket 170 is formed with slots 178 and the ball 172 is formed with projections 180, comparable to those above, which interlock to permit only limited tilting of the display 152 along two mutually perpendicular axes." Notably, the specification does not teach that the ball is *preferably formed* with projections 180. Instead, the projections and slots are described as a necessary part of the overall structure of the connector that connects one display to fixed, predetermined positions along the arm. Defendants' construction properly includes structures the specification identifies as necessary and should be accepted.[4]

Mass proposes that the Court include structures from the first and second embodiments into the construction of "connector means," namely, ball 56, shaft 58, socket 60, hole 72, tabs 80, 82, and rear of the display 16. The first and second embodiments do not disclose any structure for connecting the displays to fixed, predetermined positions along the arm. Instead, these embodiments disclose displays mounted in fixed positions to the arm. Mass correctly does not contend that the telescopic arm is part of the connector means. Indeed, the specification discloses no alternative structure analogous to sockets 202 and 204 to which the ball 56, shaft 58, socket 60, hole 72, tabs 80, 82, and rear of the display 16 amount along positions spaced along the arm. Construing the connector means in a manner that encompasses all three embodiments would be incorrect, as it would be so broad as to describe systems with and without the sockets 202, and 204.[5]

_____

[4] Furthermore, as discussed above, the '978 patent does not disclose a traditional ball joint, because such a joint was well known in the art when Mass applied for this patent. This means-plus-function term cannot be broadened in claim construction to include known prior art ball joints.

[5] *Ishida Co., Ltd. v. Taylor*, 221 F. 3d 1310, 1316 (Fed. Cir. 2000) (affirming district court's refusal to adopt overly broad construction of means plus function term to include all disclosed embodiments, where embodiments not clearly linked to the claimed function were properly

Mass also argues that the Court should exclude bolt 200 from the construction of "connector means" because the agreed mounting means structure already includes the bolt 200. Mass proffers no other reason why the Court should selectively exclude the bolt from the connector means.  By Mass' logic, any structure already associated with the mounting means is unnecessary and should be excluded from the connector means construction. This is equally applicable to the structures that Mass agrees are part of the connector means, such as the ball, shaft, and sockets (both on the arm and connected to the ball). Mass' proposed structure associated with "connector means" is "mounting means" and "sockets 202 and 204." Applying Mass' logic, none of the structures identified in the mounting means can be included as part of the connector means, because those common structures would be unnecessary to the connecting means function. This leaves no structures left in the specification that perform the connector means function.

| 7. "positioning means for positioning displays, the positioning means comprising" ('978 Patent, Claim 16) | |
| --- | --- |
| Defendants' Proposed Construction: | Mass Proposed Construction: |
| Governed by 35 U.S.C. § 112(6)<br><br>**Function:** positioning the pair of displays<br><br>**Structure**: The structure of this element is limited to the specific structures disclosed in the patent for the following sub-elements, some of which are also governed by 112(6) as noted below:<br>An arm assembly for supporting the displays<br>Support means for supporting the arm assembly (112(6) – see structure identified below) Mounting means for mounting the displays to the arm assembly (112(6) – see structure identified below), | *See* above re mounting means. Otherwise, plain meaning and needs no construction. |

excluded from the construction.)

| | |
|---|---|
| the mounting means comprising means for adjusting the angular orientation of each of the displays relative to the arm assembly to permit said displays to be angled toward each other to a desired degree (112(6) – see structure identified below) | |

Means-Plus-Function

Mass's basis for its claim construction is taken primarily from the prior *Ergotron* claim construction that construed "positioning means for positioning displays" without a means-plus-function limitation.  The Defendants respectfully disagree that this term lacks a means-plus-function limitation for three reasons:  (1) Mass's subsequent actions prevent it from now arguing that a POSITA would understand "positioning means" to have the same structure in the Reh and '978 patents, (2) Mr. Moscovitch's frequent and experienced use of "means" and "means for" shows the intent to claim a means-plus-function limitation and (3) Mass's cited authority is unpersuasive (*British Telecomms.*) and distinguishable (*Lighting World*).

### 1.  Mass's Subsequent Actions

Claims must be construed the same for purposes of infringement and validity,  and a patentee's arguments made in order to distinguish the prior art in patent prosecution or reexamination limit the proper construction of the claims.[6]

During the '978 patent's reexamination, the patent examiner rejected certain claims using "positioning means for positioning displays" as anticipated by U.S. Patent No. 5,222,780 ("Reh").[7]  To overcome the rejection, Mr. Moscovitch argued that the '978 patent's positioning means is novel to Reh's positioning means.[8]   The '978 patent allows two monitors to be positioned or moved "cooperatively", while Reh allows two monitors to be positioned  or moved

---

[6] *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995*); Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc*., 262 F.3d 1258, 1273-74 (Fed. Cir. 2001).
[7] Cherng Dec., Exhibit 1.
[8] Cherng Dec., Exhibit 1, 10/29/2010 Remarks at 11-12.

"independently and uncooperatively". *Id.*   Having told the Patent Office that the '978 patent

positions monitors differently than Reh, Mr. Moscovitch cannot argue that a POSITA would

understand "positioning means" to have the same, definite physical structure in the Reh patent

and in the '978 patent.

### 2.  Mr. Moscovitch's Use of "Means" and "Means For"

In *St. Clair Intellectual Prop. Consultants v. Toshiba Corp*, the court found that "power

control means" was a mean-plus-function limitation because the term was described only by

means-plus-function elements, and  the patent's rife use of means-plus-function limitations

evidenced the patentee's intent to invoke section *112*, ¶ 6, and no evidence was presented that

persons of skill in the art would understand "power control means" to designate structure.[9]

Mass does not dispute that "positioning means for positioning displays, the positioning

means comprising" is composed of three means-plus-function limitations ("support means…,"

"mounting means …," and "means for adjusting ….") and one structure ("arm assembly").

Further, the patents asserted by Mass in this lawsuit all make frequent use of means-plus-

functions limitations.  Indeed, the parties have reached agreement on many of these limitations,

if not function and structure.  As such, Mass's rife use of function claims evidences its intent for

"positioning means" to be a means-plus-function limitation.

Realizing these deficiencies, Mass relies upon Mr. Moscovitch's conclusory and

unsupported statement that a POSITA would equate "positioning means" with "an apparatus for

positioning displays." [10] "[C]onclusory, unsupported assertions by experts as to the definition of

---

[9] *St. Clair Intellectual Prop. Consultants v. Toshiba Corp.*, 2015 U.S. Dist. LEXIS 22569 at *6
(D. Del. Feb. 25, 2015).
[10] Moscvitch Dec., ¶¶ 16, 17.

a claim term are not useful to a Court."[11] Mr. Moscovitch's naked statement is entitled to no weight.

Mr. Moscovitch - an experienced and successful patentee – claimed many means-plus-function limitations throughout the patents-in-suit.  He understands well the implications of using "means" and "means for".[12]  Mr. Moscovitch should not be allowed to now assert that this disputed term is not a means-plus-function claim. Mass's evidence is both deficient and suspect.

### 3. Mass's Cited Authority

In *British Telecomms. PLC v. Prodigy Communs. Corp.*, the court construed "remote terminal means" without a means-plus-function limitation because its component parts' structures were sufficiently recited to overcome that presumption.[13] The *British Telecomms* court relied heavily upon the Federal Circuit's opinion in *TurboCare Div. of Demag Delaval Turbomachinery Corp.*

In *TurboCare*, the Federal Circuit found that "radial positioning means" was not a means-plus-function limitation after finding that its component structures recited in the claim language were not means plus function limitations.[14] The *British Telecomm* court reasoned that although the *TurboCare* court's determined that "compressed spring means" was not a means-plus function limitation because nothing in the specification disclosed anything other than a "spring" or a "compressed spring" to perform the function of the "compressed spring means,"[15]

---

[11] *Phillips v. AWH*, 415 F.3d 1303, 1318 (Fed. Cir. 2005)
[12] *Inventio AG v. Thyssenkrupp Elevator Americas*, 649 F. 3d 1350, 1356 (Fed. Cir. 2011) ("The use of the term "means" triggers a rebuttable presumption that § 112, ¶ 6 governs the construction of the claim term.")
[13] *British Telecomms. PLC v. Prodigy Communs. Corp.*, 189 F. Supp. 2d 101, 110 (S.D.N.Y. 2002) citing *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE*, 264 F.3d 1111 (Fed. Cir. 2001).
[14] *TurboCare*, 264 F.3d at 1120-1123.
[15] *Id*. at 1121.

However, instead of relying upon well settled authority, the *British Telecomms* court found that the claims recited sufficient structure, not in the claims, but rather "in a different part of the patent."[16] The court provided no authority or reasoning as to why the presumption of means-plus-function is overcome without the claim reciting sufficient structure, material, or acts to perform entirely the recited function.[17] The *British Telecomms.* court's statements ("I do not find" and "it is just found in a different part") are not persuasive.

The parties have agreed that three of the four component parts of this disputed term ("support means ...," "mounting means ...," and "means for adjusting ....") are means-plus-function limitations, which by definition, are devoid of structure. Moreover, unlike in *TurboCare,* where "compressed spring" denoted sufficient structure to overcome the means plus function presumption, here, these component parts' structures are not recited within the claim itself. As such, Mass has not overcome the presumption that the disputed term is a means-plus-function limitation.

Mass's reliance on *Lighting World v. Birchwood Lighting, Inc.* is misplaced.  *Lighting World* addressed the issue of whether term "connector assembly" invoked 112 ¶ 6 despite not using the word "means." This invokes a different presumption than the Court is considering here.[18] Further, the *Lighting World* court stressed this distinction when it described other rulings.[19]

Finally, as discussed earlier, Mass again incorrectly attempts to limit the constructions in

---

[16] *British Telecomms.*, 189 F. Supp. 2d at 110 (emphasis added).

[17] *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427, 44 U.S.P.Q.2D (BNA) 1103, 1427-28 (Fed. Cir. 1997).

[18] *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359-1360 (Fed. Cir. 2004).

[19] Id. at 1360 ("We have made the same point in other recent cases dealing with the question whether particular broad claim language should be considered functional for purposes of section 112 P 6 even though it is not in the traditional 'means for' format.").

this case based on the arguments made in SpaceCo's IPR petition.  The IPR petition has no

relevance to this claim construction.

<u>Function</u>

By the plain language of the claim, the function is "positioning the pair of displays".

<u>Structures</u>

The structures, as disclosed by the specification, are those in the constituent subelements

for an arm assembly (disputed term 1), support means (agreed), mounting means (agreed), and

means for adjusting (disputed term  4).

| 8.    "The positioning means allows positioning of the rear portion at a plurality of distances from the support means to minimize a spacing" ('978 Patent, Claims 18, 27) | |
| --- | --- |
| Defendants' Proposed Construction: | Mass Proposed Construction: |
| Governed by 35 U.S.C. § 112(6)<br><br>**Function:**  positioning of the rear portion at a plurality of distances from the support means to minimize a spacing<br><br>**Structure**: Telescopic arm<br>or<br>socket 198 in arm 162, pair of sockets 202 and 204 axially spaced along arm 162 at an opposite end of the arm 162 from socket 198, plug 194 receivable by socket 198, and plug 166 receivable by socket 202 or 204 | *See* above re positioning means. Otherwise, plain meaning and needs no construction. |

Means-Plus-Function

This term should be construed, for the same reasons argued above for Disputed Term 7,

as a means-plus-function limitation.

<u>Function</u>

By the plain language of the claim, the function is positioning of the rear portion at a

plurality of distances from the support means to minimize a spacing.

Structures

The specification demonstrates that the structure is either "telescopic arm" or "socket 198 in arm 162, pair of sockets 202 and 204 axially spaced along arm 162 at an opposite end of the arm 162 from socket 198, plug 194 receivable by socket 198, and plug 166 receivable by socket 202 or 204".

The specification clearly articulates how the telescopic arm structure allows the positioning of the rear portion at a plurality of distances from the support means to minimize a spacing.  "The telescopic arm 18 is extended in its horizontal orientation to increase the spacing between the displays 14, 16, and contracted in its vertical orientation to *decrease the spacing between the displays* 14, 16, effectively accommodating the horizontal elongation of the displays 14, 16." '978 patent, col. 5, ll. 15-21 (emphasis added).

The specification defines the other structure allowing the minimization of spacing between the two displays at line 7, columns 15-42 (emphasis added):

> As apparent in FIG. **19**, the **arm 162** has a connector, specifically, a **socket 198** which conforms in shape to and interlocks with the **plug 194** to support the display **152** and to prevent rotation of the display **152**. The **socket 198** is arranged on the **arm 162** to receive the **plug 194** in two distinct relative angular orientations spaced by 90 degrees, one in which the lengthwise axis of the display **152** is aligned with the length of the **arm 162** (as in FIG. **18** where the **arm 162** is horizontal) and another in which the lengthwise axis is perpendicular to the length of the **arm 162** (as in FIG. **17** where the **arm 162** is vertical). A bolt **200** (shown in FIG. 19) inserts through the **socket 198** into the **plug 194** to prevent separation.

> The other display **154** is mounted to the **arm 162** in a manner *permitting adjustment of the spacing between the displays* **152**, **154**. The **connector 166** associated with the other display **154** is identical to the connector **164**. The **arm 162** has a pair of **sockets 202, 204** identical to the **socket 198** but mounted in an opposing end portion of the **arm 162**. The two **sockets 202, 204** are axially

spaced along the **arm 162**, one **socket 204** located substantially at one end of the **arm 162** and the other **socket 202**, inset from that end. Both **sockets 202, 204** are shaped to interlock with the **connector 166** to prevent relative rotation and to permit the lengthwise axis of the display **154** to be aligned with or oriented perpendicular to the length of the **arm 162** according to whether the **arm 162** is horizontally or vertically oriented.

Notably, Moscovich himself agrees with these structures. During his deposition, Moscovitch noted that if this term was means plus function, the structures would be a hinged arm, a telescoping arm, or the structures disclosed in Fig. 19: [20]

> 11   Q.   Right.  So if this term was construed
> 12   to be a means plus function term, the Figure 19 or a
> 13   hinged arm or a telescoping arm would be the -- I'm
> 14   sorry.
> 15            (query by reporter)
> 16        The corresponding structure, in your
> 17   opinion, would then be Figure 19 or a hinged arm or a
> 18   telescoping arm, based on this note here; is that
> 19   correct?  Is that a fair characterization of that
> 20   note?
> 21        A.   That's, yeah, that's a fair
> 22   characterization.

Moscovitch later backtracked on hinged arm, but affirmed his agreement that that the structures would include a telescoping arm and the structures disclosed in Fig. 19.[21]

Accordingly, there is no dispute regarding the structures corresponding with this term. The inventor agrees that the structures are a telescoping arm and the remaining structures advanced by Defendants.

---

[20] Declaration of Jing Cherng, Ex. 2, 55:11-22.
[21] *Id.* at 56:15 - 57:15

9. **"a single piece support arm that extends on either side of the support column…"**

   **('331 Patent, Claim 1)**

10. **"a support arm that extends on either side of the support column…" ('331 Patent,**

   **Claim 9)**

| Defendants' Proposed Construction: | Mass Proposed Construction: |
|---|---|
| "one support arm, formed as a single piece, that extends on either side of the support column", or, alternatively, "an integral arm that extends on either side of the support column." | "a structure having one or more constituent parts connected to and projecting from the support means," or, alternatively, plain meaning. |

Independent claims 1 and 9 of the '331 patent recite a support arm as part of the support

arm structure.  Both Planar and Mass contend that the terms should be construed interchangeably.

The '331 patent claims a multi-screen display system with the screens disposed on a

common arm extending along a horizontal plane. The '331 patent's specification's disclosure

describes the support arm exclusively as a single structure that extends on both sides of the

support arm. The patentee described the invention in terms of a <u>common</u> horizontal support

arm:[22]

Similarly, according to the patentee, preferred embodiments of the invention comprised a

horizontal support arm that was substantially longer than the width of the base, wherein all of the

displays are supported on the horizontal support arm.[23] This is consistent throughout the claim

language and the specification, which discloses in all embodiments of the invention a single

support arm that supports all of the displays.[24]

---

[22] Col. 1. Lines 14-19; 47-52; 53-57.

[23] Col. 2, Lines 1-12 "In one preferred embodiment the display system comprises a base, a support column extending vertically from the base, a horizontally disposed support arm supported on the column, and three independent liquid crystal display (LCD) screens supported on the support arm…The base is substantially smaller in width than the horizontal support arm, thus freeing up a significant amount of desk space."

[24] See Col. 3, Lines 13-14; Lines 13-14; 28-31; 36-37; 44-45; 48; 66-67. See also Col 4, Lines 14-27.

This can be seen in Figures 3 and 4 of the '331 patent, representing rear and front perspective views of "the support system." Figures 5 through 9 describe "the horizontal support arm" in various views.



Moreover, the specification teaches that "the horizontal support arm" can be removed and replaced with an even longer horizontal support arm, even enough to support four screens, or a shorter one with two screens, could be attached to the support column.[25]

The claim language is consistent with the specification. Claim 1 recites a support arm structure having  "a single piece support arm that extends on either side of the support column", where the support arm supports all of the weight of the at least two displays. Similarly, Claim 9 recites a support arm structure having a support arm that extends on either side of the support column.  In both instances the support arm is first described with indefinite article "a" and in subsequent limitations with the definite article "the." Although generally "a" connotes "one or more" and "the" reinvokes this plural context, this rule does not apply where the patentee clearly evidences an intent to limit "a" to "one," either in the specification or in the prosecution history. As discussed above, the specification discloses the support arm only in terms of one support arm extending across the support column.

The prosecution history of the '331 patent compels the same conclusion. During

---

[25] Col. 4, Lines 14-22

prosecution, Mass added limitations and made statements that disclaimed multiple piece support

arms, or multiple single piece support arms, both of which Mass incorrectly advocates to this

Court.  The examiner rejected the pending claims over U.S. Patent No. 5,904,328 ("Leveridge"),

which taught a multiple display system with displays mounted to two cantilevered arms:[26]

On April 30, 2007, in response to this rejection, the applicant stated:[27]

> "The applicant has added new claims 58-61 that recite an <u>integral,
> bowed arm</u> for supporting a plurality of displays. There are not
> taught in Leveridge, Jingu, or Moscovitch. For example, <u>Leveridge
> does not teach such an integral arm</u>, but instead teaches <u>two non-
> contiguous, substantially linear arms</u>…"

On December 17, 2007, the applicant argued for the patentability of Claim 62 (later

issued as claim 1) over Leveridge:

> New claim 62 recites a support arm <u>being formed as a single piece
> component</u>. Leveridge does not teach such an arm. In fact, as the
> Examiner concedes, Leveridge teaches "…arms 20 and 22 with
> support block 46 …"[28]

In order to overcome Leveridge, Mass argued that the support arm of the '331 patent was

one integral arm formed as a single piece component. Mass limited the scope of its claims in

order to overcome a prior art objection. This disclaimer applies to all claims that contain the

"support arm" limitation.[29]

The presumption of claim differentiation does not apply here because prosecution

disclaimer overcomes the claim differentiation presumption for this reason. [30] Claim 8,

dependent on claim 1, recites a rigid arm, and claim 14, dependent on claim 9, recites a support

---

[26] Cherng Declaration, Exhibit 7, U.S. Patent No. 5,904,328.

[27] Cherng Declaration, Exhibit 3, Amendment after Final Action under 37 CFR 1.116,
Application No. 10/129,884, Filed April 30, 2007. (emphasis added)

[28] Cherng Declaration Exhibit 4, Response to Non-final Office Action and Disclosure of
Information Under 37 C.F.R. 1.56., Application No. 10/129,884, Filed December 17, 2007.

[29] *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F. 3d 1570, 1579 (Fed. Cir. 2005)

[30] *Biogen Idec, Inc. v. Glaxosmithkline LLC*, 713 F. 3d 1090, 1097 (Fed. Cir. 2013)

arm formed as single piece component.  Because Mass excluded multiple piece support arms in response to Leveridge, it cannot now argue that claim differentiation defines the scope of the claim term. "Support arm" must be construed consistently across claims in the same manner that Mass limited it to obtain the patent.

Mass proposes to construe this term identically to the term "arm, " and "arm assembly," that is, "a structure having one or more constituent parts connected to and projected from the support column." This construction is incorrect for several reasons. Mass' proposed construction would render one of "support arm structure" or "support arm" redundant. In fact, Mass argued *against* such a construction in *Humanscale v. Mass*, where it argued that "the support arm" and "the support arm structure" were distinct terms; the support arm structure did not have to be a single piece because the '331 patent already required a support arm formed as a single piece.[31] Mass' construction is also incorrect because it would exclude the preferred embodiments disclosed in the specification.[32] Finally, as described above, Mass disclaimed multiple-piece support arms when it (1) added claims reciting the single piece limitation in response to a rejection, and (2) argued for the patentability of the new claims by asserting that the prior art did not disclose "an integral, bowed arm."

| 11. base member ('978 Patent, Claim 16) | |
| --- | --- |
| Defendants' Proposed Construction: | Mass Proposed Construction: |
| The lowermost portion of the system that supports the arm assembly above a surface. | the lowermost portion of the system that supports the arm assembly above a work surface |

---

[31] See Cherng Dec., Exhibit 5, *Defendants' Amended Opening Claim Construction Brief*, *Humanscale v. Mass*, Case No. 1:13-cv-00535-CMH-DD, D.I. 81, p.22 ("However, the claim recites that the support arm structure has a single piece support arm. Thus, it is the support arm and not necessarily the support arm structure that is a single piece.")

[32] *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004). ("a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.")

The parties have agreed to most of the substance of the construction of base member. Mass proposes to change the prior construction determined by this Court in the *Ergotron* case to specify that the base supports the arm above a "work surface" rather than simply a "surface." Mass admits that it has tried before, and failed, to convince this Court that the appropriate construction of base member includes "work surface."  The Court should reject Mass's arguments now for the same reason it rejected them in the *Ergotron* case, and hold that the base supports the arm above a "surface."

Mass's own arguments demonstrate that "work surface" is an inappropriate construction. In its discussion of the intrinsic evidence and the section of the prosecution history that purportedly demonstrates that the invention is limited to use on "work surfaces," Mass states the following at page 24 of its brief: "[t]he stated work surface is the desk, table top, <u>or other surface for office or business use.</u>"  Again, on page 25 of the brief, Mass states: "work surface (i.e., the viewer's desk, table, counter, <u>or other surface for office or business use</u>)."   Other surfaces for business or office use need not be "work surfaces."  Mass wants the Court to accept its definition of base as being on a "work surface" but in its arguments is argues for surfaces that fall outside the scope of "work surfaces."  Mass cannot have it both ways.  The Court should follow its reasoning in *Ergotron*, which recognized that prosecution history does not reference where the base must rest, and adopt the Defendants' construction.

Finally, as discussed above, Mass' repeated attempts to impute the IPR constructions to this court are simply improper.

Respectfully submitted,

/s/ *Carl A. Hjort, III*
Carl A. Hjort, III
Admitted *pro hac vice*

SpaceCo Business Solutions, Inc.
17650 East 32nd Place, Ste. 10A
Aurora, CO 80011
Telephone: 303-350-2204
Facsimile: 303-375-6644
Email: chjort@spaceco.com

Scott E. Stevens
Texas Bar Number 00792024
Todd Y. Brandt
Texas State Bar No. 24027051
Stevens | Henry, PLLC
P.O. Box 3427
Longview, TX 75606-3427
Telephone: 903/753-6760
Facsimile: 903/753-6761
scott@stevenshenry.com
todd@stevenshenry.com

*ATTORNEYS FOR DEFENDANT*
*SpaceCo Business Solutions, Inc.*

*/s/ Jing Hong Cherng*
Daniel S. Mount, Esq. (Cal. Bar No. 77517)
Kathryn G. Spelman, Esq. (Cal. Bar No. 154512)
Jing Hong Cherng, Esq. (Cal. Bar No. 265017)
William H. Stewart, Esq. (Cal. Bar No. 287782)
Mount, Spelman & Fingerman, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose CA 95110-2740
Phone: (408) 279-7000
Fax: (408) 998-1473
dmount@mount.com
kspelman@mount.com;
gcherng@mount.com
wstewart@mount.com

E. Glenn Thames, Jr.
Potter Minton, P.C.
110 North College, Suite 500
Tyler TX 75702
Phone: 903-597-8311

Fax: 903-593-0846
glennthames@potterminton.com

*Attorneys for Defendant*
*Planar Systems, Inc.*

## CERTIFICATE OF CONFERENCE

I hereby certify that all parties have authorized this joint filing.

Dated: March 24, 2015

/s/ Jing Hong Cherng

## Certificate of Service

The undersigned certifies that on the date this document is electronically filed, all counsel of record who have consented to electronic service are being served with a copy of this document via the court's ECF system pursuant to Local Rule CV-5(a)(3)(C).

Dated: March 24, 2015

/s/ Jing Hong Cherng