IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MASS ENGINEERED DESIGN, INC., § | | |
| § | | |
| Plaintiff, § | | |
| § | Civil Action No. 6:14-cv-00411-LED | |
| v. § | | |
| § | LEAD CASE | |
| SPACECO BUSINESS SOLUTIONS, INC., § | | |
| § | | |
| Defendant. § | | |
| § | | |
| v. § | | |
| § | Civil Action No. 6:14-cv-00414-LED | |
| PLANAR SYSTEMS, INC., § | | |
| § | | |
| Defendant. § | | |

**PLAINTIFF'S AMENDED REPLY IN SUPPORT OF**
**ITS AMENDED OPENING CLAIM CONSTRUCTION BRIEF**

Plaintiff ("Mass") files its Reply Claim Construction Brief as follows:

1. **"Arm/support arm/arm assembly"**

Defendants have belatedly agreed in substance with Mass's proposed construction of this term, though they still quibble with the semantics. The Court should adopt Mass's proposed construction which includes reference to the specific patents in the construction itself – alleviating Defendants stated concern that the jury may somehow be confused.

2. **"an arm assembly having an arm that extends from the column" and "arm assembly is extendable from a retracted configuration to an extended configuration"**

Defendants argue that the words "extends" and "extendable" in the claims should be improperly and narrowly defined as "telescopes" and "capable of telescoping," respectively, because the phrase "extended (*i.e.*, telescoped)" appears *once* in the specification. Defendants argue that the patentee told the USPTO that "[s]upport for these amendments can be found in Figures 44-49 and the portion of the specification describing these figures." Defs. Brief (Dkt. No. 81) at 4. However, the arms in Figs. 44-49 extend from the column, and they are extendable from a retracted to an extended configuration, even without a telescoping mechanism. Further, Defendants fail to inform the Court that the next sentence in the quoted passage states that "[s]upport for these amendments can also be found in *other parts of the application*." (emphasis added). Exhibit 13, pg. 574 Clearly, the patentee was not limiting the claims to just a single aspect shown in Figs. 44-49. Under *Phillips,* this Court should consider the entire intrinsic record, including the entire specification and claims, rather than a single sentence cited out of context by Defendants.

At col. 14, lines 38-42, the '103 patent describes a specific telescopic method that enables an upper support arm 188 to be extended (i.e., telescoped) relative to a lower support arm 186. This action is shown by the arrow in Fig. 45. However, the applicant was not implying that *everywhere* in the patent where the word "extended" appears, it could be replaced by "telescoped."

Mass's Opening Brief describes multiple examples of structures that are specifically stated to extend but clearly do not telescope. Further, substituting the word "telescope" for "extend" would lead to nonsensical results. For example, replacing "extends" by "telescopes" in claim 4 yields the unlikely redundant sentence "the arm that telescopes from the column is adapted to telescope." Replacing "extended" with "telescoped" in col. 17, lines 41-42 results in "When telescoped, the centering member 514 projects outwardly of the support member 508," which seems unobjectionable except that the centering member 514 does not telescope, but instead hinges, as can be clearly seen in Figs. 72-75. The inescapable conclusion is that the patentee could not have intended "extend" to mean "telescope" everywhere in the patent, and certainly not everywhere in the claims. There is no clear disavowal or lexicography.

Even if the abbreviation "i.e." was arguably used to indicate a global definition for the verb form "extended," (which it was not), this definition would not be applicable to claim 1 because the adjective "extended" as used in claim 1, and the verb form "extended" as used in col. 14, lines 38-42 are different parts of speech. Importantly, it is not col. 14, lines 38-42 in the written description that requires construction, but rather the phrase "extendable from a retracted configuration to an extended configuration" *in the claims*.

With respect to "extendable," no alleged explicit definition of this word, let alone of the complete phrase to be construed, appears in the written description. With no explicit global definition outside of the claims, this claim phrase must be given "the full scope of its plain and ordinary meaning" consistent with the claims and the rest of the specification. *Thorner v. Sony Computer Entertainment America LLC,* 669 F.3d 1362 (Fed. Cir. 2012). Claim 1 specifies that "the distance between the one end [of the arm assembly] and the opposite end [is] greater in the extended configuration than in the retracted configuration." (limitation f.(i)) Thus, the full scope of the "extendable" phrase that is also consistent with this clarification is not limited to just

telescoping, as Defendants propose.

Further, there is at least one embodiment in which an arm assembly is extendable from a retracted configuration (Fig. 47) to an extended configuration (Fig. 45) via a hinging mechanism. Defendants' construction would exclude such a mechanism, but a construction "that excludes a preferred embodiment is almost always incorrect." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

Defendants cite *Interval Licensing v. AOL* in support of their construction. However, that case did not state that in all cases where the term "i.e." is used, a <u>global</u> definition is implied. As noted above, the text of the specification and claims contradicts any such global definition. Indeed, in *Skin Medica*, the Federal Circuit held that where, as here, reading "i.e." definitionally would exclude embodiments, such a definitional reading is improper.[1] Here, Defendants' improperly narrow construction would exclude at least the hinging mechanism (hinge 196) that allows the system to transform from a retracted configuration (Fig. 47) to an extended configuration (Fig. 45).

Mass's construction for "arm assembly is extendable from a retracted configuration to an extended configuration" is "See above re arm assembly." Otherwise, aside from the construction of arm assembly above, the remainder of this term should be construed with its plain meaning and needs no construction." This should be adopted. However, if the Court determines that a more explicit definition is warranted, then Mass would not oppose the following alternate construction: "the distance between one end of the arm assembly and an opposite end can be increased."

3. **"means for adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a**

---

[1] *Skinmedica, Inc. v. Histogen, Inc.*, 737 F.3d 1187, 1201-2 (Fed. Cir. 2013) (*quoting Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1326 (Fed. Cir. 2012)("The only way that the '*i.e.*' in this patent could be read definitionally is if it excluded from the claim scope the embodiments discussed throughout the claim where only a single funding source is selected. This is rarely, if ever, correct.").

**desired degree"**

Despite their criticism of the Court's prior construction (and of Mass's identical proposed construction) of this term, Defendants agree with the Court's and Mass's construction with a single exception – they improperly seek to erroneously include extraneous, unnecessary slot and projection structures (as noted in red in Mass's Opening Brief) that are not clearly linked to the function. These additional structures are not necessary for, nor are they clearly linked to, the function of adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired degree. As would be clear to a POSITA, all that is needed to perform the required function is a ball and socket joint and the rear of the display. Ex. 2, ¶19. In the *Ergotron* case, this Court specifically addressed and properly rejected the inclusion of the very same structures that Defendants now seek to improperly add:

> The parties dispute whether the slots and projections[2] should be included as structure for the mounting means … The specification makes clear that the projections and slots are preferable, which denotes they are not required. '978 Patent, Col. 5:57–58… Importing "structural limitations from the written description that are unnecessary to perform the claimed function" is improper. *Wenger*, 239 F.3d at 1233. The specification does not associate the projections and slots with performing the mounting means function. Accordingly, the projections and slots are not necessary structure.

Ex. 6, pp. 11-12. This Court's prior reasoning on this issue is sound. In fact, as the Defendants admit in their Brief, the projections and slots only serve to *limit* the angular orientation of the displays. Dkt. No. 81, p. 8. Therefore, they are not required to allow adjusting to thereby permit said displays to be angled toward each other to a desired degree. Even if ball and socket joints were "well known in the art," as Defendants argue, this would be of no consequence, at least

---

[2] The slots are identified as numbers 62 and 64 in Figures 8 and 9 and as number 178 in Figure 20. The projections are identified as numbers 66 and 68 in Figures 8 and 9 and as number 180 in Figure 20.

because the '978 Patent does not claim a ball and socket joint per se, but rather a multi-display system as set forth in the claims.

4. "the mounting means permits the one display to assume a first angular position and a second angular position"

Mass does not dispute that the term "mounting means" should be construed as a MPF term; however, the phrase "permits the one display to assume a first angular position and a second angular position" does not additionally invoke a separate presumption of §112(f). Defendants have provided no reason why "mounting means" should be separately construed when used in connection with this phrase, which has a plain and ordinary meaning.

This is simply another misguided attempt by Defendants to impose unnecessary limitations on the claims. Even if this term were improperly construed under §112(f), the stops 84,90 and tabs 80,82 that Defendants attempt to include are not necessary to perform Defendants' erroneously identified function. The stops and tabs are not structure that *permits* the one display to assume a first angular position and a second angular position. Put another way, it is clear that even without the stops and tabs, the mounting means would still permit one display to assume a first angular position and a second angular position. Exhibit 2 of Mass's Opening Brief (Dkt. No. 74-2), ¶21-22.

5. "[the mounting means comprises] connector means for connecting one of the displays to the arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted"

The parties have agreed that the function of the "mounting means" is "mounting the displays to the arm assembly." The parties have also agreed on the structure for performing this function.[3] The "connector means" – which is a part of the mounting means for claim 25 – functions

---

[3] Structure: ball 56, shaft 58, socket 60, hole 72, tabs 80, 82, rear of the display 16, plus equivalents (Figures 8 and 9) OR ball 172, shaft 174, socket 170 with flat surface 190, shell 184 with flat 192, plate 182, screws 186, screws 188, plug 194, socket 198 (or 202 or 204), bolt 200, rear of the display 152, plus equivalents (Figure 20).

to connect one of the mounted displays to the arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted. Since the mounting means already provides the agreed structure for mounting the displays to the arm, the only additional structure for the mounting means required of the connector means is structure that enables the arms to be adjustably spaced along the arm. The structure identified in the specification that is clearly linked to this functionality is the mounting means (upon which the parties have already agreed) and sockets 202 *and* 204.

Defendants attempt to erroneously include the entire "connector 166," which has the projections 180 and slots 178, in the construction of this claim 25 phrase. However, despite arguing that "the projections and slots are described as a necessary part of the overall structure," Defendants have provided no evidence or explanation of how the projections and slots are necessary, or how they are clearly linked to the function of the connector means. The reason for this is simple – the projections and slots have nothing to do with connecting one of the displays to the arm at positions spaced along the arm, whereby the spacing between the displays can be adjusted, nor anything to do with spacing one of the displays at varying positions along the arm. Sockets 202 and 204 are the only structures clearly linked to the function of the connector means.

6. **"positioning means"**

Defendants are incorrect that this term should be construed under § 112(f), particularly in view of this Court's prior ruling that "positioning means" is not a MPF term. While Defendants argue at length about why Mass and this Court were wrong to construe positioning means as an "apparatus to position displays," Defendants have provided no explanation of why the Court was wrong. Indeed, the only substantive argument that Defendants make is that the inventor is "experienced." This novel argument lacks any legal or factual basis. To the extent the patenting experience of the inventor might even arguably be relevant (which it is not with regard to this issue), if anything, one knowledgeable about patents would come to the same conclusion that this

Court has already reached – namely, that this is not a MPF term.

Defendants also erroneously take issue with the cases that the Court relied upon in its prior decision construing this term. Indeed, Defendants go so far as to erroneously criticize the holding in *British Telecom* as not "relying on well settled authority." This assertion is incorrect. Echoing the correct reasoning of *British Telecom*, this Court has correctly found that "[h]ere, the structure is identified by both specific components (*e.g.*, arm assembly) and functions (e.g. mounting means for mounting and supporting means for supporting). 'The structure of the component parts is present-it is just found in a different part of the patent, in the specification, rather than in the claim language.' *British Tel. PLC*, 189 F. Supp. 2d at 110." Dkt. No. 74-6 at 7. Finally, perhaps some of the best evidence that this is not a MPF term is Defendants' proposed construction, which merely points to the sub-elements of "positioning means" as providing the structures which perform its alleged function.

7. **"the positioning means allows positioning of the rear portion at a plurality of distances from the support means to minimize a spacing"**

Here, Defendants seek a second bite at the "positioning means" apple, despite the fact that the Court has already correctly construed the term "positioning means" as "apparatus used to position displays" – not as a MPF term, as Defendants once again erroneously propose. As the Court reasoned in its prior *Markman* Order, "[t]he claim language recites sufficient structure … Although the recited structure includes MPF limitations, there is sufficient structure in the claim language such that § 112 ¶6 does not apply." Dkt. No. 74-6 at 6-7. The same reasoning applies here – that the term "positioning means" is not subject to § 112(f) and needs no construction beyond the previously and correctly construed terms "mounting means" and "support means."

That "positioning means" is not a MPF term is separately addressed above. Defendants erroneously argue that this term, in the present phrase, should be construed as a MPF term despite the fact that MPF (*i.e.*, "means…for")language was not used beyond "positioning means" – which

the Court has already construed. Indeed, Defendants' only reasoning for construing this term under § 112(f) is "the same reasons argued above for [positioning means]." Even setting aside that Defendants arguments are incorrect as to "positioning means," Defendants' arguments regarding "positioning means" are even more inapposite here, where there is no "means *for*" language. Defendants have provided no further justification for construing a term under § 112(f) where "means for" language is absent. To the contrary, once "positioning means" has been construed (see above), the phrase contains plain language that is easily understood by a POSITA or lay juror and requires no further construction beyond its plain meaning.

Further, even if the Court were to erroneously conclude this is a MPF term, Defendants' misstate the corresponding structures. If it was a MPF term, which it is not, then the corresponding structures would be a telescopic arm or the same structures noted above corresponding to "connector means." As noted above with respect to "connector means," the use of both socket 202 and socket 204 would be the structure (aside from a telescopic arm) disclosed in the '978 specification that allows positioning of the rear portion at a plurality of distances from the support means to minimize a spacing. *See* Fig. 9. One would use socket 202 to decrease the distance between the support means and the rear of the display from the distance at socket 204. *Id. See, e.g.,* Dkt. No. 74-3 at Col. 7, Lines 61-64.

Defendants attempt to bolster their incorrect construction of this term by citing the deposition testimony of Mr. Moscovich. However, this is merely an unsuccessful attempt to distract from the fact that this term is not subject to § 112(f) in the first instance and, therefore, any erroneous and irrelevant hypotheticals posed by Defendants during a deposition are just that – erroneous and irrelevant.

8. **"[support arm structure having] a single piece support arm that extends on either side of the support column"**

Defendants' arguments that the scope of this term should be limited by prosecution

estopped are wholly mistaken, at best. While Defendants point out that Mass originally added claim 62, which included that the support arm be "formed" as a single piece, Defendants fail to note that this limitation was later *removed* from the claim language via an amendment prior to issuance. Dkt. No. 74-12 at 220. Defendants' quote from the prosecution history was merely parroting claim language that was being used at the time, which was amended prior to issuance of final claims. Here, Defendants improperly attempt to re-insert a claim limitation which was removed by an amendment under the guise of prosecution estoppel. It would be improper to read any requirement that the support arm be "formed" as a single piece into this claim when such a restriction was *removed* during prosecution.

In support of their erroneous prosecution estoppel argument, Defendants further argue that Mass somehow "limited the scope of its claims" in distinguishing the Leveridge patent. However, the passage referenced by Defendants aimed to distinguish *claim 1* from the prior art. This passage did not reference the different limitations of claim 9 that distinguish over Leveridge without having to recite a single piece support arm. Moreover, Defendants fail to inform the Court that these arguments – which were not limiting – were made to explain that Leveridge discloses "two non-contiguous" arms, as opposed to the single piece support arm of claim 1 in the '331 Patent.

The single-piece arm of claim 1 may be constructed in any number of ways. For example, it could be initially "formed" as a single-piece or two portions can be welded into a single piece. However, Defendants' construction erroneously adds the word "formed" to the claim thus suggesting that a single-piece not initially "formed" from a single piece of material would fall outside the scope of the claim. Including because the "formed as" language was removed from the claim by an amendment (and thus it is not included in the issued claim), it would be improper to re-insert it into the claim via an erroneous construction of a plain meaning term.

9. **"[support arm structure having] a support arm that extends on either side of the support column"**

Here again, Defendants erroneously attempt to import a "formed as" limitation into the claims. Mass's arguments with respect to a "single piece support arm" demonstrate the erroneousness of Defendants' argument – with the additional point that "singe piece" is *not* even included in this phrase, making Defendants' position even more erroneous and unsupported here.

**10. "base/base member/base structure"**

Mass's construction, including the term "work surface," reflects the proper construction of this term in view of the specification and file history, as set forth in Mass's Opening Brief. MASS's construction does not relate to where the base rests, but rather where the arm assembly is positioned in conjunction with the base. Mr. Moscovitch was clear during the prosecution of the '978 Patent that the base "support[s] the arm assembly above a *work* surface." Exhibit 11, at M22256 (emphasis added).

Defendants' erroneously argue that because the specification includes the phrase "other surface for office or business use" the term "work surface" should not be included in the construction of this term. However, Defendants ignore that the term "other surface for office or business use" was included to identify specific examples of work surfaces – as opposed to surfaces in general.

| | |
|---|---|
| Date: April 1, 2015 | Respectfully submitted,<br><br>By: /s/ *Stephen F. Schlather*<br>Stephen F. Schlather<br>Texas Bar No. 24007993<br>John J. Edmonds<br>Texas Bar No. 789758<br>Shea N. Palavan<br>Texas Bar No. 24083636<br>**COLLINS, EDMONDS, POGORZELSKI,**<br>**SCHLATHER & TOWER, PLLC**<br>1616 S. Voss Road, Suite 125<br>Houston, Texas 77057<br>Telephone: (713) 364-2371 |

Facsimile: (832) 415-2535
Email: sschlather@cepiplaw.com
    jedmonds@cepiplaw.com
    spalavan@cepiplaw.com

Andrew Spangler
Texas Bar No. 24041960
**SPANGLER LAW P.C.**
208 N. Green Street, Suite 300
Longview, Texas 75601
Telephone:(903)753-9300
Facsimile: (903) 553-0403

*Attorneys for Plaintiff*
*MASS Engineered Design, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

Date: April 1, 2015                 */s/ Stephen F. Schlather*
                                    Stephen F. Schlather