IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MASS ENGINEERED DESIGN, INC.,<br><br>　Plaintiff,<br><br>v.<br><br>SPACECO BUSINESS SOLUTIONS, INC.,<br><br>　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:14-cv-00411-LED<br><br>LEAD CASE |
| v.<br><br>PLANAR SYSTEMS, INC.,<br><br>　Defendant. | §<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:14-cv-00414-LED |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND THINGS AND REQUEST FOR AMENDMENT OF
THE COURT'S TRANSFER ORDER AT DKT. NO. 24**

Plaintiff, Mass Engineered Design, Inc. ("MASS"), hereby files this motion seeking an order from the Court compelling Planar to comply with the Court's Discovery Order and to further amend the Court's Order regarding the transfer of venue to retain venue and jurisdiction over Planar until its complies with the Court's order compelling discovery compliance.

**INTRODUCTION**

To date, Defendant, Planar Systems, Inc. ("Planar"), has produced only a pittance of relevant documents despite the "Additional Disclosure" requirement in this Court's Discovery Order having passed two months ago, and despite Planar agreeing at a meet-and-confer ("M&C") several weeks ago that it would produce a large list relevant documents, none of which have been produced. Despite acknowledging the significant deficiencies in its document production during the M&C, Planar subsequently announced it would be producing the overdue documents on a

"rolling basis," but declined to provide any date by which such a rolling production would be complete or even substantially complete. Moreover, underscoring its lack of good faith or diligence in even attempting to comply with its overdue discovery obligations, since the M&C Planar has failed to produce even a single additional document despite MASS's specific request that Planar at least produce what it has collected so far. For at least these reasons, including as set forth in more detail below, MASS respectfully requests that the Court compel Planar to comply with its discovery obligations and produce all relevant documents forthwith, but no later than June 30, 2015.[1] Further, since this Court's March 24, 2015 Order regarding transfer (Dkt. No. 24) provides that the Court "will retain jurisdiction over Planar through the claim construction process" and "[t]his transfer will become effective the day the Court issues its claim construction opinion," MASS respectfully requests amendment of the Court's Order to retain venue and jurisdiction over Planar until it complies with the Court's order compelling discovery compliance requested herein.

## FACTS

The Court's Discovery Order, which contains the Court's standard language used in at least virtually all patents cases, provides in pertinent part as follows:

> Within forty-five (45) days after the Scheduling Conference and without awaiting a discovery request, each party shall provide to every other party the following information:
> A. a copy of all documents, data compilations and tangible things in the possession, custody, or control of the party that are relevant to those additionally pleaded claims or defenses involved in this action.

(Dkt. No. 101, ¶ 2). Pursuant to that Order, the parties exchanged Additional Disclosures on or about April 6, 2015. MASS's Additional Disclosures were accompanied by the production of over 310,000 pages of documents. Exhibit 1, Schlather Declaration, ¶2. Planar's Additional

---

[1] By refusing to comply with the Court's Discovery Order and requiring MASS to file this motion, Planar has, in essence, already given itself at multi-month extension to comply with its discovery obligations.

Disclosures were accompanied by a mere twenty-eight pages of document production. *Id.*, ¶3. Those documents consisted in large part of marketing documents, a single, multi-page e-mail string and a handful of technical schematics. *Id.*

On April 22, 2015, MASS took the Rule 30(b)(6) corporate deposition of Planar pursuant to a notice by MASS that included a broad number of topics to which Planar did not object. Ex. 2 (Deposition Notice). During the deposition, it became clear that many relevant documents and categories of documents had not been produced by Planar. Ex. 1, ¶5. Following the Planar deposition, MASS provided Planar with a list of forty-six documents and/or categories of documents that should have been produced, many of which had information responsive to Rule 30(b)(6) topics and which Planar's designees failed to provide information for, which was requested by the topic. *See* Ex. 3 (MASS's e-mail to Planar). These documents should have been produced well before Planar's Rule 30(b)(6) deposition in accordance with Planar's discovery obligations under the Court's Discovery Order. *See id.*

On May 14, 2015, the parties met and conferred regarding the content and scope of MASS's list of Planar's discovery deficiencies. Ex. 1, ¶7. Planar's counsel initially apologized and indicated that Planar misunderstood the Court's Discovery Order and its broad requirement to produce all documents relevant to claims and defenses. *Id*. The parties then reviewed each item on MASS's list, and <u>the parties agreed on the additional documents that</u> Planar was obligated to produce. *Id.* MASS requested that any documents be produced within two weeks. *Id*. MASS then followed up, on May 19, with a supplemental list confirming the parties' M&C <u>agreement</u> on the additional documents to be produced by Planar. Ex. 4 at 4-6. (MASS's follow-up e-mail to Planar). Juxtaposing the list of documents on Ex. 3 with the agreements in Ex. 4 yields as follows:[2]

---

[2] Presumably the relevance of this information, which Planar has not disputed, is self-evident to the Court

|   | **Documents Listed in Exhibit 3 as Missing From Planar's Production** | **Parties' Agreement Noted on Exhibit 4 re: Production of Documents** |
|---|---|---|
|   | *Documents Identified as Not Produced at the Deposition of Planar's Rule 30(b)(6) designee McCullough* ||
| 1 | Quotes for any Accused Product, including quotes that reside on any "public drives" including the CBU_public drive (pg. 16/7-12) | Planar agreed to produce quotes for Accused Products it contends are sold outside the US.[3] |
| 2 | Documents and communications related to orders, including purchase orders, quotes and acknowledgements between Planar and HighGrade, the original manufacturer and supplier of the Accused Products (pg. 17/3-15; pg. 19/15-18; pg. 20/17-22) | Planar agreed to produce such documents for Accused Products it contends are sold outside the US. |
| 3 | Monthly forecasts related to the Accused Products, including monthly forecasts prepared by the "operations team" (pg. 18/15-25) | Planar agreed to provide requested information. |
| 4 | The date upon which Planar first received a dual stand, triple stand and quad stand from Highgrade (pg. 21/4-5) | Planar agreed to provide requested information. |
| 5 | The first date upon which Planar sold an accused dual stand (pg. 21/15-17)35/1-7) | Planar agreed to provide requested information. |
| 6 | Information from the data warehouse related to the Accused Products, including invoices, orders placed to Planar's suppliers, sales orders received from Planar's customers, tracking and payment of invoices, customer information, ship-to information, purchase price and quantity (pg. 22/1-13; pg. 30/7-10; ) | Planar agreed to provide requested information. |
| 7 | Price lists for the Accused Products (pg. 32/3-7) | Planar agreed to provide requested information. |
| 8 | Information identifying or otherwise related to any Accused Products sold from the US to a customer outside the US, including products exported by Planar from the US and any revenue associated with such products (pg. 34/8-22; pg. 52/18-25) | Planar agreed to produce such documents for Accused Products it contends are sold outside the US. Additionally, Planar agreed to provide a list of foreign customers to whom Planar products are sold and/or shipped from the United States. |
| 9 | Complete list of customers of the Accused Products (pg. 35/1-7) | Planar agreed to provide requested information. |
| 10 | The date upon which Planar first received an accused dual stand, triple stand and quad stand from its overseas supplier (pg. 36/16-22) | Planar agreed to provide requested information. |
| 11 | Monthly forecasts related to the Accused Products, including forecasts that precede | Planar agreed to provide requested information. |

---

in view of its substantial experience with patent cases, discovery in patent cases, and what is relevant evidence at patent trials.

[3] These documents and the other sales transaction documents noted below are relevant to whether Planar's products within the U.S. sold to customers outside the U.S. constitute an actionable "sale" under Section 271(a) of the Patent Act.

|    | **Documents Listed in Exhibit 3 as Missing From Planar's Production** | **Parties' Agreement Noted on Exhibit 4 re: Production of Documents** |
|---|---|---|
|    | PLANAR 000021-24 (pg. 39/22 – pg. 40/2) |    |
| 12 | Revenue forecasts related to the Accused Products (pg. 45/12-13) | Planar agreed to provide requested information. |
| 13 | Information and documents showing Planar's sales of monitors with or in conjunction with Accused Products (pg. 47/7-17; pg. 50/20-51/1)[4] | Planar agreed to provide requested information. |
| 14 | Sales orders for the Accused Products (pg. 53/16-19) | Planar agreed to produce such documents for Accused Products it contends are sold outside the US. |
| 15 | Acknowledgements of sales orders (pg. 54/5-15) | Planar agreed to produce such documents for Accused Products it contends are sold outside the US. |
| 16 | Weekly sales reports related to the Accused Products (pg. 59/15-17) | Planar agreed to produce such documents for Accused Products it contends are sold outside the US. |
| 17 | Information relating to or describing any guidelines associated with the Accused Products, including relating to budgets related to the Accused Products (pg. 61/19-21; pg. 63/14-17) | Planar agreed to provide requested information. |
| 18 | Unredacted copies of all line cards that relate to the Accused Products, including line cards for 3146, 3194 and 3195 products (pg. 66/14-17; pg. 77/22-pg. 77/22-78/4)) | (Request Withdrawn.) |
| 19 | Information related to Planar's first sale of a triple monitor stand (pg. 73/22-25) | Planar agreed to provide requested information. |
| 20 | Any roadmaps, including published roadmaps and quarterly roadmaps, that relate to the Accused Products (pg. 74/9-15) | Planar agreed to produce any technical and marketing documents related to the Accused Products. |
| 21 | All information related to the 7720 and 7721 bundled products (pg. 89/5-19) | Planar agreed to supplement its document production with technical and marketing documents related to the Accused Products. |
|    | *Documents Identified as Not Produced at the Deposition of Planar's Rule 30(b)(6) designee Riddle* |    |
| 1 | Annual budget (including any updates prepared throughout the year) (pg. 10/12-19) | Planar agreed to provide the requested information in summary form on an annual basis. |
| 2 | Inputs received from operations and sales managers related to desktop monitor category, including sales forecasts and unit forecasts (pg. 11/10 – pg. 12/9) | Planar agreed to provide this information. |
| 3 | Monthly P&L forecasts (pg. 13/6-14) | Planar agreed to provide this information. |
| 4 | Information related to "price projection versus volume rebate versus back end rebate" used to determine contra-revenues (pg. 22/14-25) | Planar agreed to investigate and provide this information at the lowest level of granularity possible. |

---

[4] This information is relevant because claim 16 of the '978 patent is directed to a "display system" comprising a "pair of displays." ECF No. 66-3, p. 17.

|    | **Documents Listed in Exhibit 3 as Missing From Planar's Production** | **Parties' Agreement Noted on Exhibit 4 re: Production of Documents** |
|----|---|---|
| 5  | Information, including invoices, related to the determination of an estimate of "contra claims" (pg. 23/1-12) | Planar agreed to investigate and provide this information at the lowest level of granularity possible. |
| 6  | Information related to returns of the Accused Products (pg. 25/20-25) | Planar agreed to provide requested information. |
| 7  | Information related to commissions, icn paid and/or attributed to the sale of Accused Products (pg. 26/11-14) | Planar agreed to provide requested information. |
| 8  | Costs for freight, warranty and warehousing associated and/or attributed to the Accused Products (pg. 27/4-16) | Planar agreed to provide requested information. |
| 9  | Information related to the margin and profitability for the desktop monitor product line (pg. 28/24-pg. 29/1) | Planar agreed to provide requested information. |
| 10 | Forecasts, including that contain information related to profitability of the Accused Products and/or the desktop monitor product line, including monthly forecasts and semi-annual forecasts (pg. 29/5-13) | Planar agreed to provide requested information. |
| 11 | Information describing the total revenues and costs for each individual year related to profitability, including for the desktop monitor product line and any business unit associated with the Accused Products (pg. 30/8-14) | Planar agreed to provide requested information. |
| 12 | Information related to any warehouse and logistics costs associated with or attributable to the Accused Products (pg. 33/14-25) | Planar agreed to provide requested information. |
| 13 | All datawarehouse cost profiles related to the Accused Products or the Desktop Monitor product line (pg. 35/19-24) | Planar agreed to provide requested information. |
| 14 | Information describing net revenue for the Accused Products, including at least at the product line level (pg. 39/3-14) | Planar agreed to provide requested information. |
| 15 | Unit sales and margin numbers, including at least on a monthly basis (pg. 40/13-21) | Planar agreed to provide the requested information on a quarterly basis. |
| 16 | Information related to costs attributable to the Accused Products, including at the product line level and the business unit level, including information from Planar's P&L statement (pg. 41/12-25) | Planar agreed to provide requested information. |
| 17 | Planar's internal P&Ls, including any "internal management reports" (pg. 42/18 – 43/2) | Planar agreed to provide requested information. |
| 18 | "Business reporting" related to the Accused products and desktop monitor product line or business unit, including any reports related to costs associated with the Accused Products or associated product lines (pg. 45/3-11) | Planar agreed to provide requested information. |

|    | **Documents Listed in Exhibit 3 as Missing From Planar's Production** | **Parties' Agreement Noted on Exhibit 4 re: Production of Documents** |
|----|---|---|
| 19 | Any information related to Planar's cost of capital (pg. 48/25 – 49/2) | Planar agreed to provide requested information. |
| 20 | Reports related to the Accused Products, including reports related to margin analysis, revenue by product line and order rates and trends, and further including dashboards, sales reports and expense reports (pg. 49/13-25) | Planar agreed to provide the requested information in summary form on an annual basis. |
|    | *Documents Identified as Not Produced at the Deposition of Planar's Rule 30(b)(6) designee Going* ||
| 1  | Organizational charts, directories, phone lists (pg. 14/22-15/2) | Counsel agreed to check with Planar to determine what of the requested information it would be able to produce. |
| 2  | Circumstances under which the indemnity agreement concerning the Accused Products was executed (pg. 17/7-12) | Planar agreed to provide requested information. |
| 3  | Written agreements with resellers (pg. 17/17-19) | Planar agreed to provide requested information. |
| 4  | Purchase agreements (pg. 18/4-13) | Planar agreed to provide requested information. |
| 5  | Date of service re 9X Media case[5] (pg. 21/8-16) | Planar agreed to provide requested information. |

On May 19th, MASS also inquired as to whether Planar would agree to MASS's two-week timeframe for the production of additional documents. *Id.* After multiple prompts, on May 29, Planar responded to MASS's confirmation e-mail by indicating that it was "still working" on its production and asking whether a rolling production would be acceptable to MASS. *Id*. at 2. MASS responded that it was unacceptable to have an open ended rolling production for documents already overdue that Planar had already agreed should be produced. *Id.* MASS requested a date certain for completion of Planar's suggested rolling production and encouraged Planar to produce relevant documents as soon as it collects them. *Id.* at 2. Planar has already conceded the clear relevance of the categories of documents that were set forth in MASS's May 19 e-mail (which had memorialized the parties' agreements reached at the M&C), yet Planar has not provided a specific

---

[5] This information is relevant to when Planar received notice of the patent-in-suit.

date by which its production would be complete, indicating only that "Planar does not have a completion date to commit to Mass at this time." *Id*. at 1. MASS reiterated that Planar's documents were "well overdue" and that MASS would seek the Court's assistance, but that Planar should produce documents as soon as they are collected. *Id*. In the two months following its initial twenty-eight page production and up until the date of this motion being filed, including after MASS indicated – without objection from Planar – forty-six categories of documents that were missing from Planar's production, and after Planar gave multiple assurances that it was working on document production, Planar has <u>*not produced a single additional document*</u>.

Because Planar utterly failed to comply with its agreed commitments from the parties' M&C, no additional M&C was deemed necessary, including due to the need to get this motion on file to secure Planar's inexcusable non-compliance with the Court's Discovery Order.

## ARGUMENT

As set forth above, Planar has inexcusably failed to meet its discovery obligations required by this Court's Discovery Order. Pursuant to the Court's Discovery Order, Planar had an obligation to "provide…a copy of all documents, data compilations and tangible things … that are relevant to those additionally pleaded claims or defenses involved in this action" no later than April 6, 2015. *See*, Dkt. No. 101 at 1. In sum, on the April 9th deadline for Additional Disclosures, Planar served a paltry twenty-eight pages of documents, consisting in large part of marketing documents, a single, multi-page e-mail string, and a handful of technical schematics. Ex. 1 at 3. Once the Rule 30(b)(6) deposition of Planar made clear that Planar had failed to produce numerous relevant documents in violation of the Court's Discovery Order, MASS made diligent efforts to get Planar to comply with its discovery obligations, culminating in a M&C during which Planar agreed to produce the documents set forth in the above chart. *See* Exs. 3 and 4.

As to "rolling productions," this Court has recognized that production of documents on a "rolling basis" is problematic and therefore disfavored. *See, e.g.*, *Whetstone Elecs., LLC v. Xerox Corp.,* No. 6:10–cv–278, Dkt. No. 156 (E.D. Tex. Apr. 7, 2011). Further exacerbating Planar's "rolling production" position is the fact that Planar refuses to provide a date certain by which it will produce all, or indeed *any*, relevant documents. Most importantly, the fact that Planar has produced only twenty-eight pages of documents in this case, and that it has not produced a single document in the two months since its Additional Disclosures were due, or in the three weeks since the Parties' M&C, makes it clear that "rolling production" is just a delay tactic and that no good faith efforts at effecting a rolling production have ever been undertaken.

Three weeks have now passed since that M&C, and although Planar played lip service to being cooperative, to date, Planar has yet to produce a single additional document. Instead, Planar has proposed an open ended "rolling production" from which it has not produced a single document in the two months since its Additional Disclosures were due.

The inescapable conclusion is that Planar's non-compliance with the Discovery Order is deliberate and calculated. No doubt Planar's non-compliance with its discovery obligations is due in part to the anticipated transfer of MASS's case against Planar once the Court issues its Claim Construction ruling. However, it is simply unacceptable for Planar to deliberately violate this Court's Discovery Order because it anticipates being transferred out of this District.

It is simply improper for Planar to (a) flaunt the Court's Additional Disclosure requirements by producing only twenty-eight pages of documents, (b) announce intention to produce belated documents, but then only on a rolling basis with no date certain for completion of such belated production, and (c) to make no effort whatsoever to produce *any* such documents, despite two months having passed since Planar's Additional Disclosures were due and three weeks

after Planar *agreed* to produce such documents.

MASS has attempted to reach a reasonable resolution of this matter without the need for Court assistance, but Planar – despite admitting that its production was lacking – has chosen not to comply with the Court's Discovery Order even after agreeing to do so, presumably on the hope that it will evade the Court's power to enforce compliance with its orders if Planar can get transferred out of this district before its non-compliance has been remedied.

In view of the foregoing, since this Court's March 24, 2015 regarding transfer (Dkt. No. 24) provides that the Court "will retain jurisdiction over Planar through the claim construction process" and "[t]his transfer will become effective the day the Court issues its claim construction opinion," MASS respectfully requests amendment of the Court's Order to retain venue and jurisdiction over Planar until it complies with the Court's order compelling discovery compliance requested herein.  This Court has the inherent power to enforce its orders, including its Discovery Order, and it sets a poor precedent if Planar is allowed to willfully violate the Court's Discovery Order by escaping the Court's jurisdiction if the Court's claim construction opinion precedes the Court's ruling on this motion to compel.

## **CONCLUSION**

At least because Planar willfully and inexcusably failed to comply with the Court's Discovery Order and further because Planar failed to provide any additional documents (including documents it agrees should have been produced) or a date certain by which all relevant documents will be produced, MASS respectfully requests the Court's assistance to compel Planar to produce all relevant documents forthwith, but no later than June 30, 2015.  Further, MASS respectfully requests amendment of the Court's Order at ECF No. 24 to retain venue and jurisdiction over Planar until it complies with the order compelling discovery compliance requested herein.

| | |
|---|---|
| Date: June 11, 2015 | Respectfully submitted, |
| | By: /s/ *Stephen F. Schlather* |
| | Stephen F. Schlather |
| | Texas Bar No. 24007993 |
| | John J. Edmonds |
| | Texas Bar No. 789758 |
| | Shea N. Palavan |
| | Texas Bar No. 24083616 |
| | **COLLINS, EDMONDS, POGORZELSKI, SCHLATHER & TOWER, PLLC** |
| | 1616 South Voss Road, Suite 125 |
| | Houston, Texas 77057 |
| | Telephone: (713) 364-2371 |
| | Facsimile: (832) 415-2535 |
| | Email: sschlather@cepiplaw.com |
| | jedmonds@cepiplaw.com |
| | spalavan@cepiplaw.com |
| | |
| | Andrew Spangler |
| | Texas Bar No. 24041960 |
| | **SPANGLER LAW P.C.** |
| | 208 N. Green Street, Suite 300 |
| | Longview, Texas 75601 |
| | Telephone:(903)753-9300 |
| | Facsimile: (903) 553-0403 |
| | |
| | *Attorneys for Plaintiff* |
| | *MASS Engineered Design, Inc.* |

## CERTIFICATE OF CONFERENCE

I hereby certify that the parties have met and conferred regarding this motion as described at length in the body of this motion and more specifically as follows:

On May 12, 2015, following MASS's Rule 30(b)(6) deposition of Planar, I sent to Planar's counsel, William Stewart, an e-mail setting forth in detail a list of forty-six documents and categories of documents that MASS believed were missing from Planar's production. On May 14, Planar's counsel, William Stewart, MASS's lead counsel John Edmonds and I met and conferred telephonically regarding Planar's discovery obligations, including that Planar's counsel indicated that Planar's document production was lacking. During the call, we also discussed each of the forty-six items in my May 12 e-mail. Thereafter, on May 19, I sent an e-mail to Mr. Stewart confirming MASS's understanding of the documents and categories of documents that Planar would produce. To date, Planar has not objected to anything May 19 e-mail. Mr. Stewart did respond that Planar was considering producing documents on a rolling basis, but would not provide a date certain by which Planar would complete its production. MASS objected to the open-ended, rolling production proposed by Planar. To date, MASS has received no further communications from Planar or its counsel and has received no additional document production.

Date: June 11, 2015                             */s/ Stephen F. Schlather*
                                                Stephen F. Schlather

## CERTIFICATE OF SERVICE

I hereby certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

Date: June 11, 2015                             */s/ Stephen F. Schlather*
                                                Stephen F. Schlather