```
1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF TEXAS
2                         TYLER DIVISION

3

   MASS ENGINEERED DESIGN, INC. )
4                                      DOCKET NO. 6:14cv411
        -vs-                   )       LEAD CASE
5
                               )       Tyler, Texas
6  SPACECO BUSINESS SOLUTIONS,         9:14 a.m.
   INC., ET AL                 )       April 28, 2015
7

8
                    TRANSCRIPT OF MARKMAN HEARING
9            BEFORE THE HONORABLE K. NICOLE MITCHELL,
                 UNITED STATES MAGISTRATE JUDGE
10

11                  A P P E A R A N C E S

12

13   (SEE SIGN-IN SHEETS DOCKETED IN THE MINUTES OF THE HEARING.)

14                         PRESENTERS

15   FOR THE PLAINTIFFS:

16   MR. JOHN EDMONDS
     MR. STEVE SCHLATHER
17

18   FOR THE DEFENDANTS:

19   MR. DAN MOUNT
     MR. CARL HJORT
20   MR. GENE CHERNG

21

22   COURT REPORTER:        MS. SHEA SLOAN
                            shea_sloan@txed.uscourts.gov
23

24

     Proceedings taken by Machine Stenotype; transcript was
25   produced by a Computer.
```

```
 1                    P R O C E E D I N G S
 2              THE COURT:  Good morning.  Please be seated.
 3              Ms. Hardwick, if you call the case, please.
 4              THE CLERK:  Court calls Civil Action 6:14cv411,
 5   Mass Engineered Design, Inc. v. SpaceCo Business Solutions,
 6   Inc. and Planar Systems, Inc.
 7              THE COURT:  Announcements?
 8              MR. SPANGLER:  Good morning, Your Honor.  Andrew
 9   Spangler on behalf of the plaintiff.  With me today is
10   Mr. John Edmonds, Steve Schlather.  And with us today are our
11   clients Mr. Allan Tameshtit and Jerry Moscovitch.
12              THE COURT:  Good morning.
13              MR. EDMONDS:  Good morning, Your Honor.
14              THE COURT:  All right.
15              MR. SPANGLER:  We are ready, Your Honor.
16              MR. STEVENS:  Good morning, Your Honor.  Scott
17   Stevens here for SpaceCo.  And with me is Carl Hjort.
18              THE COURT:  Good morning.
19              MR. THAMES:  Good morning, Your Honor.  Glenn
20   Thames for Planar Systems.  With me is Mr. Dan Mount and Gene
21   Cherng.
22              THE COURT:  Good morning.
23              All right.  Well, we are here for the Markman
24   Hearing, so to kind of give you the lay of -- the plan for
25   how I do things, I'd like to give each side time to make a
```

1    brief opening statement, if you need to tell me anything

2    about the technology or a central dispute or anything like

3    that, five minutes or less.  Then we will go term by term.

4           I'll let the plaintiffs choose the first term and

5    argue it first, and then the defendants will choose the first

6    term and argue it first.  And we will just kind of ping-pong

7    that way until we get through all of the terms, unless the

8    parties have agreed on another order, which I am also fine

9    with.

10          So with that, I will recognize the plaintiff for

11   your opening statement.

12          MR. EDMONDS:  Good morning, Your Honor, John

13   Edmonds for the plaintiff, Mass Engineered.

14          There are a number of terms at issue.  I think

15   the -- aside, obviously, from the patents and the intrinsic

16   evidence and the declaration of Mr. Moscovitch, who is here

17   today if needed, I think our primary reference for the Court

18   is Judge Davis's prior Markman opinion, which is Exhibit 6 to

19   plaintiff's brief.  Of course, it is also in the slides as

20   well.

21          A lot of this work was already done by Judge Davis;

22   and, in fact, he has already ruled on several of the main

23   issues -- or some of the main issues in dispute.  So that is

24   certainly something that we will be referring back to in

25   terms of where we believe Judge Davis got it right and the

1  reasons for that.

2           In terms of kind of framing the major disputes for

3  the Court, I would frame them as -- in the

4  means-plus-function terms, there are some various disputes

5  there.

6           I would say that the main dispute is a defendant's

7  effort to import limiting structures into these, and

8  the -- as the Court knows, the structures that correspond to

9  the function are the structures that are clearly linked to

10  the function and correspond to the function.  And the ones

11  that you are going to be hearing about today are -- for some

12  of the terms, they are trying to import projections and

13  slots.

14           That is something that Judge Davis has explicitly

15  rejected in his prior Markman opinion for good reasons, and

16  we can go back over them today.

17           Then they are also trying to import tabs and stops.

18  I think the thing for Court to remember on those is that in

19  both of those instances for those claim functions, if

20  somebody -- if we remove the projections and if we filled in

21  the slots or remove them, or if we remove the stops and mill

22  down the tabs -- or excuse me, mill down the tabs and remove

23  the stops, all of those functions will be formed by the

24  structures that Mass Engineered has.

25           So those are main issues there for the

1    means-plus-function claims.

2            I think the other main issue that kind of -- that

3    pervades a few terms is this issue of extend and extending.

4    And I think the thing for the Court, and we will get into it

5    more in terms of the word "extend," a peninsula can extend

6    from a shore.  It doesn't require movement on its part.

7            In terms of extending, I think you will see from

8    the specification that there are two ways that extending is

9    taught, depending on the patent.  We are talking about the

10   '103 now.  There is telescoping and then there is also

11   hinging.  We will get into those as well.

12           You will also see that in the '978 patent, extends

13   is referred to in many locations that don't involve

14   telescoping.

15           I think the main issue is, is something that the

16   defendants in the Ergotron case tried to do and Judge Davis

17   rejected, was try to limit it to a telescoping embodiment.

18   And that is essentially what the defendants are trying to do

19   with those, and we are pointing out why that would be

20   incorrect.  I think those are the main issues for the Court

21   today.

22           THE COURT:  Okay.  Thank you.

23           Response?

24           MR. MOUNT:  Good morning, Your Honor.  Dan Mount

25   appearing for Planar.

1              In some ways we agree.  I think there are two --

2    from our perspective there are two thematic problems you have

3    to address.

4              In the 112(6), 112(f) category we think that a

5    careful examination of the recited function is going to be

6    required to help us understand what structure is and what

7    structure is not in the claims.

8              I think that that -- a detailed look at that will

9    help us get to the right conclusions.

10             Also, the -- we think -- we do take some exception

11   with the prior order rendered in this district, but we think

12   that a more careful look at the case law and more careful

13   look at the recited function will help to get to a more

14   precise and careful solution.

15             There can be subordinate 112(6) claims.  There can

16   be 112(6) claims within 112(6) claims.  And we think we will

17   be prepared to walk through those.

18             The second major question has to do with the arm,

19   at least from Planar's perspective, we believe that the

20   Leveridge reference is important, and the steps taken to get

21   away from the Leveridge of dual arms structure will pervade

22   some of the claim interpretation issues.

23             So we will actually will break it out.  I was going

24   to talk about the 112(6) issues.  They have to be addressed

25   on a claim-by-claim basis.

1          Mr. Cherng was going to address the claims that

2   address arm and arm structure because of its closeness with

3   that Leveridge reference.

4          THE COURT:  Which is fine.

5          All right.  Plaintiffs, what will be the first

6   term?

7          MR. SCHLATHER:  Good morning, Your Honor.  Steve

8   Schlather for the plaintiff, Mass.

9          We will just start with the first term that we have

10   in our briefing, which is the -- I guess it is kind of three

11   terms; but the parties have agreed to construe them together

12   to at least some extent.

13          It is "arm," "support arm," and "arm assembly."

14   And, hopefully, we can get off to an easy start with these.

15   I think the parties have essentially agreed on the

16   construction for at least the '978 patent and the '103

17   patent.

18          Well, let me take a step back.  Judge Davis in the

19   Ergotron case --

20          Can you go to the next slide, Shea?

21          -- previously construed the term "arm assembly" as:

22   A structure having one or more constituent parts connected to

23   and projecting from the support means.

24          I think here the parties have agreed that that

25   construction is correct with regard to the '978 patent.

1           So if we go to the next slide.

2           You can see here that essentially the parties have

3   agreed with regard to the '103 patent that the proper

4   construction is:  A structure having one or more constituent

5   parts connected to or projecting from the column.  And the

6   only difference here is column versus support means.  The

7   '103 patent uses the term "column" versus the '978 which uses

8   "support means."

9           So which regard, again, to the '978 and '103, I

10  think the parties are in substantive agreement.  The

11  defendants have proposed splitting this up into two separate

12  constructions; whereas, Mass has proposed putting it into one

13  with designations for which terms support means applying to

14  the '978 and column applying to the '103.

15          With regard to the '331 patent there is some -- it

16  is unclear what the defendant's position is.  Mass's position

17  is that this term should be construed the same as for the

18  '103.

19          The defendants have rolled their construction into

20  some separate terms, which I am happy to address now.  They

21  were addressed separately in the briefing, but I can address

22  them now --

23          THE COURT:  Yes, go ahead.

24          MR. SCHLATHER:  -- as well.

25          Shea, can you go to Slide 39?

1            So here we have the -- in the '331 patent it

2      talks -- the claim language talks about a support arm

3      structure having a single piece support arm in Claim 1.  And

4      in Claim 9 the support arm structure having a support arm

5      that extends on either side of the column.

6            Again, Mass's proposed construction is the same as

7      we just saw for the '978 and '103.  The defendants have gone

8      a different way and have crafted a construction that requires

9      that the support arm be formed as a single piece.

10            Next slide.

11            So Mass's position, to be clear, is that once the

12      support arm that we spoke about earlier and that the parties

13      have agreed on with regard to the '978 and the '103 patent,

14      once that has been construed, these phrases here with regard

15      to the '331 patent having a single piece support arm and

16      having a support arm that extends on either side of the

17      column, have a plain meaning and don't require any further

18      construction beyond what the parties have agreed to for the

19      '978 and the '103.

20            THE COURT:  Getting back, though, to the first part

21      of that construction, I mean, your proposed construction

22      says:  Projecting from the support means for '978 or the

23      column for the '103.  Would you need to say for the support

24      column for '331?  Or is it column for '103 and '331?

25            MR. SCHLATHER:  It is column for '103 and '331.

1              THE COURT:  Okay.

2              MR. SCHLATHER:  So what this -- what -- the dispute

3    here with regard to the '331 patent primarily boils down to

4    defendant's attempt to include the phrase "formed as a single

5    piece."

6              THE COURT:  Uh-huh.

7              MR. SCHLATHER:  Mass doesn't dispute that the claim

8    language requires a single piece support arm.  What it does

9    not require is that that single piece support arm be formed

10   as a single piece.

11             THE COURT:  What about their alternative

12   construction:  The one integral arm extending on both sides?

13             Are you fine with that one?

14             MR. SCHLATHER:  With regard to Claim 1, we would be

15   okay with that.

16             But with regard to Claim 9 of the '331, that claim

17   doesn't require a single piece support arm, and so it would

18   be improper to --

19             THE COURT:  I mean, aren't we construing "single

20   piece support arm," and so when that is not in the claim, it

21   would not necessarily -- I mean, wouldn't that only come up

22   when it is in the claim as construed?

23             MR. SCHLATHER:  Well, yes, except that with regard

24   to defendant's position, they have proposed construing

25   support arm also -- their alternative construction is the

1    same for support arm as well.

2            THE COURT:  Okay.  I see.

3            Okay.  So you are all right with the alternative

4    construction for Claim 1 because it says single piece but not

5    for Claim 9 because it doesn't require a single piece?

6            MR. SCHLATHER:  Correct.

7            THE COURT:  Okay.

8            MR. SCHLATHER:  Then, again, just circling back.

9    The formed language that defendants want to import is

10   improper, and they relied on -- they relied on a quote in the

11   prosecution history where the patentee argued originally that

12   the arm was formed as a single piece; but later in

13   that -- during prosecution that phrase was specifically

14   removed from the claim language.  So, essentially, they are

15   trying to re-import a term that was explicitly removed prior

16   to the claims being allowed.

17           THE COURT:  Now, going back to Claim 9, I mean,

18   what the claim says is, it says:  A support arm that extends

19   on either side of the support column.

20           I mean, so are you arguing that a support arm can

21   be more than one arm?  Or, I mean, do you just need

22   clarification -- can it be a separate arm for each side, I

23   guess is --

24           MR. SCHLATHER:  Well, I think it can.  But the --

25   the -- you know, again, that is why Mass has proposed in its

 1    original construction of "support arm" to be:  One or more

 2    constituent parts.

 3              THE COURT:  Okay.  So you are saying:  A support

 4    arm that extends on either side of the support column can be

 5    more than one?

 6              MR. SCHLATHER:  One or more is what we proposed.

 7              That is all we have for the first term "arm,"

 8    "support arm," "arm assembly."

 9              THE COURT:  Okay.  Thank you.

10              Response?

11              (Pause in proceedings.)

12              MR. CHERNG:  I apologize, Your Honor.

13              THE COURT:  That's okay.  Take your time.

14              (Pause in proceedings.)

15              MR. CHERNG:  Good morning, Your Honor.  Gene Cherng

16    for defendant, Planar.

17              And I just kind of would like to start by

18    addressing the disagreement between the parties over what

19    appears to be Claim 9 of the '331 patent and construing,

20    basically, why Planar contends that a single piece support

21    arm that extends on either side of the column should be

22    construed the same as a support -- a support arm that extends

23    on either side of the column.  And the main reason for this

24    is really two-fold.

25              First, that the patentee in the specification

1    consistently -- well, almost exclusively describes the

2    invention or the present invention in terms of a common arm

3    that supports all of the displays, and so that is the first

4    reason.

5         The second reason, as Dan alluded to earlier, is

6    that the patentee during the prosecution of the '331 patent,

7    in order to distinguish Leveridge, which was a reference that

8    the Examiner rejected, the patentee, not only added claims

9    containing a single piece limitation but also made arguments

10   and statements that made very clearly -- very clearly

11   disclaimed the scope of the invention that limited it to

12   single piece of arms, regardless of whether the claims

13   require it or not.

14        And the Federal Circuit is very clear that where

15   there is a clear disclaimer, then that disclaimer

16   effects the -- should be -- I'm sorry.  Should be interpreted

17   consistently across all claims.  And that instance where

18   there is a clear disclaimer or clear disavowal, then the

19   claim language, the plain meaning of the claims, should not

20   apply.

21        So, Glenn, can you click down two slides, please?

22        So as you see here, the characterization of the

23   invention or the present invention or statements or arguments

24   made during the prosecution and, finally, claim

25   differentiation as they argued because -- just the argument

1    is that Claim 9 recites only a support arm that extends on

2    both sides of the column, while an independent claim, Claim

3    14 which depends from Claim 9, recites the -- whereas, Claim

4    9 where the support arm is a single piece, generally, in that

5    instance there would be only a presumption claim for

6    differentiation; but as the Federal Circuit has made claim,

7    where there has been a disavowal then the claim

8    differentiation --

9              (Reporter asks Mr. Mount to repeat.)

10             MR. MOUNT:  I'm sorry.  Claim differentiation and

11   plain meaning of the claim both do not apply.

12             Okay.  So moving on to the specification and

13   describing the present invention, I think you can see there,

14   the specification, as we discussed in the briefing, really

15   only describes the invention in terms of either mounting

16   multiple liquid crystal display screens on a common arm or a

17   common horizontal support arm, a common horizontally disposed

18   arm.

19             And the strongest statement is the last one:  The

20   display system of the present invention provides a

21   convenient, user friendly means for supporting three screens

22   along an elevated, common horizontal support arm.

23             So in that instance where the patentee has

24   described his invention not only in terms of what is

25   preferable but in terms of what the invention is, then

1   that -- those statements are limiting upon the scope of the

2   claims.

3           The next thing is Leveridge.  And the Examiner

4   during the prosecution of the '331 patent, rejected the

5   pending claims in light of Leveridge.  And the central figure

6   in Leveridge is shown at Figure 2 there with the arms in

7   Leveridge that are highlighted there.  There are a pair of

8   cantilever arms that are attached and pivotally attached to a

9   support block attached to the upright stand.

10          So you see there you have what the Examiner

11  contended was the support arm, support column, and the base.

12          In response to this, the patentee added new claims

13  reciting an integral, bowed arm.  And so we see there from

14  Figure 2, and in contrast -- Figure 2 of the '331 patent on

15  the left in contrast with Leveridge's Figure 2 on the right,

16  you know, the applicant has added new claims, 58 through 61,

17  that recite an integral, bowed arm for supporting a plurality

18  of displays.  These are not taught in Leveridge.

19          This is key here, the distinguishing of Leveridge

20  occurs here.  Leveridge does not teach an integral arm, but

21  instead teaches two non-contiguous, substantially linear

22  arms.  So that is where the patentee in that instance says

23  that Leveridge doesn't teach what I invented because it has

24  two non-contiguous substantially linear arms.

25          Go up one more.

1          Later they added Claim 62 and made -- more or less

2     made this the same argument.  In Claim 62, which

3     ultimately -- issued as Claim 1, recites a support arm being

4     formed as a single piece component.

5          And, again, this next statement:  Leveridge does

6     not teach such an arm.  In fact, as the Examiner concedes,

7     accepting the Examiner's position here, Leveridge teaches

8     arms 20 and 22 on the support block 46.

9          So, again, in that instance during the prosecution

10    the patentee very clearly disclaimed multiple arms.

11         And so -- and then another instance, in the same

12    office action actually, the patentee also disparaged

13    Leveridge.  They tried to get further away from Leveridge by

14    saying, well, Leveridge isn't great for this reason.  So a

15    cheap angling of the monitors in Leveridge, the arms have to

16    be articulated, increasing the cost of the display system and

17    the likelihood of malfunction as compared to the invention of

18    the instant application.

19         In particular -- and this is where, again, the

20    patentee makes statements regarding framing the invention --

21    the instant application teaches a bowed arm for supporting

22    the displays, which allows the screens to be presented in

23    wrap-around fashion without the need of employing two

24    straight arms that articulate, as taught by Leveridge.

25         So then there the patentee has said, two arms that

1    articulate, that wasn't the scope of my claims.

2            But it is not really even two straight arms.  In

3    the same office action there, the patentee summarized a

4    telephone interview summary that it had with the Examiner.

5    Even if you replace the straight articulating arms in

6    Leveridge and put two articulating bowed arms, it still

7    wouldn't work because the bowed arms could result in a

8    greater gap between the monitors or interference of the

9    monitors for certain angles of rotation.

10           So the patentee in prosecuting the '331 patent said

11   not only does my invention not include multiple articulating

12   arms, it does not include multiple articulating straight arms

13   or multiple articulating bowed arms.

14           And so then this is kind of where, as you can see,

15   Your Honor, where our objection is -- our differences are in

16   the '331 patent and the '103 or '978 patents, why we don't

17   think that support arm should have the same construction as

18   it is used in the '978 patent or the '103 patent.

19           Mass's proposal is that a support arm is a

20   structure having one or more constituent parts that projects

21   from the support column.  But from the prosecution history of

22   the '331 patent, I think that they have clearly disclaimed --

23   clearly and unmistakably disclaimed the "or more" part, so it

24   really is just a single piece support arm that is -- that the

25   claims are limited to at this point because of the patentee's

1    statements.

2         THE COURT:  All right.  You haven't touched much on

3    the -- and maybe you are just conceding that.  That is what I

4    am trying to find out.  Your initial proposed construction is

5    the formed as a single piece.  And I asked plaintiff if they

6    would be okay with the alternative; and they said, well, yes

7    as to Claim 1.

8         So where are you on that?

9         MR. CHERNG:  Right.  And so, yes, I have seen the

10   plaintiff's briefing; and it seems to me either we might be

11   kind of talking past each other or in agreement.

12        What I am a little unclear about is in their reply

13   argument regarding, well, you could have two arms that are

14   welded together to form a single piece.  And I think what we

15   are trying to get at there is if -- when two arms are welded

16   together, you are just kind of stuck here; just like the

17   single piece arm.

18        So in terms of -- so long as the arms are not

19   articulating or are non-contiguous or -- in that sense, then,

20   I think, perhaps, there might be agreement.  But I would need

21   to -- perhaps, if plaintiff clarifies some more about what it

22   means when -- if it is not for a single piece, what exactly

23   is -- do we mean by single piece?

24        THE COURT:  All right.  I think if ultimately it

25   ends up being one piece arm, you would probably be

1    comfortable with that.  I envision a scenario where there is

2    an arm and it is all molded at one time and it is made and it

3    is formed as one piece, or there is another scenario where

4    there are two pieces and they are joined in a permanent way

5    and they are then one piece, but they weren't made or formed

6    at the same time together.

7            And are you okay with scenario B is really, I

8    think, what I am getting at.

9            MR. CHERNG:  Yes.  So in scenario B where there you

10   have -- start without two arms and they are joined together

11   permanently such that they cannot be disassembled again into

12   its constituent parts, then I think there would be agreement

13   from Planar to that extent.

14           THE COURT:  Okay.  Thank you.

15           Response?

16           MR. EDMONDS:  May we speak briefly to some of the

17   points?

18           THE COURT:  Yes.  Yes.

19           MR. EDMONDS:  Okay.  Thank you, Your Honor.

20           So with respect to the argument that the defendants

21   were making on disclaim -- well, on my invention or the

22   invention, if you will.

23           THE COURT:  Uh-huh.

24           MR. EDMONDS:  I think the law they cite is

25   generally correct, although not absolute.  I think the flaw

1   in their reasoning is that when they got the cite to the

2   specification they weren't to what the argument they were

3   making.

4          So the cites in the specification they were arguing

5   were some kind of definition referring to a common arm.  It

6   didn't say anything about a single piece arm, which is what

7   they have been arguing or a single piece across the board in

8   terms of the claims that don't have a single piece.

9          And a common arm doesn't speak to how many pieces

10  that the arm is constructed out of.  So what we would say is

11  that what they pointed to in the specification is consistent

12  with Mass's construction, consistent with the overall

13  construction of "arm," including the one that Judge Davis did

14  for the '978 patent.

15         With respect to the -- the prosecution disclaimer

16  or estoppel argument that they made, the Leveridge patent was

17  distinguished on multiple grounds.  When they were showing it

18  up there it was distinguished because it didn't have bowed

19  arms.  It didn't have the rear display.

20         With respect to the language they had where they

21  said Claim 62 has a single piece, it is distinguished from

22  Leveridge, that was referring to what is now Claim 1.  They

23  are just parroting the claim language.  They are not

24  disclaiming anything.  They are saying this is the language

25  we put in Claim 1 to help distinguish over Leveridge.  That

```
 1    language is already in Claim 1, so there is nothing else that

 2    needs to be done there.

 3            With respect to Claim 9, the other point that they

 4    pointed to was that the patentee said in Leveridge the arms

 5    are non-contiguous.  And if the Court was to find any

 6    disclaimer, which we don't agree is there, that is as far as

 7    it could go because that is exactly what the patentee said.

 8            So if the Court were to find disclaimer, then you

 9    could add a contiguous requirement.  But that would be as far

10    as you could go.  Just because they argue disclaimer doesn't

11    mean they can argue past what was said in the prosecution

12    history.

13            Thank you, Your Honor.

14            THE COURT:  Let me talk to you one more time about

15    the first dispute.  You-all have essentially agreed to, you

16    know, the construction of -- in the '978 and the '103, you

17    know:  A structure having one or more constituent parts

18    connected to and projecting from the support means or from

19    the column.

20            One of you wants it together, one of you wants it

21    apart.  I'm not sure why we cannot agree on this, but give me

22    your reasoning for wanting to have two separate

23    constructions.  Just for ease of reference for the jury or

24    what?

25            MR. CHERNG:  Oh, between the '978 and the '331?
```

```
 1              THE COURT:  The '978 and the '103.  You know, where
 2  it says:  Projecting from the support means or projecting
 3  from the column.  Everything else is essentially the same,
 4  right?  I'm going back to the first part where we started, on
 5  arm.
 6              MR. CHERNG:  Quickly, we are just not in the '103.
 7              THE COURT:  Oh, sorry.  I just called you back up
 8  there for nothing.
 9              MR. CHERNG:  That's okay, Judge.
10              MR. HJORT:  Good morning, Judge.
11              THE COURT:  Good morning.
12              MR. HJORT:  SpaceCo is the only one on the '103.
13              THE COURT:  Okay.
14              MR. HJORT:  So, yes, it is for the ease of the
15  jury.  We thought that, you know, it can be split out because
16  the two patents are separate.  And even though they use some
17  common terms like "arm" across them, it would be easier for
18  the jury to understand that you have to find the support
19  column or the support means in the '978 versus column in the
20  '103.
21              THE COURT:  Okay.  And, Plaintiffs, do you have any
22  real problem with them being split out, or do you just think
23  it is easier if they are together?
24              MR. EDMONDS:  We don't have a real problem with
25  that, as long as the rest of it is correct, Your Honor.
```

1          THE COURT:  All right.  Very good.

2          Then let's move on to the next term.

3          Defendants, you get to pick and argue first, so

4    what will it be?

5          (Pause in proceedings.)

6          THE COURT:  And, Defendants, do you-all have copies

7    of your slides, by any chance?

8          MR. THAMES:  Yes, Your Honor, now we do.

9          THE COURT:  Okay.

10         MR. HJORT:  Good morning, Judge.  We would like to

11   discuss Items 2 and 3 together because they are basically

12   tied together.  This is talking about the arm assembly

13   extending from the column or extendable from a retractable

14   configuration to an extended configuration.  And I think

15   that -- it will be easy to talk about that together.

16         We have a couple of points on 2 with regards to arm

17   assembly having an arm that extends from a column.  The first

18   point is that "arm" and "arm assembly" have to be two

19   separate things since "arm" is defined as a subcomponent of

20   "arm assembly."

21         And how that ties into this whole thing is that it

22   is SpaceCo's position -- again, the '103 is only asserted

23   against SpaceCo -- that the arm has to be able to telescope

24   because the patentee defined "extend" as telescoping in the

25   '103 patent.

1          It is specifically -- you know, they talk about

2    Figures 45 through 47 of that patent, which are the figures

3    that we contend are what is claimed in that -- the embodiment

4    that is claimed in that patent.

5          So, again, we point to the section of the

6    specification as we produced in the brief, wherein the

7    patentee says, you know, which enables the upper support arm

8    to be extended; i.e., telescoped.

9          And it is our position that when you use the

10   definitional language "i.e.," you are defining that term in

11   the specification so that extended has to mean telescoped.

12         THE COURT:  Why isn't that -- why is that not in

13   your proposed construction for 2, but it is in there in 3?

14         MR. HJORT:  Well, I think that -- I don't know.  I

15   thought that was in there.

16         THE COURT:  Okay.  I mean, the proposed

17   construction I have for term 2 is:  An arm assembly that has

18   an arm that is capable of increasing or expanding in length

19   when projecting from the column.

20         But then as to term 3 I have:  Capable of

21   telescoping outwardly from a surrounding channel.

22         So if you are making consistent arguments, I was

23   just wondering why there is the disparity in the

24   constructions.

25         MR. HJORT:  Your Honor, I think there is an error

1    in the brief actually --

2              THE COURT:  Okay.

3              MR. HJORT:  -- because in my copy of the brief we

4    have the same definition for 2 as we do for 3.

5              THE COURT:  Okay.  And which one is it?  Is this

6    the second one capable --

7              MR. HJORT:  Capable of telescoping is our position;

8    that "extends" always means telescoping.

9              THE COURT:  All right.  And you are relying on this

10   language from the '103 patent.  I'm looking at Column 14,

11   Line 40, which says:  Enables the upper support arm to be

12   extended; i.e., telescoped.

13             MR. HJORT:  That's exactly correct, yes.

14             THE COURT:  All right.

15             MR. HJORT:  And, again, you know, we also refer to

16   the response to the office action, the prosecution history of

17   the '103 patent.  You know, the patentee told the USPTO that

18   support for the amendments is found in Figures 44 through 49

19   in the portion of the specification describing those figures.

20             Now, Mass points to the next sentence of that which

21   is something about -- you know, a general boilerplate

22   reference that is -- there is other parts of the

23   specification that could be, you know, support for this.  But

24   that is just a general -- a general statement that I think

25   the specific has to control over the general in the reference

1    to these figures and the way that these figures are described

2    as being a telescoping function.

3         The other thing that I want to touch on is that

4    hinging is separate from telescoping.  And that is clear from

5    the way the claim is written because it talks about the arms

6    telescoping and then hinging.  In fact, here you have in

7    the -- that same part of the specification in the '103 patent

8    at Column 14, you know, it talks about first extending and

9    then hinging.

10        And also when the claim is set up, it talks about

11   having a joint that allows the two portions to hinge.  So if

12   "extend," as they claim, means hinging in addition to

13   telescoping, it would not be necessary to also reference that

14   you have the joint, which allows hinging because that would

15   be wrapped up in the definition of extendable from a

16   retracted configuration to an extended configuration.

17        And the last point that I wanted to make was that,

18   you know, with regard -- we are talking about Claim 4 and

19   this claim differentiation argument that's -- Claim 4 would

20   support Mass's construction of "extend," the point there is

21   that you have to read Claim 4 in conjunction with Claim 3

22   which talks about there is -- there is an arm that extends

23   from the column that has one end, and the arm assembly

24   includes a second arm having the opposite end.  So that is

25   Claim 3.

1          Now, Claim 4 then says that the arm that extends

2    from the column is adapted to telescope.  So what you are

3    talking about is Claim 4 is really just specifying which of

4    the arms in the arm assembly is adapted to telescope, but it

5    doesn't support the idea that telescoping doesn't mean

6    extend.

7          So, again, we cited a case there to support that

8    claim differentiation position.

9          So, again, that is our position is that

10   telescope -- "extend" means telescoping, and that is our

11   position.

12          THE COURT:  Okay.  Response?

13          MR. EDMONDS:  Thank you, Your Honor.

14          Start us out on Slide 9, please.

15          So in the first instance, Your Honor, it is

16   important for the Court to make a distinction between the

17   word "extend" and the word "extendable."  They are different

18   words, and they can have different meanings.  In here they

19   are -- this juxtaposition to, I think is instructive.

20          What we are showing here on Slide 9 is Figure 4

21   where we have an arm that extends from the upright.  That is

22   the ordinary meaning of extends.  Just like I said before, a

23   peninsula can extend from the shore.  It doesn't require it

24   to be extendable.  It is just something that extends.

25          So that is what relates in part to -- in Claim 1

1    where it says "extends," in the first instance limiting to

2    telescoping would just -- would just exclude the ordinary

3    meaning of "extends."

4              THE COURT:  What about the argument that the

5    patentee used definitional language over there in Column 14

6    to define "extends" to mean telescope?

7              MR. EDMONDS:  Well, the argument is flawed.  And

8    what you need to do is -- the Court should read the entire

9    sentence.  And here what the patentee is doing is they are

10   describing where lower support arm 186 comprises a tubular

11   construction and upper support arm 188 with a neck portion

12   which enables the lower support arm to be extended.

13             What they are describing there is that that tubular

14   construction and the extendable part that that is where it

15   enables that telescoping, but it is not -- it is not saying

16   that that is the only way of extending.  It is just saying

17   that it is describing here this embodiment where because I

18   have a tubular construction with this neck, this extending I

19   am doing here is telescoping.  That is all it is saying.

20             And I think you also need to read the specification

21   as a whole.  And, of course, the case law we cited -- the

22   case law, frankly, they cited shows that, you know, even use

23   of the word "i.e." if that was the only use of it, it

24   wouldn't be proper to limit it unless that was -- there are

25   other examples.

1          And what I would point you to in our -- including

2   in our brief at Page 6, we have a lot of other examples of

3   the use of that specific word in the spec.  So in the '103

4   patent, Column 3, it shows -- it describes a display mounted

5   on an arm extending from the computer.  There is no

6   telescoping that takes place there.

7          It is in '103, Column 3, Lines 39 through 41.  They

8   are all in Page 6 of the briefs.  So -- and, you know, we

9   quote it directly here.

10         In Column 9 it refers to neck 36 that extends from

11  junction block 38.  There is no telescoping there either.

12         And in Column 18 it refers to rollers 904 that

13  extend beyond the outer upper surface 902a of the neck.

14  Again, that is not telescoping.

15         And then the other examples we have here in Column

16  18 and Column 19, there is no telescoping there that is using

17  the word "extending."  So there is just no -- the disclaimer

18  has to be clear and unequivocal.  And this is far from it.

19         In fact, the use of "i.e." was just talking

20  about -- was pointing out these are what these structures do,

21  they telescope.  It wasn't saying this is the only way they

22  telescope.

23         The other argument that I hear them making is that

24  when the patentee referred to Figures 44 through 49, that

25  somehow that was a disclaimer.  But if you look at 44 through

1    49, that has a hinge that you use to extend the arm.

2          So the premise of their entire argument is flawed

3    because Figure -- here we have Figure 47 and Figure 45 on

4    Slide 11.  These are the same figures that they are claiming

5    shows some kind of disclaimer; but as you can see here, this

6    shows both kinds of extendable function here where the hinge

7    is being used to extend.

8          We have the retracting in Fig 47.  We have the

9    extending in Fig 45.  And then also there is a telescopic

10   structure that is shown there too.

11         So when the patentee is pointing the Examiner to

12   those figures, they are showing them both types of

13   extendibility.

14         THE COURT:  Isn't that also described in Column 14?

15   I think the defendants raised this in their argument that

16   there is the upper support arm to be extended; i.e.,

17   telescoped relative to the lower support arm.  And then it

18   says the upper support arm further includes a hinge.  So are

19   you saying, yeah, it also has a hinge which is another reason

20   why this part should mean telescoping when we talk about

21   extension?

22         MR. EDMONDS:  No.  I think they are reading too

23   much into that sentence.  When it says "i.e., telescoping,"

24   it is pointing out what that hollow structure and that neck

25   do.  I don't see where the patentee is saying that when I use

 1    the word "extend," I am referring to telescope.  There is

 2    nothing clear and unequivocal about that.

 3          Yeah, in addition here we pointed to Figure 73 when

 4    it refers to the extent -- extended of centering member 504.

 5    So centering member 504 hinges downwards, as you can see --

 6    we are in Slide 10.  This is in Fig 72.  It is hinged upward.

 7    And then in Fig 73 it is hinged downward.  And they are using

 8    the word "extend."

 9          So, again, the disclaimer has to be clear and

10    unequivocal.  Here we have the patentee expressly using

11    extended where hinging is taking place, so I think that more

12    than answers the arguments that they made on this.

13          So I would also point out that in our -- in our

14    brief we point to that if -- you know, our primary position

15    on this is that the word "extend" is easily understandable

16    and needs no construction, and certainly it doesn't -- it

17    could include telescoping.  It can also include other things

18    such as hinging, depending on its usage.

19          But then also we pointed out in our brief, and I

20    would like to point out to the Court, that if the Court feels

21    the need to construe it -- sometimes under 02Micro the Court

22    feels the need to construe it because there seems to be a

23    dispute here, then we put forth an alternate construction.

24    It is in our reply brief, and it is:  The distance between

25    one end of the arm assembly and the opposite end can be

1    increased.

2        That is really -- when you look at the structure of

3    that claim, that is what that is speaking to is that the

4    distance between the ends of the arm assembly are increased.

5        And, in particular, if you look at the language of

6    Claim 1, and this is in -- I think I can get back to Slide

7    16.

8        So the language -- as the Court knows, the language

9    of the claims is often the best resource for resolving these

10   disputes.

11       So when it talks about extended configuration, it

12   expressly explains to us that the distance between one end

13   and the opposite end is greater than the extended

14   configuration and the retracted configuration.  That would

15   include hinging.

16       With the hinging embodiment that is shown in

17   Figures 44 through 47, the distance between one end and the

18   opposite end is greater in the extended condition than in the

19   retracted configuration.

20       So we say, one, it is improper to read out -- I

21   think the Federal Circuit has said rarely, if ever, correct

22   to read out a preferred embodiment.  But here we have the

23   claim language teaching exactly what is required here, which

24   would include hinging.

25       And, lastly, I point out we think -- we disagree

1    with their trying to dismiss Claim 4.  Claim 4 is a real

2    problem for their argument because the doctrine of claim

3    differentiation even presumes we are correct on this because

4    there is a further limitation here that the arm is adapted to

5    telescope.

6            And if you took the defendant's construction, and

7    you said "extends" means telescoped, then this would read

8    where the arm that telescopes from the column is adapted to

9    telescope, which I use the word nonsensical not in a light

10   sense, but there are cases in the Federal Circuit that say

11   that a construction that is nonsensical or superfluous would

12   generally be presumptively incorrect.  So that is what we

13   have here.  That would be incorrect.

14           So for all of those reasons -- and I don't think --

15   even their explanation for limiting it doesn't hold water,

16   but it is also contradicted by multiple parts in the

17   specification and language of the claims themselves.

18           Thank you, Your Honor.

19           THE COURT:  Thank you.

20           Response?

21           MR. HJORT:  I was just going to address a couple

22   points from the plaintiffs.

23           Any reference in the specification outside of the

24   discussion of Figures 44 through 49 is not relevant to the

25   construction of this term because, obviously, the '103 patent

1    is a very big patent.  It has got hundreds of figures in it.

2    And not all of those embodiments are going to be -- fall

3    within the scope of this claim.

4        And they specifically said the ones that we are

5    talking about are 44 through 49.  And so if we are going to

6    talk about -- I mean, the reference to Figure 70 or 72 is

7    irrelevant to what they told the Patent Office that the

8    claimed embodiment was 44 through 49.

9        Now, if that is accepted, then we are not trying to

10   read out the preferred embodiment.  This is the only

11   embodiment we are talking about.  And we note that the claim

12   does allow for hinging in the -- further in the claim where

13   it says a joint adapted to hinge.  So that is included

14   within, you know, the scope of the claim.  It is just that

15   "extending," which they define as telescoping, is what they

16   are talking about in that particular part of the claim.

17       So once they have that -- again, the definitional

18   language in there -- and we are not talking about a

19   disclaimer or anything here.  We are talking about that being

20   a defined term in the specification.  It is our position that

21   that is what "extends" means, it means telescoping.

22       THE COURT:  What about plaintiff's alternative

23   proposed construction, or in the alternative if we need to

24   construe it, what they suggested with:  The distance between

25   one end and the opposite end being greater in the extended

1    configuration?

2              MR. HJORT:  I don't think that is correct.  I think

3    we have to stick with the defined term in the specification

4    that --

5              THE COURT:  Why?

6              MR. HJORT:  -- "extends" means telescope.

7              Well, because of the use of the term "i.e."

8              THE COURT:  And you have while -- that says:  The

9    use of the term "i.e." in listing one example is

10   definitional?

11             MR. HJORT:  Well, that is the only example we are

12   talking about.

13             THE COURT:  No.  But my question was about the case

14   law.  I mean, does the case law support that; that when the

15   inventor puts in parenthesis; i.e., and lists one example,

16   that that is then definitional language.

17             MR. HJORT:  Yes.  The case that we cited Interval

18   Licensing v. AOL stands for the proposition that "i.e." is a

19   definitional term, yes.

20             THE COURT:  Okay.

21             All right.  Plaintiffs, what will be your next

22   term?

23             MR. EDMONDS:  Thank you, Your Honor.  I think what

24   makes logical sense next would be to move into the

25   means-plus-function terms and start with "means for

1   adjusting."

2           THE COURT:   Okay.

3           MR. EDMONDS:   And I am going to start us on Slide

4   18.

5           So I say we are starting with "means for

6   adjusting."  The place to start with "means for adjusting" is

7   to back up slightly and look at "mounting means."

8           So "mounting means" was construed by Judge Davis in

9   the Ergotron case.  In fact, it was construed three different

10  times; it was construed once in his first Markman opinion and

11  then there were questions for clarification.  Another party

12  came in.  And so there was a significant amount of judicial

13  attention to this term from a lot of parties in getting it

14  right.

15          This was the construction for "mounting means" that

16  was determined.  We say it is correct and, in fact, the

17  defendants agree with us that it is correct.  This is an

18  agreed construction.

19          The reason I put up "mounting means" first is

20  because Judge Davis in Ergotron, we say, correctly construed

21  "mounting means" and then held that "means for adjusting" has

22  the same structures.  So "mounting means" is kind of the

23  starting point for these structures.

24          And consistent with that -- if I could go to Slide

25  19.

1      The structures that are -- the parties agree on the

2  function.

3      THE COURT:  Do you --

4      MR. EDMONDS:  I don't know.  Maybe we don't.  I

5  don't know why they cropped theirs.  They will have to

6  explain why they did that.

7      THE COURT:  Why did you not crop yours?  I mean,

8  isn't that "thereby" language really more of the intended

9  result than the language about the function?

10     MR. EDMONDS:  I think that it provides context for

11 what adjusting the angular orientation means.  In other

12 words, you are adjusting -- when you saying adjusting the

13 angular orientation, you could adjust it in different ways.

14 But this -- this, I think, clarifies that the adjustment that

15 is being done permits them to angle each other towards the

16 desired degree.

17     I don't know at the end of the day whether that

18 makes any difference.  It doesn't -- in my mind whether you

19 accepted our stated function or their stated function, I

20 don't think it changes the structure, which seems to be where

21 the battle lines are really drawn.

22     THE COURT:  Okay.

23     MR. EDMONDS:  But I don't think there is any error

24 in including that contextual language we have there to

25 explain what the angular orientation -- what the adjustment

1   is.

2           And, in particular, so the -- I'm taking it to

3   Slide 22 here, so it is -- hopefully, this does somewhat of a

4   good job in calling out the structures here that are at

5   issue.

6           So these structures here that are highlighted, are

7   agreed upon.  Everybody agrees that these are structures that

8   are necessary for performing this function.  We have these

9   structures in Figure 9 and these structures in Figure 20.  So

10  the area of disagreement is the projections and slides, which

11  is an area of disagreement in a couple of places.

12          So, as you can see, back to the proposed

13  constructions on Slide 19, the defendants agree with all of

14  our structures.  We all agree on that.  And, again, the only

15  thing is whether you should additionally add projections and

16  slides.

17          Again, I think the important thing to remember and

18  what I was emphasizing to the Court is that the function has

19  to do with angling these screens towards each other, which is

20  shown on Claim 21.  Or if I held my hands out in front of me,

21  you know, like if I was a police officer telling someone to

22  stop with both hands, if I angle them towards each other,

23  that is the function that we are talking about, angling them

24  towards each other.

25          So here on Slide 23 is where we have the slots that

1   we say that are not necessary to perform the function; that

2   are not clearly linked to the function.  Judge Davis -- that

3   is how he held as well.

4          And I hope the Court can appreciate from how these

5   structures look and how they work and also from the

6   declaration of Mr. Moscovitch, so the way these tabs and

7   slots work is in this preferred embodiment -- and Judge Davis

8   pointed to this was a preferred embodiment that he held that

9   it was not clearly linked to the function.

10         And the way they work is they actually inhibit or

11  limit the ability of these screens to adjust for angular

12  orientation.  So, in our view, it is the polar opposite of

13  the clearly linked structure.  This is actually a structure

14  that inhibits it.

15         And what I mentioned in our opening was that -- and

16  as Mr. Moscovitch explained in his declaration -- if we

17  milled off those projections 66, 68, we got rid of them

18  totally, it would not impact the function, the claim

19  function.  It would still perform the claim function because

20  it would just be less inhibited than it is now.

21         By the same token if you filled in those slots or

22  if you removed the slots, if you will, then the -- it is

23  going to perform the function.  All of the structures that

24  you need are there without the projections and slots; and

25  that is why Judge Davis got it right; and that is why we

1    think that it should be the holding of this Court in terms of

2    construing this.

3              THE COURT:   Thank you.

4              Response?

5              MR. HJORT:   Yes.  Mass has accurately stated that

6    the contention here is over the inclusion of the projections

7    and the slots in this term.

8              So I think what is important to look at is the

9    claim term that says:  Displays the angle toward each other

10   to a desired degree.  And that is what the projections and

11   the slots do is they limit the tilting to this desired --

12   they constrain the tilting, if you will, to a desired degree.

13             THE COURT:   You are making that argument, but you

14   don't even have that included in the function in your

15   proposed thing, right?  You cut that out.

16             MR. HJORT:   Yes, that is true.  But, you know, we

17   recited a general function; but we think that the

18   structure -- again, if you remove the projections, then it is

19   simply a ball joint, which is well known in the prior art --

20             THE COURT:   Which would still allow for adjusting

21   the angular orientation.  I mean, respond to the argument

22   that if you take these slots and projections out, the

23   structure can still perform the function.

24             MR. HJORT:   Well, if you take the slots and the

25   projections out, then there is no constraint on the rotation

1    of the ball joint.  And then you won't define these desired

2    degrees.  You will be -- you could go to any degree.  And it

3    would be different than the way it is discussed in the patent

4    that it talks about permitting, you know, rotations about

5    these two perpendicular axes in a constrained manner.

6              It doesn't suggest that any ball joint would

7    accomplish that.  It just suggests that the vertical

8    projections on the registered slots are what accomplish that

9    function.

10             THE COURT:  All right.

11             Response?

12             MR. EDMONDS:  Well, I just didn't hear anything

13   that was persuasive.  I also add -- and I didn't know who was

14   going to argue that, you know, I think it is somewhat

15   telling -- and understand lawyers can make inconsistent

16   arguments.  I understand they think that is okay to do.  If

17   you look at Exhibit 10 to our brief, it is the petition for

18   inter partes review that was filed by Counsel who just made

19   that argument.

20             And in the IPR he and his client made the exact

21   opposite argument.  They said the projections and slots

22   weren't required.  So all I can say is that I think in the

23   IPR when they were in front of the Patent Office and they

24   realized that the Patent Office, you know, or Patent

25   Examiners they got it right and they conceded that point and,

```
1    you know, they seem to be trying to take another bite at this
2    apple.  Their position is just incorrect.  Judge Davis got it
3    right.
4             THE COURT:  Okay.
5             All right.  What will be our next term?
6             Defendants, you are up.
7             (Pause in proceedings.)
8             THE COURT:  All right.  Where are we headed,
9    Defendants?
10            MR. MOUNT:  I'm sorry, Your Honor.  I think we are
11   going to do "position means."
12            THE COURT:  "Position means."  All right.
13            MR. MOUNT:  Your Honor, in Claim 8 we believe that
14   it is a means-plus-function claim.  The use of the term
15   "means" creates the presumption.  It need not say "means
16   for."  There is case law that we cite that the dropping of
17   the word "for" does not change the function.  It is still a
18   means-plus-function claim.
19            The function -- when looking at a 112(6) it is very
20   important to understand exactly what the function is.
21   "Positioning means" allows the positioning of the rear
22   portion at a plurality of distances from the support means to
23   minimize the spacing.
24            So this, again, is setting up our perspective, Your
25   Honor.  This is setting up discrete spacing structures, not
```

1  infinite spacing, which I think is the way other parties

2  might want this read.

3        The structure, Your Honor, in our brief calls out

4  the -- I'm sorry.  The structure calls for a telescopic arm

5  structure which positions at a number of distances.

6        And as we pointed out in our brief, actually, Your

7  Honor, the structure that is identified in the patent is

8  identified even by Mr. Moscovitch himself that the structure

9  is as we have identified.  It is a means-plus-function term,

10  Figure 19 or hinged arm or telescoping arm -- I'm sorry --

11  the corresponding structure, in your opinion, would be Figure

12  19 or hinged arm or telescoping arm based on the note.

13        That is an admission by the inventor that that is,

14  in fact, a characterization as long as this is read to be a

15  112(6) claim.

16        THE COURT:  Is this one of those terms that Judge

17  Davis kind of squarely addressed and found it was not a

18  means-plus-function term?

19        MR. MOUNT:  Your Honor, I think in the 112(6)

20  analysis that he was not called upon to -- I'm sorry.  I

21  believe the 112(6) within a 112(6) suggestion was made; and

22  that because of the -- again, let me back up for a second.  I

23  want to make sure I don't misstate myself.

24        (Pause in proceedings.)

25        MR. MOUNT:  Bear with me.

```
 1              (Pause in proceedings.)

 2              THE COURT:  You know what, we have been going a

 3    little over an hour.  I think it would be a good time to take

 4    a break.

 5              And while we do that, if y'all would just regroup

 6    and figure out -- I think we have just have a few terms

 7    left -- so think about the order that we can most efficiently

 8    get through those after the break.

 9              We will take a break for 15 minutes.

10              (Recess was taken at this time.)

11              THE COURT:  Please be seated.

12              All right.

13              MR. MOUNT:  Thank you, Your Honor, for the break.

14    Actually, I think my remarks will be a little bit more

15    focused and I will start afresh.

16              I want to address what we identify as Claim 7,

17    "positioning means for positioning displays."  "Position

18    means comprising," and then get into various sub-112(6)

19    parts, and this is the point where we take exception to Judge

20    Davis's approach, Your Honor.

21              And I have always -- as a great respecter of

22    judges, I am always cautious when I say a judge made a

23    mistake.  I think it is often better to say things weren't

24    brought to a judge's attention or arguments weren't made or

25    things weren't made clear.
```

1          What Judge Davis did not identify as a 112(6) claim

2     and interpret this as with an apparatus for positioning.

3          Now, if someone were to -- we get back -- when you

4     say an apparatus for positioning, that is not a definite

5     claim.  It is not a clear claim.  We go back to the basis of

6     112(6).

7          Johnson v. IVAC is a good case, Your Honor, that

8     basically stands for -- helps recite the understanding of how

9     the 112(6) claims have to be interpreted.

10          If you were to say "any means for positioning," you

11     would encompass every means for positioning.  Holding it with

12     your hand, holding it with your foot, holding it with tape.

13     It is not any means for positioning, Your Honor.  It has to

14     be the means that are disclosed.

15          And so in the 112(6) analysis I think it got a bit

16     confusing, perhaps, in the earlier briefing or earlier

17     arguments, but the function of positioning is a function

18     recited, and there are various other functions that are

19     further 112(6) claims.

20          But when one says merely an apparatus for

21     positioning or a means for positioning, you are creating an

22     indefinite claim.  This is not the preferred method.  Again,

23     this 112(6) claim does start out positioning means invoking

24     112(6), and it should be read that way.

25          And another thing that I don't think was pointed

1    out in the briefing before Judge Davis before is the Trimed

2    case.  We cite the Trimed case.  It is a Federal Circuit

3    opinion.  I think it is in our papers.

4          But what Trimed makes it clear is that there must

5    be sufficient structure that -- structure is described in the

6    claim language if it specifies the exact structure that

7    performs the functions in question without the need to resort

8    to other portions of the specification.

9          You don't get to go to the specification to find

10   limitations or structure.  You have to look -- to get out of

11   the 112(6) strictures, you must find structure in the claim

12   language itself.

13         In the example of Trimed, there was structure

14   recited.  They go on and discuss that the claim articulated

15   the structure for performing the function in Trimed; and that

16   the structure recited with certain holes, certain holes

17   defined how pins and plates moved.  And that -- because that

18   structure was recited in the claims itself, Trimed says, yes,

19   112(6) restrictions are no longer applicable.

20         But we ought not have a claim construction that

21   Mass proposes, Your Honor, because Mass even suggests in some

22   of their reply brief, they are saying a jury will know what

23   these vague terms mean.  But a jury is not left to be free to

24   identify any means for positioning, any structure for

25   positioning.

1           As 112(6) requires, they only get the means they

2    disclosed and their equivalents.

3           And the means for positioning, Your Honor, include

4    various sub-112(6) elements.  A sub-112(6) element is also

5    recognized in the St. Clair case.  St. Clair is a

6    district-level opinion but identifies that you can have a

7    112(6) claim which has subordinate 112(6) claims within it.

8           And what happens here is positioning means -- you

9    have positioning means comprising an arm assembly and then a

10   support means, a mounting means, and a means for adjusting

11   the angular orientation.

12          So those are sub -- those are subparts of the

13   positioning means, all, again, involving 112(6) analysis.

14   There is not even a dispute that -- I believe mounting means

15   has been discussed as a 112(6) claim.  Means for adjusting

16   angular orientation, again, 112(6) feature.  And because they

17   are subparts of the mounting means -- or positioning means,

18   rather, it doesn't make positioning means ungoverned by

19   112(6).  You still have to get to the 112(6) Johnson/IVAC,

20   only the positioning means that are disclosed and their

21   equivalents.

22          THE COURT:  Doesn't the positioning means

23   disclose -- I mean, isn't there sufficient structure right

24   there in the claim even though some of that structure is

25   means-plus-function terms?

1          MR. MOUNT:  Well, actually not.  The function is to

2     position.  How do you position this?  You can't just say any

3     means.  That is where, I think, Judge Davis got it wrong.  It

4     is not just any means for positioning.

5          And they even say it is a 112 positioning means, so

6     let's focus on positioning.  There is a support arm.  That is

7     a structure that is identified.  But the support arm doesn't

8     tell the story.  And that is what the Trimed case says.  You

9     really have to -- you have to structure in the claims

10    themselves that show how to perform the function to get out

11    of the 112(6) strictures.

12         So, again, they would have to say, they would have

13    to persuade you, Your Honor, that all that is needed to

14    position these -- these displays is an arm assembly; but that

15    is not what -- that is not what the claims mean.

16         To position this includes the support means, the

17    mounting means, and the means for adjusting, each which

18    identifies the structure concerning the function that is

19    necessary.  And there is not structure that they can point

20    to.

21         And I don't think -- I'm not sure anyone brought

22    this to Judge Davis's perspective.  What structure is

23    performing the function of positioning?  If the Judge says a

24    structure for positioning, that is just -- I think that is

25    missing the question.  It is not really answering the

1    question.

2         It is -- a structure for positioning does nothing

3    but describe this in functional terms.  It is anything that

4    positions.  A structure that positions would be anything that

5    positions.  Now, that is not what 112(6) allows.  The

6    patent -- it would be an indefinite claim because you could

7    position things in a hundred thousand different ways.

8         And 112(6) says unless -- what Trimed says is that

9    unless the claims themselves -- that claim itself gives

10   adequate structure to perform exactly the function that is

11   called for, that is a mistake.

12        THE COURT:  Are you saying it is improper to -- you

13   know, we keep say there is a positioning means comprising,

14   the arm assembly, the support means, the mounting means.  And

15   even though as to the supporting means or mounting means we

16   may have to do the 112(6) analysis, doesn't that kind of

17   implicitly get brought up then within the positioning means,

18   and it is necessarily sufficient structure?

19        MR. MOUNT:  Well, it is not sufficient structure.

20   If it were sufficient structure, it would take it out of

21   112(6).

22        THE COURT:  Yeah.

23        MR. MOUNT:  112(6) still applies and you have to

24   read the positioning means to include only those structures

25   that are taught in the patent to perform all of the

1    subordinate steps.

2           So positioning means then includes these additional

3    limitations because the positioning means requires

4    the -- requires that the structures be looked to, and those

5    structures are only those structures that are in the

6    teaching.

7           THE COURT:  Okay.  Thank you.

8           Response.

9           MR. EDMONDS:  So, again, we harken back to Judge

10   Davis's analysis of this.

11          And if you could go to Slide 32.

12          About what the Court just said in terms of

13   questioning in terms isn't the sufficient structure there,

14   but this kind of new argument I am hearing is based on

15   Trimed, and I think this reading of Trimed.  And Trimed

16   stands for an unremarkable proposition that the holes that

17   were there were enough to have take it out of

18   means-plus-function because they were there.

19          But Trimed doesn't hold that you can't have a

20   nesting of a means-plus-function element in another element;

21   and that if you do somehow what it is nested in becomes a

22   means-plus-function itself.

23          Trimed is just not speaking to that issue at all.

24   I think that language is just taken out of context.  I think

25   the cases that Judge Davis relied on were the British Telecom

 1    case and the Lighting World case are the ones that are on

 2    point.

 3          And I look at their proposed construction and, you

 4    know, I haven't heard a sufficient answer to this to the

 5    Court's question.  When you look at what they propose, the

 6    structures they propose that would satisfy their view of this

 7    being a 112(6) or 112(f), they point to the same structures

 8    that Judge Davis pointed to and that the Court just read off

 9    as being the -- as being sufficient structure.

10          So, you know, we -- this was -- this was done

11    correctly before.  It has been done correctly now.  And I

12    guess the Court -- one might kind of scratch their heads and

13    say wait a minute if their construction is -- for positioning

14    means is the same -- essentially, the same, they are just

15    parroting the language, what is going on here?  Why are we

16    taking up the Court's time with this?

17          And what I would suggest is that the agenda behind

18    this is, later on when Counsel started arguing, argued, he

19    actually started with what the real issue is, which is this

20    positioning means allows positioning, and they are trying to

21    morph that into a means-plus-function.  And in order to do

22    that, they need to make positioning means -- they need to

23    somehow morph that into a means-plus-function.

24          I think that is probably what we should discuss

25    next in the proper context.  I don't know what else to say

1  about positioning means.  Judge Davis got it right, and the

2  Court's comments today were right on point.

3            THE COURT:  Okay.  Well, let's go right into that

4  term, No. 8, the "positioning means allows positioning."

5            MR. EDMONDS:  I'd like them to argue first on it --

6            THE COURT:  Okay.

7            MR. EDMONDS:  -- because it is kind of their issue.

8            THE COURT:  Okay.  Thank you.

9            MR. MOUNT:  Your Honor, I'd just briefly reply to

10  the issue of where -- the 112(6) limitation does still apply,

11  and the Davis -- the error by Judge Davis really is a matter

12  of taking it out of 112(6) without finding the structure for

13  the positioning.

14            The positioning means is a means-plus-function

15  claim, and it ought not be taken out of and one cannot ignore

16  that.  And the structure is part of the structure -- I'm

17  sorry.  The functions are the functions identified in the

18  subordinate 112(6) claims.  And the structure that is found

19  in the spec tying to those is necessary to a reading of the

20  positioning means, but that is -- that does involve those

21  subordinate 112(6) claims.

22            THE COURT:  I mean, the structure -- the structure

23  that you point to on Term No. 7 is an arm assembly, a support

24  means, a mounting means.

25            MR. MOUNT:  Yes.  But let me try to be clear.  A

1    mounting means is not in and of itself a structure.  And what

2    Trimed says is you must look at the claim language itself to

3    find the structure if you want to get out of 112(6).

4         THE COURT:  So are you necessarily saying that

5    because part of the structure is a means-plus-function term,

6    then necessarily the parent part of the claim must be

7    means-plus-function?  I mean, is that the law?

8         MR. MOUNT:  That is not why.  That is not why.

9    Any -- if you recite a claim in terms of a function, and a

10   positioning means and you say, okay, there is some -- I have

11   taught various means of positioning; and because I have used

12   this 112(6) shorthand, I get only a certain subset of

13   positioning.  I don't get any apparatus that positions.  I

14   only get apparatuses that position that meet all of these

15   additional limitations.

16        And what I think Mass wants to suggest is that we

17   are completely removed from the 112(6) structures, and any

18   positioning means would meet the 112(6) strictures.  And that

19   is not correct.  It is not any positioning means.  That is

20   where Judge Davis got it wrong.  It is not any positioning

21   means.  It is positioning means under 112(6), the positioning

22   means that are disclosed in the spec with all of the

23   subordinate 112 issues included.

24        THE COURT:  Okay.

25        MR. MOUNT:  And then the next, Claim 8 adds further

1    limitations with respect to positioning means.  It must also

2    allow positioning of the rear portion of a -- or excuse me,

3    of the rear portion at a plurality of distances from the

4    support means.  And that adds a further -- that is simply a

5    further limitation to what the positioning means -- again,

6    the 112(6) claim, some of the sub-elements are 112(6).  This

7    specifically identifies other functional limitations on what

8    does that positioning means do?  It has (a) (b) and (c)

9    112(6) subs and also another function of positioning means

10    must achieve is that it allows the positioning of the rear

11    portion at a plurality of distances, which we take to mean,

12    again, it is a 112(6) claim and it is positioned in

13    defined -- in defined spacing as the structure that is taught

14    in the claims teaches.

15          But, again, it is a 112(6) limitation.  They are

16    tied to what they -- the structures that they have taught --

17    I'm sorry -- to the means that they have taught in the

18    claims.

19          THE COURT:  Response?

20          MR. EDMONDS:  So Start on Slide 36.

21          So that is -- that is what seems to be at the root

22    of this, what we say is kind of the extreme position of

23    taking on positioning means; and that they are trying

24    to -- if positioning means now becomes means-plus-function,

25    their argument is that now in Claims 18 and 27, that this

1    language is now functional language and, therefore, you are

2    limited to certain structures.

3         What we point to is positioning means -- the

4    antecedent basis for positioning means is the positioning

5    means that the Court should define, as Judge Davis did, which

6    is an apparatus used to position displays.

7         If you define it that way, then this inquiry should

8    be answered because their -- their contention that this falls

9    under 112(6), 112(f) now is confusing to everybody.  It is

10   just simply -- it is just simply erroneous.

11        So that -- we don't see how -- first of all, it is

12   not a means-plus-function term.

13        Secondly, we don't see how this -- this language

14   here in Claims 18 and 27 somehow converts something that

15   wasn't, into a means-plus-function term.  It just doesn't do

16   that.  They haven't cited any case law that is on point that

17   it would do that.

18        And, secondly, we take issue -- and I think that

19   should really be the end of the inquiry if this is done in

20   what we say is a correct manner.  But since we are trying to

21   cover all of our bases here, we should point out that the

22   structures that they have -- they have structures there that

23   would -- even if you accepted this as a function -- which

24   would be erroneous in our respectful view, those

25   structures -- we disagree deal with the telescopic arm.

1          If this was defined as a function, yes, that would

2     be one means for doing it.  If this was erroneously defined

3     as a function, then the only structure that you --- that

4     would be in that second clause would be the sockets 202 and

5     204 as we set forth in our brief.

6          So the best place to kind of appreciate what is --

7     what is taking place here, is Slide 28.  So this is talking

8     about connector means, but it is a good illustration here of

9     this particular embodiment.  So this embodiment is not a

10    telescoping embodiment.  This embodiment is where you can

11    move the display from socket 202 to 204.  And in doing so,

12    you would perform the function as -- what they are calling a

13    function which we say is not a function.

14         So -- but that is what you -- if you were going to

15    define it that way, that is what you would do.  So they say

16    it allows positioning of the rear of a plurality of distances

17    from -- to minimize spacing.  So in this case to minimize the

18    spacing what you do is go from 204 to 202.

19         But, again, we don't think that inquiry is

20    necessary because you shouldn't get there.  The other

21    structures they have in here when they talk about these plugs

22    and these other apparatuses as part of the arm and

23    everything, they are trying to draw a bunch of other

24    structures in there that wouldn't be necessary to performing

25    what they have defined as a function.

1          THE COURT:  Okay.  All right.  Let's move on to the

2    next term.

3          Plaintiff, I will let you pick that one.

4          MR. EDMONDS:  Per the Court's instructions, we went

5    over what we would do next and how we would finish this.

6          So we are going to do the "mounting means permits"

7    and then "connector means" and then we will finish with

8    "base."  That will be the last for the Court.

9          THE COURT:  Okay.

10         MR. EDMONDS:  So I am going to Slide 18 of our

11   PowerPoint for the Court.

12         So the first part is the Court has already -- Judge

13   Davis correctly construed "mounting means."  The parties have

14   agreed that that is a correct construction.

15         So now we move to Slide 24, and the issue is the

16   mounting means permits the one display to assume a first

17   angular position and a second angular position.

18         The defendants have this contention that this

19   additional language converts this into a new

20   means-plus-function claim in which you have to now define a

21   new function and which you now have to find new structures.

22   And we don't see any legal support for that or a logical

23   support that.

24         This is -- this language is -- the antecedent basis

25   is the mounting means that has already been defined, that has

1    already been agreed upon.

2         And even if you accept it as a function permitting

3    one display to assume the first angular position and a second

4    angular position, the structures that are already in the

5    agreed construction -- we will just call it the correct

6    construction of "mounting means."  I don't want to be

7    presumptuous; but since Judge Davis construed it that way and

8    everybody seems to agree, I will just call it the correct

9    construction.

10        The construction in there -- the construction for

11   "mounting means" already permit a display to assume a first

12   angular and second angular position.

13        So the way I would have the Court envision this is

14   you could have a display go from portrait to landscape.  So I

15   could tilt it on its axis there.  That would be a way of

16   doing that.  And so what permits you to do that in these

17   structures would be the ball and socket.  With the ball and

18   socket, I can turn the display from one orientation to

19   another one.

20        What the defendants are pointing to are now we

21   have -- we get into tabs and stops.  So this is essentially a

22   similar issue that we are looking at with the projections and

23   slots, so you can see the tabs and slots here on Slide 26.

24        And what these tabs and slots do is they limit

25   your -- the position that you can do on this particular

1    embodiment.  So they would limit it at, for example, a 90 --

2    or a right angle, if you will.

3         And, again, the case law we cited is -- we think it

4    is clear, and it is the same reason that Judge Davis employed

5    the perspective of projections and the slots in the adjusting

6    means and the mounting means in the Ergotron case and as

7    addressed in Mr. Moscovitch's declaration.  These limiting

8    structures are not structures clearly linked to a function

9    because they run contrary to it.

10        I could remove the stops and I could do away with

11   the tabs and it would perform the function, if you would even

12   call this a function.

13        So they -- where we come out on this is that this

14   clause here that is at issue, the mounting means permits the

15   one display to assume a first angular and second angular

16   position, does not itself become a separate

17   means-plus-function clause; and nobody seems this permits

18   first display to assume a first angular or second angular,

19   nobody is arguing that is ambiguous, so that is just ordinary

20   meaning.

21        And even if the Court was to hold -- we would,

22   respectfully, say erroneously hold that it is -- this somehow

23   became a new means-plus-function claim, there are no new

24   structures needed because they are already there.

25        And what you don't want to do is add in structure.

1   What they are trying to do don't belong because they inhibit

2   the function.

3        Thank you, Your Honor.

4        THE COURT:   Thank you.

5        Response?

6        MR. HJORT:   I have a few points in response to

7   that.   One is, I believe "permits one display to assume a

8   first angular position and a second angular position" is a

9   function.   So "mounting means" a means-plus-function term.

10  We have already agreed to that.

11       So now we are adding a new function that the

12  mounting means has to perform.   And there is no structure

13  disclosed in this claim, so it is a 112(6) term again.

14       And I guess another point to point out is that the

15  patentee has defined what the first angular position and the

16  second angular position are.   Because in getting these claims

17  allowed -- if the Court will recall this patent was subject

18  to reexamination back in 2010.   And this Claim 18 and 27

19  where these terms are included, were added during reexam.

20       And so as was reproduced in the brief, the patentee

21  told the Patent Office that the display 16 in Figure 4 is in

22  a first angular position and the same display 16 has a second

23  angular position relative to the arm in Figure 6.   So we

24  reproduced those figures in the brief.   You can see that.

25       Again, as Mr. Edmonds said, I think in Figure 4 in

1    portrait -- or they are arranged horizontally and then in

2    Figure 6 they are arranged vertically.

3              So those are the two defined angular positions.  So

4    what defines those angular positions is the stops and the

5    tabs because they prevent the rotation past those angular

6    positions.

7              So if you don't have the stops and the tabs, then

8    the angular positions won't be defined.  And so if you don't

9    have the stops and the tabs, the monitors could spin freely

10   and -- you know, 360 degrees without having those two defined

11   positions.  So that is why we take the position that the

12   stops and the tabs need to be the included structure that

13   performs this function.

14             THE COURT:  Any final word on that?

15             MR. EDMONDS:  Just briefly.  I don't know whether

16   giving the argument that they would spin freely, there is no

17   teaching of that in the specification.  What they are

18   fundamentally saying is that if you stop it at a certain

19   point, then that helps me orient it.  It stops it from

20   orienting it past landscape.

21             But that's -- again, the function is positioning

22   the -- or excuse me.  The "mounting means" is the functional

23   language that has already been defined.  And all we have here

24   is for maybe to assume a first angular, second angular

25   position.

1    There is nothing they can say that it -- the --

2    that the structures there don't do that.  They do permit

3    that.  The structures they are talking about are inhibiting

4    structures; and that is just -- the idea that somehow it

5    would spin around like a ferris wheel or something, it is

6    not -- it is not -- it is something the first time I have

7    heard today.  It doesn't make any sense and is not consistent

8    with the logic or with the claim language.

9    So there was -- the statement they are talking

10   about in the prosecution, it still doesn't support their

11   argument.  There is no -- they seem to pluck statements out

12   and say, well, every statement they make must be some kind of

13   disclaimer.  It is just not.  They provided no context for

14   it.

15   The patentee is pointing to -- when you make

16   amendments you have to point to support in the spec to tell

17   the Examiner that you are not just adding -- throwing things

18   in the patent anew.

19   And every time you point to something in the spec

20   doesn't mean that you are defining or limiting something in

21   some manner.  This is the same issue with projections and the

22   slots.  It is just improper to identify them to -- to what --

23   limiting structures into the claims where they don't belong.

24   Thank you, Your Honor.

25   THE COURT:  All right.

1          So next we have the "connector means."

2          MR. EDMONDS:  We went first last time.  They are

3  welcome to go first, or I am happy to go first on "connector

4  means."

5          MR. MOUNT:  I believe Gene is going to take it.

6          MR. CHERNG:  So I think the parties are in

7  agreement here that "connector means for connecting one of

8  the displays to the arm at positions spaced along the arm,"

9  should be construed under 112(f) and 112(6).

10         There is a difference in what we contend is the

11  function.  The plaintiff's position is that the function is

12  connecting one of the displays to the arm at different, fixed

13  positions spaced along the arm.  Mass's function is

14  connecting one of the displays to the arm at positions spaced

15  along the arm whereby the spacing between the displays can be

16  adjusted.

17         And I think as Your Honor pointed out earlier, that

18  is just pointing out the intended results of connecting one

19  of the displays to the automatic positions spaced along the

20  arm.  And so it is not properly included within the claimed

21  function.

22         Moving on to the structure, the defendant's

23  position is that -- with the plaintiff's position is socket

24  202, socket 204, the connector 166, bolt 200, plus

25  equivalents.  And within -- if you look at the '978 patent,

1    the connector 166 really is not limited to just that

2    truncated plug that is depicted there.

3         In the specification the '978 patent blows up --

4    Figure 20 as an entire blowup of 166, which includes much

5    more than the plug.  It is the entire -- the plug, the ball,

6    and the shaft, the slot protrusions, the rear display, and

7    screws and mounts and other things like that.

8         Mass's proposed structure is the same as for the

9    "mounting means" but not including the one socket on one

10   side, 198 -- including both sockets 202 and 204, which I

11   think we are agreement on, plus equivalents.

12        Now, what we have one issue with is within the

13   construction of "mounting means" also includes ball 56, shaft

14   58, socket 60, hole 72, tabs 80 and 82; basically structures

15   from a different embodiment that were not clearly linked to

16   this function of connecting displays at positions spaced

17   along the arm.  That one embodiment really was more

18   disclosed -- that "mounting means" was more for the orienting

19   of the first embodiment there in the '978 patent.

20        So as you can see here, Your Honor, it says ball

21   56, shaft 58, socket 60, hole 72, tabs 80, they are all

22   mounted to the telescopic arm 18.  And the issue with that is

23   a telescopic arm is diametrically opposed to connecting

24   displays at positions spaced along the arm.

25        Where you have a telescopic arm, you have a display

1    fixed relative to the arm, and the arm goes in and out,

2    versus connecting the displays at positions spaced along the

3    arm, you would have to move the display from one socket to

4    the other.

5         And so that structure there that is included in the

6    definition of "mounting means" should not be included in the

7    structure for "connector means."

8         So for the same reason telescopic arm 18.

9         THE COURT:  Okay.  Thank you.

10        MR. CHERNG:   Thank you.

11        THE COURT:  Response?

12        MR. EDMONDS:  So I can start at Slide 27, Your

13   Honor.

14        So part of the disconnect is that the plaintiff, as

15   you can see the way this disputed term is written, it is the

16   "mounting means comprises connector means"; and so part of

17   the disconnect between the parties is that the defendants

18   seem to want to ignore that important language in

19   understanding the context of what the "connector means" is.

20        So that is why we have the same as for the

21   "mounting means" because it means -- the full phrase is "the

22   mounting means comprises."  In other words, it includes but

23   not limited to something else.

24        And so the Court already has "mounting means."  We

25   have already agreed on that, and -- if the Court accepts that

 1    as Judge Davis's instruction.

 2         So the real question is what is the something else

 3    that is the connector means that is not already there from

 4    the mounting means.

 5         And to understand it, the mounting means is getting

 6    at what you are using to mount the display.  So these are the

 7    structures here.  It has got the ball and the socket and the

 8    shaft.  And everybody agrees on that.  And the rear of the

 9    display.

10         This -- part of this, and the defendants kind of

11    glossed over, oh, yeah, 166 has a bunch of stuff in it.  It

12    is all there.  What they are glossing over is that this is

13    another attempt to back-door the slots back in because

14    their -- their reading of 166 is that that would include the

15    slots.

16         So the Court -- the Court might exclude the slots

17    just like Judge Davis did for "adjusting means" and "mounting

18    means" and then inadvertently bring them back in by accepting

19    their construction and not realizing that they -- really the

20    end game there is to include the slots.

21         But when you get back to the one that we are

22    specifically dealing with, the "connector means," so the

23    question is what is the -- what is the additional function

24    that is happening here?

25         The defendants criticized ours because we have the

 1    whereby clause on there.  They didn't point out to the Court

 2    that they have changed the language from what is in the claim

 3    in theirs.

 4         So where the claim says "connecting one of the

 5    displays to the arm at positions spaced along the arm and

 6    whereby spacing," but in place of "connecting at positions

 7    spaced along the arm," they have now -- they have changed the

 8    function from what is unambiguously stated in the claim to

 9    "connecting a predetermined fixed position."  That function

10    is just incorrect.  There is no support for that.  It is a

11    sleight of hand.  I don't know how else to characterize it.

12         But the Court -- hopefully, the Court appreciates

13    that that is not a correct statement of the function.  It is

14    just simply at odds with the claim language.  It is simply

15    another unabashed attempt to read limitations in the claim

16    that aren't there.

17         With respect to the structures then, when we look

18    at, okay, the mounting means is here, what is in addition to

19    the mounting means, it is just connecting the displays to

20    positions spaced along the arm.

21         So the plaintiff has appropriately focused on these

22    two structures, which are the sockets; and that's -- those

23    are the structures that are linked to this function, this

24    additional function that is performed by what the mounting

25    comprises the connector means where you are spacing -- where

1    the spacing can be adjusted because you can adjust between

2    202 and 204.

3         And I don't -- it is redundant for them to try to

4    add in connector 166 because the ball and socket are already

5    part of the mounting means.  The only reason why they are

6    adding that in because they are hoping that they can

7    back-door a slot and hope that the Court won't notice.  That

8    is the only way I can really say that.

9         And so if you -- you know, if the Court properly

10   rejects the slots, then their construction should be

11   rejected, and their construction should also be rejected

12   because their -- it is what it is -- it is what the mounting

13   means comprises and "connecting means" means.  Just focus on

14   the additional structures that already -- that aren't already

15   in the mounting means that perform this connecting function,

16   which is exactly what we said.

17        So I think where there can be some confusion is the

18   word "connector" is used in the spec; and so I think part of

19   their simplistic argument is, well, the word "connected" with

20   the word "connect," so we will just tie those two together.

21   You have to understand how these claims are constructed and

22   what this language means.

23        The function, as stated in "connecting" is,

24   connecting at positions along the arm.  So there is no need

25   to focus -- what was called connector 166 is getting back to

1   ball and socket, and so we need to just keep those things

2   straight.  And then when you focus on the function, you say,

3   okay, what else -- what else do I need to perform the

4   function?  It is just those two structures we have there, 202

5   and 204.

6           THE COURT:  Thank you.

7           Any final word on that?  Do you want to respond?

8           MR. CHERNG:  Sure.  Just a couple of things.  I'm

9   not sure if there is any disagreement about my point about

10  the specific structures corresponding to a telescopic arm.

11          Plaintiff's Counsel's arguments did seem focused

12  on, yes, the function is connecting the display at positions

13  spaced along the arm, so the argument was that you remove the

14  display out of one socket and place it back into another

15  socket and that would be the function here versus what was in

16  the first half of that mounting means structure was the

17  structure as part of the telescopic arm, which we contend

18  should not be part of the "connector means."  I'm not sure if

19  there is any disagreement there, but I think that is worth

20  clarifying.

21          THE COURT:  What about the statement that your

22  function is not what comes directly from the claims?  You

23  have changed it a little bit.  Why did you do that?

24          MR. CHERNG:  Yes, Your Honor.  Thank you for

25  reminding me.

1        So, yes, our structure -- I'm sorry.  I apologize.

2   Our function is different from the claim language, but it is

3   taken from the disclosed structures that are -- I don't think

4   are disputed between the different constructions, that is,

5   the sockets 202 and 204.

6        As Mass acknowledged sockets 202 and 204 are

7   discrete positions that you have to move the displays out of

8   one socket and into another.  And so that is -- that was why

9   we included that into our proposed construction.

10       MR. EDMONDS:  May I -- oh, when he is done -- I'm

11  sorry --

12       THE COURT:  Respond to that.

13       MR. EDMONDS:  -- may I speak to that one?

14       THE COURT:  Yeah.

15       MR. CHERNG:  I will concede the floor.

16       THE COURT:  Don't go far.

17       MR. EDMONDS:  It is clear to me what is going on

18  here.  You know, when you do an analysis of 112(f) you have

19  to have the same function, and then you get equivalents of

20  the structures that correspond to the function.

21       So what they are trying to do is this -- it is just

22  not supported by the law; but the idea that they had was,

23  well, we will just define the function in terms of the

24  structures here.  And, therefore, even though they might get

25  equivalents for the structures, they are not going to get

1   equivalents for the structure -- for the function, so we will

2   limit them, essentially, to the same that is disclosed.  That

3   is just not proper -- it is not a proper way to do

4   means-plus-function terms.

5         You should define the function for what it is, and

6   then you look to the structures that correspond to that; and

7   then when we get on to infringement or validity or whatever,

8   we can talk about what is equivalent or what is not.

9         THE COURT:  Okay.  Respond to that.

10         So, yes, the question about literal infringement

11   under 112(f) being the structure is disclosed as well as

12   structural equivalents as opposed to the doctrine of

13   equivalents, is a separate inquiry.

14         That is a separate issue from the one that is

15   disclosed in the specific -- in the patent.  Again, the

16   specification really only talks about --

17         THE COURT:  But you are supposed to get the

18   function from the claims.

19         MR. CHERNG:  Right.  Right.

20         THE COURT:  So you changed that.

21         MR. CHERNG:  Yes, we did.

22         THE COURT:  Are you okay with this function

23   language that does come from the claims:  Connecting one of

24   the displays to the arm at positions spaced along the arm?

25         MR. CHERNG:  Yes.  I think we are generally okay

```
 1    with that, but we would exclude the whereby clause though.

 2            THE COURT:  Okay.  All right.  Thank you.

 3            MR. EDMONDS:  The last term for the Court is

 4    "base."

 5            THE COURT:  Thank you.

 6            MR. SCHLATHER:  All right.  So the last term is

 7    "base"; and as the Court can see, the parties largely agree

 8    on this term.  The portion that we agree on is that the base

 9    is the lowermost portion of the system that supports the arm

10    assembly.

11            Where we differ is that Mass proposes that the arm

12    assembly be supported above a work surface.  Defendants have

13    a broader construction:  Wherein the base supports the arm

14    assembly above a surface.

15            THE COURT:  That seems kind of backwards to me,

16    you, the plaintiff, wanting a narrower construction.  What is

17    a work surface?  Am I going to have to construe that next?

18            MR. SCHLATHER:  No, because you can look at the --

19    at the specification -- well, if we look at the file history

20    first.  When Mass added this term to the claim, it

21    specifically defined what the base does.

22            And it said that this component is used to support

23    the arm assembly above a work surface.  This isn't about a

24    particular embodiment.  This goes to the nature of the

25    claimed invention.  The base supports the arm assembly above
```

1  a work surface.

2          And to your -- to your point, this is consistent

3  with what Mass has said in the specification where we talk

4  about the purpose of the invention is to support monitors

5  where there is limited desk space, to basically conserve

6  space on a desk or a table or a similar work surface.

7          So what I think it is important to focus on here

8  is, for "base," is we are not talking about where the base

9  itself rests.  We are talking about where the base supports

10  the arm -- the support arm -- or the arm assembly, and Mass

11  made it very clear in the file history that the base supports

12  the arm assembly above a work surface.  Not above a surface

13  in general, but specifically above a work surface.

14          Thank you.

15          THE COURT:  What is a work surface?

16          MR. SCHLATHER:  So if we look at the specification

17  it talks about a desk -- specifically about a desk, about a

18  table.  So it is surfaces of that nature.  It is not any

19  surface.  But the purpose of the invention as a whole is to

20  conserve desk space.

21          So where in -- if you have two monitors sitting on

22  your desk each with its own separate base, you take up 2x

23  amount of space if you put them on an apparatus as is claimed

24  here.  You now have a single base supporting two screens

25  above that work surface, so you conserved what in some cases

1    can be very limited desk space.

2              THE COURT:  Okay.  Thank you.

3              Response?

4              MR. HJORT:  The defendant's position on this term

5    is just that Judge Davis correctly construed this in the past

6    as just a surface and not a work surface.

7              THE COURT:  Was that issue argued in the past?

8              MR. HJORT:  It was in the original Ergotron case.

9              THE COURT:  They argued work --

10             MR. HJORT:  I think that -- or maybe they did it in

11   the Humanscale case.  I don't remember which one, but it has

12   been argued before.

13             THE COURT:  Okay.

14             MR. HJORT:  If you refer to the section of the

15   specification they cite, it talks about the stated work

16   surface is the desk, tabletop, or other surface for office or

17   business use.

18             I think -- I submit to you that another surface for

19   an office or business use doesn't have to be a work surface.

20             I can tell you that SpaceCo has a bar in their

21   office.  That is an office surface but not one for a work

22   surface.

23             So to suggest that it has to be limited to a work

24   surface, I think, is incorrect.  I think Judge Davis had it

25   correct before.

1        I think the other -- the last point I want to touch

2    on briefly is that -- and it has been brought up a couple of

3    times that Mass has said that at the IPR that SpaceCo filed,

4    we adopted this construction.  And that is true.

5        However, I specifically stated in the IPR that we

6    weren't being bound by Mass's constructions in future

7    litigation.  During this IPR there are separate proceedings,

8    and they have separate standards of review.

9        And also, you know, the point to bring Mass's

10    constructions into the Patent Office is to show the Patent

11    Office what is -- you know, the breadth of claim scope that

12    they think they are entitled to and then see if that is

13    actually patentable over the prior art that exists.  So to

14    suggest that we have adopted this construction, is incorrect.

15        MR. SCHLATHER:  Your Honor, if I may?

16        THE COURT:  Sure.

17        MR. SCHLATHER:  A couple of quick points.  I don't

18    think it is quite as clear-cut as defendants have alluded in

19    terms of Judge Davis has previously decided this.  This term

20    was construed in a separate case, the Humanscale case by

21    Judge Hilton in Virginia.

22        And in that case he did construe the term to

23    include work surface.  That is at Mass's opening brief,

24    Exhibit 9 at Page 2.  So it may not be quite as clear as they

25    have suggested.

1          The other issue is -- and Mr. Hjort spoke to it a

2    little bit -- they have taken inconsistent positions.  In the

3    IPR proceedings they say that work surface -- the inclusion

4    of work surface is the appropriate construction.  Here they

5    are taking a broader view that any surface would suffice.

6          And, you know, the explanation that we have

7    different standards, just isn't convincing.  They have

8    represented to the Patent Office that the inclusion of work

9    surface is the proper construction, but now they are taking a

10   different view.  The file history makes very clear that the

11   base supports the arm assembly above the work surface.

12          THE COURT:  Thank you.

13          All right.  Thank you.  Okay.  That was our last

14   term, right?  Thank you both -- all of you very much for your

15   arguments.  The Court will try to get you opinion as quickly

16   as I can.

17          If there is nothing further, we will be adjourned.

18          (Hearing adjourned.)

19

20

21

22

23

24

25

<u>CERTIFICATION</u>

I HEREBY CERTIFY that the foregoing is a true and correct transcript from the stenographic notes of the proceedings in the above-entitled matter to the best of my ability.


<u>/s/ Shea Sloan</u>
SHEA SLOAN, CSR, RPR
Official Court Reporter
State of Texas No.:  3081
Expiration Date:  12/31/16